**BEFORE THE**
**UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

---

IN RE:  DIGITAL ADVERTISING          MDL DOCKET NO. 3010
ANTITRUST LITIGATION

---

**INTERESTED PARTY SPX TOTAL BODY FITNESS LLC d/b/a THE STUDIO**
**EMPOWER'S RESPONSE TO GOOGLE DEFENDANTS' MOTION FOR TRANSFER**
**OF ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28**
**U.S.C. § 1407 FOR COORDINATION OR CONSOLIDATION OF PROCEEDINGS**

## I.    INTRODUCTION

Plaintiff SPX Total Body Fitness LLC ("SPX") respectfully submits this response to the motion before the Judicial Panel of Google LLC, Alphabet Inc. LLC, and YouTube LLC. (collectively "Movants") to centralize various actions listed in the motion (and subsequently filed related actions) to the Northern District of California. SPX's action, *SPX Total Body Fitness LLC d/b/a The Studio Empower v. Google LLC*, No. 4:21-cv-00801-HSG (N.D. Cal.) (the "*SPX Action*") was filed in the Northern District of California and is pending before the Honorable Haywood S. Gilliam, Jr. SPX does not oppose centralization in the Northern District of California. SPX does not take a position as to whether the cases should be centralized before the Honorable Beth Labson Freeman or Judge Gilliam; both judges are able and competent jurists to oversee the *SPX Action*. SPX submits the following response to the Panel as pertinent to the question whether the *SPX Action* should continue as a separate action.

The first of the actions listed in the Movants' papers, *In re Google Digital Advertising Litigation*, No. 5:20-cv-3556-BLF (N.D. Cal.) ("*Digital Advertisers*"), was commenced over a year ago before Judge Freeman. Several subsequent actions, which have been ruled as related actions, are also pending before Judge Freeman. SPX moved to relate its case to *Digital*

*Advertisers*; however, Judge Freeman denied the motion and the case remains before Judge Gilliam.

SPX acknowledges that there is some overlap in the facts underlying the claims in its case and the actions pending before Judge Freeman. SPX has advised both Judges, as well as the parties in those actions, that it believes coordination of discovery between the various actions would be appropriate, if the Judges agree to do so.

Accordingly, SPX submits that centralization in the Northern District would lead to an efficient litigation outcome and requests that the Panel do so for coordinated pre-trial discovery without consolidation.

## II.     BACKGROUND

### A.     Cases Pending In the Northern District of California

There are currently 11 tag-along actions pending in the Northern District of California.

#### 1.     *SPX v. Google LLC*, No. 4:21-cv-00801-HSG (N.D. Cal.)

SPX initiated its action against defendant Google LLC ("Google"), on February 1, 2021 on behalf of a class of advertisers on Facebook, Inc. ("Facebook"). SPX's Section 1 Sherman Act claim arises from a September 2018 written agreement between Google and non-party Facebook. Contrary to the Movant's assertions, SPX's claims do not rest on a Section 2 monopoly claim, and SPX has not asserted claims based on Google's alleged product tying, failure to share information with competitors, or auction designs. *Cf.* Memorandum of Points and Authorities in Support of Google Defendants' Motion for Transfer and Centralization Pursuant to 28 U.S.C. §1407, ECF No. 1-1 at 6 (Apr. 30, 2021) ("Def. Br.").

Both SPX and Google sought to have the *SPX Action* related to the actions pending before Judge Freeman. *See Digital Advertisers*, ECF Nos. 88 and 94. The motion was denied. *Id.* at ECF

No. 108. Currently SPX is awaiting defendant Google's response to its Complaint, which is due August 16. *SPX Action*, ECF No. 40 (May 17, 2021).

        2.        ***In re Google Digital Advertising Litig.*, No. 5:20-cv-3556-BLF (N.D. Cal).**

The first of the *Digital Advertisers* actions against defendants Google and Alphabet LLC ("Alphabet") was commenced in May 2020. After several other additional complaints were filed, those actions were deemed related and are currently proceeding before Judge Freeman. The operative complaint alleges an illegal monopoly in the digital advertisement market for those who advertised on Google platforms. The plaintiffs, digital advertisers, also allege Section 2 violations relating to defendants' conduct in the acquisition of other companies; tying products auctions designed to exclude competitors; and Google leveraging its position in online search, among other allegations. These claims were recently dismissed with leave to amend. *Digital Advertisers,* ECF No. 143 at 6 (May 13, 2021).[1]

        3.        ***In re Google Digital Publisher Antitrust Litig.*, No. 5:20-cv-08984-BLF (N.D. Cal). ("Digital Publishers")**

The *Digital Publishers* action, against Google, Alphabet, and YouTube LLC., is also before Judge Freeman and was initially brought at the end of December 2020. Judge Freeman ruled that these cases, while related, are sufficiently different from Digital Advertisers that consolidation should not occur. *Digital Advertisers,* ECF No. 143 at 6 (May 13, 2021) (requesting an Amended Complaint that distinguishes the digital advertising publisher market from the digital advertising advertisers' market).

