**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: DIGITAL ADVERTISING ANTITRUST LITIGATION | MDL No. 3010 |

**INTERESTED PARTY RESPONSE OF THE NEWS MEDIA ALLIANCE TO GOOGLE DEFENDANTS' MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PROCEEDINGS**

The News Media Alliance respectfully submits, as an interested party, this response to Google Defendants' Motion for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Proceedings ("Google's Motion").

**I.      INTRODUCTION**

The News Media Alliance ("NMA") is a nonprofit organization representing nearly 2,000 news organizations in the United States. Its members include both large and small news media organizations.

NMA members sell most of their online advertising inventory through third-party advertising technology and tools. As alleged in the cases involved in Google's Motion, Google operates numerous allegedly dominant advertising technology products. Thus, the vast majority of the NMA's 2,000 members have relevant knowledge regarding the issues presented in these cases. The NMA's members are likely to be called as witnesses, deponents, or otherwise asked to participate in certain cases referenced in Google's Motion and its supporting memorandum.

The NMA has interest in the venue of two categories of cases outlined by Google in its Memorandum of Points and Authorities in Support of Google Defendants' Motion for Transfer and Centralization Pursuant 28 U.S.C. § 1407 ("Google's Memorandum"). *In re: Digital Advertising Antitrust Litigation*, Case MDL No. 3010 (J.P.M.L. Apr. 30, 2021). First, the

multistate coalition of state attorneys general led by Texas, *Texas et al. v. Google, LLC,* No. 4:20-cv-00957 (E.D. Tex. Dec. 16, 2020) ("Texas AG multistate case"), serves the interest of justice most effectively if it remains in Texas. Second, the "newspaper cases" are best suited to be consolidated and heard in the Southern District of New York.

The NMA's members face continuing harm from the conduct alleged in these cases. The pace of their resolution will substantially affect the viability of our members' businesses. As it stands, Google made over $44 billion from its advertising products in the first quarter of 2021, and revenues from publishers make up a substantial part of that revenue. *Alphabet Announces First Quarter 2021 Results*, ALPHABET (Apr. 27, 2021), https://abc.xyz/investor/static/pdf/2021Q1_alphabet_earnings_release.pdf?cache=0cd3d78. These cases allege that some portion of this revenue is the product of illegal conduct by Google. The NMA is concerned about the prospect of moving some or all these cases to a court with a fuller docket and less expertise on issues of particular concern to its members, and which would impose substantial logistical burdens. As such, the News Media Alliance generally opposes the consolidation of these cases, except in the context of the "newspaper cases," and in all cases opposes transfer to the Northern District of California.

## II. THE TEXAS ATTORNEY GENERAL MULTISTATE CASE SHOULD NOT BE CONSOLIDATED WITH ANY OTHER CASE, AND IT SHOULD REMAIN IN THE EASTERN DISTRICT OF TEXAS.

The NMA believes that the Texas AG multistate case should not be consolidated with any other cases, nor should it be transferred to any other venue. The proceedings in that case are moving efficiently. Additionally, Texas is centrally located, which makes it a more convenient venue for a larger number of NMA members. Moreover, combining the Texas AG multistate case with class claims could create substantial delays. Finally, forcing the Texas AG multistate case to move to Google's preferred California forum would essentially subject state sovereigns to

Google's adhesive forum selection clauses, which Google has imposed on private third parties through non-negotiable contracts of adhesion.

### A. The proceedings in Texas are moving quickly and efficiently.

Popularized by a 1985 ad campaign discouraging littering on Texas roads, the United States has come to understand and respect a classic adage: "Don't Mess with Texas." Katie Nodjimbadem, *The Trashy Beginnings of "Don't Mess With Texas,"* SMITHSONIAN MAG. (Mar. 10, 2017), https://www.smithsonianmag.com/history/trashy-beginnings-dont-mess-texas-180962490/. The phrase is no truer than it is as applied to the current movement of the Texas AG multistate case proceedings in the Eastern District of Texas. The case in the Eastern District of Texas has been moving quickly and efficiently, as the AGs' complaint was filed in December of 2020, and Google has already filed its answer in April 2021.

Additionally, given the lower burdens on the Eastern District of Texas, it is likely that this case will continue to move at a more efficient pace than it would if transferred to the Northern District of California. According to the most recent report on District Court caseloads, the Eastern District of Texas has 654 pending cases per judgeship, compared to the Northern District of California's 870 pending cases per judgeship. *Federal Court Management Statistics*, U.S. COURTS (Dec. 31, 2020), https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2020. Additionally, the Eastern District of Texas has a lower median time to trial in civil cases (17.5 months) than the Northern District of California (37.6 months). *Id.* The Texas proceedings have continued in line with this average, on an admirably expeditious timeline. In this instance, there has been no reason to suggest that the Texas AG multistate case should be moved to Northern District of California where it will encounter significant delays.

The Texas trial schedule is already set, with an 8-week trial set for June 2023. Scheduling Order, *Texas et al. v. Google LLC*, No. 4:20-CV-957-SDJ (E.D. Tex. May 21, 2021). Conversely,

many of the cases Google wishes to consolidate this case alongside do not have trial dates or schedules. *See, e.g.*, *In re Google Digital Advertising Antitrust Litigation,* No. 5:20-cv-03556 (N.D. Cal. May 18, 2021).