---

[1] *Organic Panaceas, LLC v. Google LLC and Alphabet Inc*., No. 4:21-cv-02629-DMR (N.D. Cal.), a case highlighted by the Movants, was consolidated into *Google Advertisers* on May 13, 2021. *Organic*, ECF No. 16 (N.D. Cal. May 13, 2021).

B.    **Actions in Other Jurisdictions:**

1.    *The State of Texas, et. al. v. Google LLC*, **No. 4:20-cv-00957 (E.D. Tex.)** ("AGs' Action")

On December 16, 2020, the Texas Attorney General and nine other State Attorneys General filed suit alleging that Google had illegally abused its monopoly power in the digital advertising space.[2] Along with Sherman Act Section 1 and 2 claims, the State Attorneys General brought various state antitrust claims and state deceptive trade practice claims.[3] On May 21, 2021, the United States District Court for the Eastern District of Texas denied Google's motion to transfer that action to the Northern District of California. *AGs' Action*, ECF No. 121 (E.D. Tex. May 20, 2021).

2.    **Individual Actions**

Between April 19 and 21, 2021, twelve similar lawsuits were filed on behalf of individual newspapers or newspaper owners in eleven Federal District Courts. These non-class action claims

---

[2] The *AG's Action* amended complaint added five more states and Puerto Rico as plaintiffs on March 15, 2021. Def. Br. at 8.

[3] The existence of government actions does not preclude transferring some matters while the government actions proceed in a different district. The Panel has often transferred cases to the forum most convenient for the parties, even when a government investigation was pending elsewhere. *See, e.g.*, *In re: Walgreens Herbal Supplements Mktg. & Sales Practices Litig* 109 F. Supp. 3d, 1373, 1376 (J.P.M.L. 2015) (transferring actions to the Northern District of Illinois despite New York State investigation because one defendant was located there, and it was central for all parties in nationwide litigation); *In re Packaged Seafood Products Antitrust Litig.*, 148 F. Supp. 3d 1375, 1377 (J.P.M.L. 2015)(centralizing private civil actions in the Southern District of California while the Department of Justice criminal action proceeded in the Northern District of California)l  *In re. Elec. Carbon Prods. Antitrust Litig.*, 259 F. Supp. 2d 1374, 1376 (J.P.M.L. 2003) (transferring actions to the District of New Jersey despite grand jury proceeding in the Eastern District of Pennsylvania when both defendants and plaintiffs were present in New Jersey); *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 931 (J.P.M.L. 1980) (transferring actions to the District of New Jersey despite Department of Justice investigation and civil action filed in the Northern District of California because the location of defendant headquarters favored an east coast venue).

are similar to the *AGs' Action* seeking relief under federal and state law claims. Centralization for coordination of these cases in the Northern District of California is appropriate.

### 3.   Other Class Actions

To SPX's knowledge, only three other class action cases have been filed other than those already mentioned, all in the District Court for the District of Columbia. These cases were brought against Google, and Alphabet, as well as Facebook, Inc. They have been consolidated in the District of Columbia and a single Amended Complaint has been filed. *See Cliffy Care Landscaping LLC, et al. v. Facebook Inc.*, No. 1:21-cv-360, Minute Order (D.D.C. Apr. 19, 2021). These cases assert claims like those alleged in the *AGs' Action* as well as those alleged in the *Digital Advertisers* and *Digital Publishers,* but they seek to represent distinct classes.

In sum, while there are some core allegations in the *SPX Action* that overlap with the cases the Movants seek to transfer, SPX respectfully requests the Panel consider centralizing the cases for the purposes of coordination and allow the judges of the Northern District to determine the best mechanism to achieve efficient management of the cases.

## III.   ARGUMENT

### A.   Centralizing In One District Will Ensure the Just and Efficient Conduct of The Actions and Avoid Inconsistent or Conflicting Determinations

28 U.S.C. §1407(a) provides, in relevant part:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

The Panel has spoken previously, however, on the distinct roles that the Panel and transferee judge have in effectuating the "coordinated or consolidated pretrial proceedings" contemplated by Section 1407:

> Even though Section 1407 transfer contemplates transfer "for coordinated or consolidated pretrial proceedings,[the Panel does]" not order pretrial "consolidation" of the cases before us. That is done, if at all, in a district court, typically the MDL transferee court. We refrain from dictating the structure of an MDL's pretrial proceedings (such as whether the litigation will proceed in a coordinated manner as opposed to consolidated proceedings). We choose instead to leave the degree of coordination or consolidation of involved actions to the sound discretion of the transferee judge.

*In re Bear Creek Technologies, Inc., ('722) Patent Litigation*, 858 F. Supp. 2d 1375, 1377 (J.P.M.L. 2012).