### B. The Eastern District of Texas is centrally located and is therefore a more convenient venue for NMA members than the Northern District of California.

Texas is also a substantially more convenient venue for NMA members as a whole. These organizations are spread throughout the United States and as stated above, many have headquarters in the East Coast. Texas is centrally located and substantially closer than California is to the East Coast. If the case were moved to the Northern District of California, many NMA members which may be called as witnesses at trial would have to fly for up to six hours and then endure several more hours of heavy traffic around the San Francisco Bay Area. Jesse Gary, *Bay Area Commuters Spend Over 100 Hours Stuck in Traffic a Year*, KTVU (Aug. 22, 2019), https://www.ktvu.com/news/bay-area-commuters-spend-over-100-hours-stuck-in-traffic-a-year. Plano Texas, on the other hand, where the case currently resides, is conveniently situated near a more centrally located airport. The Dallas/Fort Worth International Airport is a hub airport with plentiful flights and the 21.5 miles to the courthouse enjoy comparatively light automotive traffic.

Relevantly, the court in the Texas AG multistate case recently denied Google's Motion to Transfer for similar reasons, citing in part the inconvenience to non-party witnesses like NMA members. *See* Memorandum Opinion and Order on Defendant Google LLC's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), *Texas et al. v. Google LLC,* Case No. 4:20-CV-957-SDJ Dkt. #28, at 12 (E.D. Tex. May 20, 2021) ("Plaintiff States . . . have specified thirteen potential nonparty witnesses, each of whom is located closer to [the Eastern District of Texas than the Northern District of California] and each of whom has expressed his or her willingness to travel to this district to testify at trial.").

### C. Consolidating the Texas AG multistate case with class cases in the Northern District of California creates inefficiencies by combining dissimilar claims.

The Texas AG multistate case is a collection of states proceeding with state and federal claims as *parens patriae* and does not contain any class claims. The Texas court, in its dismissal of Google's motion to transfer, noted that combining these claims does not serve judicial economy because it will attach entirely irrelevant class-discovery and class certification motion practice to the Texas AG multistate case. *See id.* at 15–16. Further, the Texas AG multistate case involves state law claims, specifically consumer protection and deceptive trade-practice claims that are "dissimilar to the putative class plaintiffs' claims" which again creates inefficiencies for a court tasked with adjudicating them together. *See id.* at 16–17.

### D. Forcing the Texas AG to move its case to the Northern District of California would essentially impose Google's adhesive forum selection clause on a sovereign state.

Finally, moving the Texas AG multistate case to California would essentially force sovereign state enforcers to comply with Google's adhesive forum selection clauses. Google uses forum selection contracts to compel private plaintiffs to bring actions Northern District of California. Google's asserts that the Northern District of California already hosts many cases against Google and therefore that the Texas AG multistate case should also be moved. However, this is a result of these non-negotiable clauses, not the efficiency of the venue. The public enforcement action brought by Texas is not subject to such an agreement, nor should it be prejudiced by the contractual agreements that have forced private plaintiffs to file private claims in the Northern District of California, which is home to Google's corporate headquarters.

### III. THE "NEWSPAPER CASES" SHOULD BE CONSOLIDATED IN THE SOUTHERN DISTRICT OF NEW YORK.

#### A. The ad exchanges underlying the "newspaper cases" have strong parallels to financial markets with which the Southern District of New York has expertise.

The facts underlying the "newspaper cases" are well-suited to be heard in the Southern District of New York, where one of the newspaper complainants, Associated Newspapers Ltd., has already filed its case. The conduct at issue in these cases is rooted in the buying and selling of ad inventory through ad exchanges. These advertising exchanges are sophisticated and technically complex exchange platforms with close parallels to financial markets. The Southern District of New York regularly handles complex financial litigation in the securities, commodities, and other financial exchanges. The familiarity with such complex exchanges and the subtleties of the conduct which may constitute unfair manipulation would allow these cases to proceed more smoothly and effectively in the Southern District of New York.

#### B. The Southern District of New York is home to many of the most prominent news publishers and would therefore be a convenient forum.

In addition, the logistical interests of the parties and likely third parties are best served by consolidating the newspaper cases in the Southern District of New York. The NMA's members include some of the country's most prominent news publishers. Some of our members are direct plaintiffs in the "newspaper cases," and some subset of our members is likely to be called to participate in these proceedings because they possess a great deal of relevant information. Many of our members which are most likely to be called are located on the East Coast and in New York City specifically. Demanding that these parties and third parties appear in California is not in the interest of justice and would make it more difficult for our members.

\* \* \* \* \*

## IV. CONCLUSION

For the reasons discussed above, the NMA respectfully requests that the Texas AG multistate case remain in the Eastern District of Texas and the "newspaper cases" are consolidated and heard in the Southern District of New York.

Date: May 26, 2021

Respectfully submitted,

*/s/* Brandon Kressin
Brandon Kressin
1717 K Street, N.W.
Suite 900
Washington, D.C. 20006
202-455-4244
brandon@kanterlawgroup.com

*Counsel for Interested Party News Media Alliance*