The Northern District has already demonstrated its ability to manage the degree of coordination or consolidation required in this matter, *see infra* at 2-3 (organizing the N.D. Cal. Cases). This Panel's centralization of all the matters sought to be transferred by the Movants, except the *AGs' Action*, before the Northern District of California will prevent duplication of discovery and eliminate the possibility of overlapping or inconsistent determinations by courts in different jurisdictions. As a result, SPX respectfully submits that this Court should centralize those to the Northern District of California.

## B.   The Northern District of California is the Most Appropriate Transferee Forum.

The various private actions should be transferred to the Northern District of California because: (1) 10 private actions are pending in the Northern District of California; (2) the judges to whom the various cases have been assigned in the Northern District of California have the complex litigation experience necessary to efficiently preside over the actions; (3) the Northern District of California has considerable expertise in dealing with complex, multidistrict litigation, especially antitrust litigation, and has the resources to promptly and efficiently manage the actions; and (4)

the Northern District of California is centrally located and easily accessible for the parties and witnesses.

The Panel has considered a variety of additional factors in selecting the transferee court, including: (1) the procedural advancement of an action; (2) the familiarity of a judge with the proceedings; (3) the efficiency of a court's civil docket; and (4) a central location for national litigation. The final factor includes consideration of the location of parties, witnesses, and documents. *In re Am. Cont'l Corp./Lincoln Savings & Loan Securities Litig.*, 581 F.Supp. 739, 741 (J.P.M.L. 1990). These factors favor transfer to the Northern District of California.

## 1. <u>Actions are Already Pending in the Northern District of California.</u>

In determining an appropriate transferee forum, the Panel considers the procedural advancement of the cases filed.

Regardless of which defendants were named by the various plaintiffs, they all have their principal place of business in the Northern District of California. The cases in the Northern District of California are all significantly more advanced procedurally than the recently filed matters. The Court in the *Digital Advertisers* and *Digital Publishers* has appointed leadership and established a coordination procedure. In the *Digital Advertisers*, the Court has ruled on the defendant's Motion to Dismiss and set an amendment deadline. Further, in both the *Digital Publisher* case and the *SPX Action*, the Courts have established a schedule for the defendants to respond to the pleadings.

## 2. <u>The Judges in the Northern District of California Are Experienced in Complex and Antitrust Litigation.</u>

SPX does not take a position as to which judge, or judges, should oversee the proceedings once coordinated by this Panel. Both Judge Gilliam and Judge Freeman are eminently qualified and experienced.

### 3.     The Northern District of California Has Complex Litigation Expertise and the Resources to Manage the Litigation Effectively.

The Panel considers the efficiency of a court's civil docket in determining the appropriate forum for adjudication of multidistrict litigation. The Northern District of California has extensive experience in managing consolidated multidistrict litigation, including complex antitrust cases involving the high-tech industry. Its Bench has the technical expertise and institutional knowledge required to hear such complex matters.

### 4.     The Northern District of California Is Geographically Convenient to the Parties and Witnesses in the Related Actions.

The Panel also considers the convenience of the parties and witnesses in selecting a transferee forum. *See* A. Conte & H. Newberg, Newberg on Class Actions § 9:16, at 345 (4th ed. 2002) (noting that the location of the defendants' principal offices is a significant factor upon which the Panel relies in choosing a transferee forum because most of the relevant witnesses and documents likely will be found there). Here, all named defendants from all tag-along actions have headquarters in the Northern District of California. As a result, it is likely that the key witnesses and documents will be located this District. *See In re Juul Labs. Inc, Marketing, Sales Practices, and Product Liability Litig.*, 396 F. Supp. 3d 1366 (J.P.M.L. 2019) (selecting the Northern District of California as the transferee court since the defendant was headquartered in the district and that most of the key evidence and witnesses were located there); *see also In re Navistar 6.0 L Diesel Engine Prods. Liab. Litig.*, 777 F. Supp. 2d 1347, 1348 (J.P.M.L. 2011) ("Defendants' headquarters, and therefore relevant documents and witnesses, are located in or relatively near this district.").

IV.     **CONCLUSION**

For the reasons stated above the various actions against the Movants should be transferred to the Northern District of California and the Court should recommend, due to the distinct nature of each of the actions, the matters be coordinated rather than consolidated, for pretrial proceedings.

Dated:  May 26, 2021                              Respectfully submitted,

                                                  LOCKRIDGE GRINDAL NAUEN P.L.L.P.

                                                  */s/Kate M. Baxter-Kauf*
                                                  Kate M. Baxter-Kauf
                                                  100 Washington Avenue South, Suite 2200
                                                  Minneapolis, MN 55401
                                                  (612) 339-6900
                                                  kmbaxter-kauf@locklaw.com

                                                  *Counsel for Plaintiff SPX Total Body Fitness LLC*
                                                  *d/b/a The Studio Empower*