## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: DIGITAL ADVERTISING ANTITRUST LITIGATION | MDL No. 3010 |

### DEFENDANT FACEBOOK, INC.'S RESPONSE TO GOOGLE DEFENDANTS' MOTION FOR TRANSFER AND CENTRALIZATION

Defendant Facebook, Inc. respectfully submits this response to the Motion for Transfer and Centralization (the "Motion") filed by Defendants Google LLC, Alphabet Inc. and YouTube, LLC (together, "Google"). For the reasons below, Facebook supports: (1) transfer and centralization of the cases identified in the Motion; and (2) selection of the Northern District of California as the transferee court and Judge Beth Labson Freeman as the transferee judge.

## BACKGROUND

The various lawsuits at issue in this proceeding, which total 28 cases in 16 different federal district courts, generally concern the field of digital advertising and Google's advertising technology ("ad tech") services (collectively, the "Ad Tech Antitrust Cases"). Digital advertising is a vast ecosystem of online advertisements that are displayed on the internet across various platforms, websites and applications. Ad tech is the technology that facilitates the buying, selling and placement of digital advertisements. Google provides ad tech services that facilitate the buying, selling and placement of digital advertisements on third-party platforms, websites and applications.

On May 27, 2020, a group of online advertisers filed a putative class action against Google in the Northern District of California alleging that Google exercised or was attempting to acquire unlawful monopoly power in various alleged markets related to digital advertising in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. *See* Compl., *Grand Atlas Tours v.*

*Google LLC*, No. 20-cv-3556-DMR (N.D. Cal. May 27, 2020), ECF No. 1.  Subsequently, two other groups of online advertisers filed similar putative class actions against Google in the Northern District of California, and Judge Beth Labson Freeman consolidated the cases into an action captioned *In re Google Digital Advertising Antitrust Litigation*, in which the plaintiffs then filed a first amended consolidated class action complaint.  *See* No. 20-cv-3556-BLF (N.D. Cal.), ECF Nos. 26, 45, 52, 142.  Judge Freeman recently granted Google's motion to dismiss that consolidated complaint and gave the plaintiffs leave to file a further amended consolidated complaint.  *See* No. 20-cv-3556-BLF (N.D. Cal. May 13, 2021), ECF No. 143.

Judge Freeman is also presiding over a set of six putative class actions filed against Google by online publishers[1], which Judge Freeman consolidated into an action captioned *In re Google Digital Publisher Antitrust Litigation*.  *See* No. 20-cv-8984-BLF (N.D. Cal.), ECF Nos. 43, 64.  The publishers filed a consolidated class action complaint on April 5, 2021.  *Id.*, ECF No. 64.

Both the advertiser and the publisher cases before Judge Freeman generally allege that Google has violated Section 2 of the Sherman Act by exercising unlawful monopoly power in alleged markets related to digital advertising.  *See* First Am. Consol. Compl., *In re Google Digit. Advert. Antitrust Litig.*, No. 20-cv-3556-BLF (N.D. Cal. Dec. 4, 2020), ECF No. 52; Consol. Compl., *In re Google Digit. Publisher Antitrust Litig.*, No. 20-cv-8984-BLF (N.D. Cal. Apr. 5, 2021), ECF No. 64.

A few months after the filing of the initial case that became *In re Google Digital Advertising Litigation*, the Attorney General for the State of Texas, joined by attorneys general

---

[1]  Publishers in the digital advertising context refer to individuals or businesses who provide content to internet users and offer advertising space for sale on the platforms, websites and applications where the content is provided.

from nine other states, filed an action in the Eastern District of Texas (the "*Texas* Action") alleging Section 2 Sherman Act claims against Google related to alleged digital advertising markets.  *See* Compl., *Texas v. Google LLC*, No. 20-cv-00957 (E.D. Tex. Dec. 16, 2020), ECF No. 1.  The Section 2 claims and the alleged markets in the *Texas* Action overlap significantly with the allegations in the putative class actions before Judge Freeman in the Northern District of California.  *See* Am. Compl. ¶ 318, *Texas*, No. 20-cv-00957-SDJ, ECF No. 77 ("Google has monopoly power, or at a minimum, a dangerous probability of acquiring monopoly power, in the relevant online display advertising markets, including the market for publisher ad servers, the ad exchange and ad network markets, and in the markets for ad buying tools for large and small advertisers.").  The *Texas* Action also alleges that in September 2018 Facebook and Google entered into an "an unlawful agreement . . . in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, in which they agreed to allocate [bidding] auction wins and to fix display ad prices" (the "Google-Facebook Agreement").  *Id.* ¶¶ 183-95, 342.  The Google-Facebook Agreement relates to auctions on Google's advertising exchange for advertising inventory available on third-party platforms, websites and applications and is not related to advertising inventory on Facebook's owned and operated properties.[2]  *Id.* ¶¶ 230-32.  On May 20, 2021, the court presiding over the *Texas* Action denied Google's motion under 28 U.S.C. § 1404(a) to transfer the action to the Northern District of California to enable consolidation of that action with the related matters before Judge Freeman.  *See* Order, *Texas*, No. 20-cv-00957-SDJ, ECF No. 121.  Facebook is not a defendant in the *Texas* Action.

---

[2]  Facebook does not concede that plaintiffs in the *Texas* Action or in any of the Ad Tech Antitrust Cases accurately describe the purpose, terms, or effect of the Google-Facebook Agreement and disputes that any aspect of the Agreement is anticompetitive.

Since the Northern District of California cases and the *Texas* Action were filed, a series of related antitrust lawsuits have been filed around the country by various local newspaper publishers against not only Google, but also against Facebook.  The first Ad Tech Antitrust Case brought by a private plaintiff and involving Facebook was filed on January 29, 2021, by HD Media, a company that owns local newspapers in West Virginia.  In its complaint, HD Media alleges (much like the plaintiffs in the cases before Judge Freeman and the *Texas* Action) that Google has engaged in anticompetitive conduct related to digital advertising.  *See, e.g.*, Compl. ¶ 96, *HD Media Co., LLC v. Google LLC*, No. 21-cv-00077 (S.D. W. Va. Jan. 29, 2021), ECF No. 1 (alleging that "Google has monopoly power in the digital advertising market which is durable and its lead insurmountable").  HD Media also alleges that "Google and Facebook entered into an illegal agreement to preserve and protect their respective positions in the digital advertising market" and has asserted its own Section 1 claim based on the allegedly anticompetitive Google-Facebook Agreement.  *Id.* ¶¶ 76, 108-115.

On April 19, 2021, the same attorneys representing HD Media, acting on behalf of other newspaper owners, filed 12 nearly identical complaints against both Facebook and Google in 12 different districts.  *Compare, e.g., id.* ¶ 114 ("Plaintiff alleges, as described *supra*, that Google and Facebook engaged in per se violations of Section 1 wherein the rivals entered into a quid-pro-quo scheme wherein Facebook agreed not to challenge Google's advertising business in return for a very special treatment in Google's ad auctions."), *with* Compl. ¶ 117, *AIM Media Midwest Operating, LLC v. Google LLC*, No. 21-cv-01915-MHW-KAJ (S.D. Ohio Apr. 19, 2021), ECF No. 1 ("Plaintiff alleges, as described *supra*, that Google and Facebook engaged in per se violations of Section 1 by entering into a *quid-pro-quo* scheme wherein Facebook agreed not to challenge Google's advertising business in return for very special treatment in Google's ad

auctions.").[3]  The newspaper plaintiffs' complaints are essentially cut-and-paste copies of one another, differing only as to the named plaintiff, venue and state-law claims added to the federal antitrust claims.

In addition to the newspaper plaintiffs' complaints, on February 9, 2021, Cliffy Care Landscaping LLC—an advertiser—filed a putative class action in the United States District Court for the District of Columbia against both Google and Facebook asserting a Section 1 claim alleging that "[Google and Facebook] conspired to allocate to one another the advertisers and publishers affiliated with each network and to eliminate competition between them in the open display advertising market."  Compl. ¶ 5, *Cliffy Care Landscaping LLC v. Facebook, Inc.*, No. 21-cv-00360-KBJ (D.D.C. Feb. 9, 2021), ECF No. 1.  Cliffy Care's allegations bore a striking resemblance to the allegations set forth in the previously filed cases brought against Facebook and Google alleging that the Google-Facebook Agreement violated Section 1 of the Sherman Act.  *Compare*, *e.g.*, *id.* ¶ 48 (alleging that the Google-Facebook Agreement resulted in Defendants "rigging auctions so that Facebook would achieve a guaranteed win rate"), *with* Compl. ¶¶ 86-87, *HD Media*, No. 21-cv-00077, ECF No. 1 (alleging that the Google-Facebook Agreement constitutes a "bid rigging agreement" under which "Google agreed that Facebook

---

[3]  The 12 actions are:  *AIM Media Indiana Operating, LLC v. Google, LLC*, No. 21-cv-00951-JPH-DLP (S.D. Ind.); *AIM Media Midwest Operating, LLC v. Google, LLC*, No. 21-cv-01915-MHW-KAJ (S.D. Ohio); *AIM Media Texas Operating, LLC v. Google, LLC*, No. 21-cv-00150 (S.D. Tex.); *Brown Cnty. Publ'g Co. v. Google, LLC*, No. 21-cv-00498 (E.D. Wis.); *Clarksburg Publ'g Co, v. Google, LLC*, No. 21-cv-00051-IMK (N.D. W. Va.); *Coastal Point LLC v. Google, LLC*, No. 21-cv-00554 (D. Del.); *Eagle Printing Co. v. Google, LLC*, No. 21-cv-00518 (W.D. Pa.); *ECENT Corp. v. Google, LLC*, No. 21-cv-00251 (S.D. W. Va.); *Emmerich Newspapers, Inc. v. Google, LLC*, No. 21-cv-00274 (S.D. Miss.); *Flag Publications, Inc. v. Google, LLC*, No. 21-cv-00965 (D. Md.); *Gale Force Media, LLC v. Google LLC*, No. 21-cv-09716 (D.N.J.); *Journal, Inc. v. Google, LLC*, No. 21-cv-00072 (N.D. Miss.).

would win a fixed percentage of [] auctions").  The following month, counsel for Cliffy Care filed two more putative class actions in the District of Columbia that mirrored the *Cliffy Care* complaint.  *See* Compl., *Kinin, Inc. v. Facebook, Inc.*, No. 21-cv-00622-KBJ (D.D.C. Mar. 8, 2021), ECF No. 1; *Raintree Med. & Chiropractic Ctr. LLC v. Facebook, Inc.*, No. 21-cv-00658 (D.D.C. Mar. 12, 2021), ECF No. 1.[4]

As described above, the Ad Tech Antitrust Cases originally concerned only Google. Even today, the bulk of the allegations in the majority of these cases concern conduct allegedly undertaken by Google that has nothing to do with Facebook.  Now, however, a number of those cases have begun to include Facebook as well.[5]  Facebook vigorously contests the allegations that the Google-Facebook Agreement is anticompetitive; to the contrary, it is an agreement that increases opportunities for Facebook's customers who want to utilize Facebook's advertising targeting capabilities to place digital advertisements on applications not owned by Facebook and enhances competition for the benefit of publishers who utilize Google's advertising auctions. The critical point for the instant Motion, however, is that all of these various proceedings around the country share common questions of fact and law, and should therefore be centralized for the efficiency of the litigants and the courts.

---

[4]  The court consolidated *Cliffy Care, Kinin* and *Raintree* on April 19, 2021, and on May 19, 2021, plaintiffs filed a consolidated amended complaint.  *See* Consol. Am. Compl., *Cliffy Care*, No. 21-cv-00360-KBH, ECF No. 25.

[5]  Another putative advertiser class action, *Klein v. Facebook, Inc.*, No. 20-cv-8570-LHK (N.D. Cal.), is currently pending in the Northern District of California before Judge Lucy Koh. The *Klein* case broadly alleges that Facebook engaged in anticompetitive conduct in alleged markets related to digital advertising and includes, among others, a claim under Section 1 of the Sherman Act based on the Google-Facebook Agreement.

**DISCUSSION**

**I.     The Panel Should Transfer and Centralize the Ad Tech Antitrust Cases**

Centralization is appropriate where it will maximize "the convenience of parties and witnesses" and "promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a). The Panel has previously centralized cases where they will "focus on a significant number of common events, defendants, and/or witnesses," *In re UnumProvident Corp. Sec. Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003), so that the parties can avoid duplicative discovery as well as the potential for inconsistent deadlines and rulings, *see In re: Camp Lejeune, N.C. Water Contamination Litig.*, 763 F. Supp. 2d 1381, 1381-82 (J.P.M.L. 2011) (centralizing four actions to preclude duplicative discovery).  The standard for centralization is satisfied here.

*First*, centralizing the cases at this early stage of the litigation will enable the transferee court to enter a case management plan that achieves a "just and efficient" resolution of the actions.  28 U.S.C. § 1407(a).  Of the 28 Ad Tech Antitrust Cases that have been filed to date, 18 involve Section 1 claims related to the Google-Facebook Agreement and those 18 actions are pending in 15 different federal district courts.  Notably, the near-identical copycat actions filed by the newspaper plaintiffs account for 13 of the Section 1 Ad Tech Antitrust Cases, all the newspaper plaintiffs are represented by the same counsel, and counsel for the newspaper plaintiffs orchestrated filing those 13 actions in 12 different federal courts.  (*See* App. A, Schedule of Actions.)  Similarly, counsel in the *Cliffy Care* case coordinated the filing of three near-identical putative class actions in the District of Columbia alleging Section 1 claims related to the Google-Facebook Agreement.  *See* Compl., *Cliffy Care*, No. 21-cv-00360-KBJ; Compl., *Kinin*, No. 21-cv-00622-KBJ; Compl., *Raintree Med.*, No. 21-cv-00658-KBJ.

Given the close relationship of the claims at issue in the Ad Tech Antitrust Cases, these cases will involve common pretrial motions (including motions to dismiss) and similar discovery demands.  Discovery and dispositive motion practice will focus on issues that include, but are not limited to:  (1) whether plaintiffs have adequately alleged or established that their alleged markets related to digital advertising and Google's ad tech services include all relevant products and economic substitutes; (2) whether any of Google's conduct related to its ad tech services is exclusionary conduct that rises to the level of a violation of Section 2 of the Sherman Act; (3) whether the *per se* rule or the rule of reason applies to plaintiffs' Section 1 claims related to the allegedly anticompetitive Google-Facebook Agreement; (4) whether plaintiffs can establish that the Google-Facebook Agreement contains any provisions showing that Google and Facebook agreed not to compete with one another in plaintiffs' alleged markets; and (5) whether, as plaintiffs allege, the Google-Facebook Agreement caused plaintiffs to suffer an injury such as supra-competitive pricing that can be traced to impacts of the Google-Facebook Agreement.

As a result, the Ad Tech Antitrust Cases "share factual [and legal issues] arising from allegations of anticompetitive conduct" and the "alleged anticompetitive conduct appears [] to implicate a[n] . . . agreement between" Google and Facebook that purportedly restrained competition.  *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 412 F. Supp. 3d 1344, 1346 (J.P.M.L. 2019).  Given the diversity of federal districts in which these 28 actions were filed, and the different speeds at which actions tend to proceed in different districts, it is unlikely that pretrial motions, including any potential motions to dismiss and/or discovery motions, would be resolved within the same time frame.  Nor is there any guarantee that those motions would be decided consistently, meaning that common questions of fact and law might be decided by different judges on different schedules, at different procedural postures, on

different records, and, ultimately, in different ways.  Absent centralization, the result would therefore be an inefficient use of the parties' and the courts' resources and a possibility of inconsistent rulings from various courts—the precise result centralization is designed to prevent. *See In re Google Antitrust Litig.*, MDL No. 2981, 2021 WL 409555, at *2 (J.P.M.L. Feb. 5, 2021) (finding that "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings . . . ; and conserve the resources of the parties, their counsel, and the judiciary").

*Second*, "a potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring . . . related actions to a single district," *In re Plumbing Fixtures*, 308 F. Supp. 242, 244 (J.P.M.L. 1970) (transferring four potentially conflicting class actions), and proceeding without centralization may result in the "pretrial chaos in conflicting class action determinations" that Section 1407 was "designed" to avoid, *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 492-93 (J.P.M.L. 1968).  Here, four of the Ad Tech Antitrust Cases are putative class actions and seek certification of the same or similar putative classes (*see* App. C, Proposed Class Definitions); a fact that supports centralization.

*Third*, consistent with the Panel's instruction, Facebook has assessed "alternatives to centralization" (ECF No. 4) and has concluded that centralization is the only feasible path forward.  Informal coordination of discovery among the jurisdictions would be nearly impossible, given "the number of involved counsel" and "the large number of actions and districts," which "pose significant obstacles to informal coordination."  *In re Eliquis (Apixaban) Prod. Liab. Litig.*, 282 F. Supp. 3d 1354, 1355 (J.P.M.L. 2017); *see also In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 65 F. Supp. 3d 1402, 1404 (J.P.M.L. 2014) (centralizing cases where "the considerable growth in the litigation over the past few months demonstrate[d] that informal coordination is not practicable").

Individual transfer motions pursuant to 28 U.S.C. § 1404 also are not a feasible option. The numerous federal district and magistrate judges currently presiding over the 16 Ad Tech Antitrust Cases in which Facebook is a defendant and the two other actions containing allegations related to the Google-Facebook Agreement have "discretion to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F. 3d 495, 498 (9th Cir. 2000) (citations omitted). In addition to the burden of filing numerous individual transfer motions, it is far from certain that Facebook and Google would succeed in transferring the various Ad Tech Antitrust Cases to a single venue. *See In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1380-81 (J.P.M.L. 2013) (finding there was "not a sufficiently reasonable prospect" that Section 1404 could be relied upon to centralize four actions and one potential tag-along action). As noted, the court presiding over the *Texas* Action has already declined to transfer that case to the Northern District of California, even though first-filed and already consolidated actions are proceeding in that court. *See* Order, *Texas*, No. 20-cv-00957-SDJ, ECF No. 121.

For these reasons, centralization pursuant to 28 U.S.C. § 1407 presents the most efficient and least burdensome option for the parties and the courts alike.

## II.   The Panel Should Select the Northern District of California as the Transferee Court

Facebook also agrees with Google's position that the Northern District of California is the most appropriate venue in which to centralize the Ad Tech Antitrust Cases. *See* Motion § III.B. Facebook and Google both are headquartered within the Northern District of California and the majority of potentially relevant witnesses and documents are located in that district. *See In re Wells Fargo Auto Ins. Mktg. & Sales Pracs. Litig.*, 273 F. Supp. 3d 1383, 1384 (J.P.M.L. 2017) (ordering centralization where "the key entities and individuals with direct

responsibility for the alleged conduct in this litigation are located . . . and, therefore, [the location of the] relevant documents and witnesses").

Facebook also agrees that Judge Beth Labson Freeman is the most appropriate judge to oversee the centralized action.  *See* Motion § III.B.  Although the Northern District of California presently has a number of MDL proceedings, Judge Freeman is not currently overseeing any MDL proceedings.[6]  *See In re Pamidronate Prod. Liab. Litig.*, 657 F. Supp. 2d 1368, 1369 (J.P.M.L. 2009) (assigning a centralized action "to a judge who is not presently presiding over another multidistrict litigation docket").

Other reasons that support assigning the centralized action to Judge Freeman include: (1) she is presiding over the first-filed Ad Tech Antitrust Case; (2) she is presiding over the largest number of Ad Tech Antitrust Cases; (3) she is experienced in handling complex antitrust cases, including antitrust cases against Facebook[7]; and (4) the cases before Judge Freeman are the most advanced.  *See In re Sensipar*, 412 F. Supp. 3d at 1346-47 (assigning a centralized action to a judge who was presiding over "[t]he three earliest-filed actions", oversaw "[s]ignificant pretrial activity," "already [] gained substantial familiarity with many aspects of th[e] litigation" and "is an experienced transferee judge").  In particular, on May 13, 2021, after Google filed its request for centralization before this Panel, Judge Freeman granted Google's motion to dismiss the consolidated complaint in *In re Google Digital Advertising Litigation*,

---

[6]  *See* MDL Statistics Report – Distribution of Pending MDL Dockets by District (Apr. 15, 2021), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-15-2021.pdf.

[7]  *See, e.g.*, *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981 (N.D. Cal. 2020); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020); *Frost v. LG Elec. Inc.*, No. 16-CV-05206-BLF, 2018 WL 6256790 (N.D. Cal. July 9, 2018), *aff'd sub nom.* 801 F. App'x 496 (9th Cir. 2020); *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019 (N.D. Cal. 2015).

No. 20-cv-3556-BLF, and gave the plaintiffs leave to file a further amended consolidated complaint. *See* ECF No. 143. Judge Freeman's opinion addressed a number of issues that will be presented in the Ad Tech Antitrust Cases going forward, including whether plaintiffs adequately alleged an advertising market that sufficiently accounted for interchangeable economic substitutes for the digital advertising products at issue, whether plaintiffs adequately alleged that Google engaged in anticompetitive conduct related to digital advertising and whether plaintiffs adequately alleged an injury caused by Google's allegedly anticompetitive conduct. *See id*. at 5-10. Given the more advanced (but still early) stage of the cases pending before Judge Freeman, no other court presiding over an Ad Tech Antitrust Case has the familiarity with the issues that Judge Freeman does. *See In re Trade Partners, Inc., Invs. Litig.*, 493 F. Supp. 2d 1381, 1381-82 (J.P.M.L. 2007) (selecting a transferee judge presiding over the action that was "pending far longer than the actions pending elsewhere . . . [and] has become familiar with the issues in the litigation").

Facebook also agrees with Google that the Eastern District of Texas is not an appropriate venue in which to centralize the cases for a variety of reasons.

*First*, there is no meaningful connection between the Eastern District of Texas and the alleged conduct or the allegedly anticompetitive Google-Facebook Agreement at the center of these proceedings. The allegedly anticompetitive conduct the plaintiffs describe in the complaints did not take place in Texas, the allegedly anticompetitive Google-Facebook Agreement was not executed in Texas and neither Facebook nor Google—the only defendants in the Ad Tech Antitrust Cases—are based in the Eastern District of Texas or anywhere near that district. The Panel has previously declined to transfer and centralize cases in a district where the district has little to no connection to the parties or the conduct at issue. *See In re Toilet Seat*

*Antitrust Litig.*, 387 F. Supp. 1342, 1343 n.2 (J.P.M.L. 1975) (rejecting plaintiffs' request to transfer an action to the District of Columbia, because "[o]ther than the fact that one action has been instituted there, that district has no connection with this litigation and we reject it as an appropriate situs for these Section 1407 proceedings").

*Second*, two of the factors most relevant to centralization—accessibility and judicial economy—demonstrate that the Northern District of California is the most suitable forum. With respect to accessibility, the metropolitan Northern District of California is readily accessible, including the San Jose division where Judge Freeman sits, as the district is near two large airports and proximate to Silicon Valley, which favors transfer and centralization in the Northern District of California. *See In re Jamster Mktg. Litig.*, 427 F. Supp. 1366, 1367-68 (J.P.M.L. 2006) (centralizing an action in the Southern District of California because, *inter alia*, the venue "provide[d] an accessible metropolitan location").

With respect to judicial economy, (1) unlike the court in the *Texas* Action—which has yet to rule on a motion regarding the substance of the allegations at issue in the Ad Tech Antitrust Cases—Judge Freeman is closely familiar with the relevant allegations and legal issues given that she has written an opinion granting Google's motion to dismiss the consolidated complaint in *In re Google Digital Advertising Litigation*; and (2) the *Texas* Action is the only Ad Tech Antitrust Action currently pending in the Eastern District of Texas, whereas 10 of the 28 Ad Tech Antitrust Cases, including the earliest filed cases, are currently pending in the Northern District of California. *See In re Sensipar*, 412 F. Supp. 3d at 1346-47; *see also In re AndroGel*

*Prod. Liab. Litig.*, 24 F. Supp. 3d 1378, 1380 (J.P.M.L. 2014) (selecting as the transferee district, the district where a "significant number of actions are pending").

*Third,* the fact that the court presiding over the *Texas* Action declined to transfer that case to the Northern District of California does not weigh against centralization in the Northern District of California.  This Panel has explained that transferor judge decisions denying Section 1404 motions are of little import to the Panel's centralization decision because "[f]actors in a denial of Section 1404(a) transfer are different from the criteria for Section 1407 centralization." *In re Radioshack Corp. "Erisa" Litig.*, 528 F. Supp. 2d 1348, 1349 (J.P.M.L. 2007); *see also* D. Herr, Multidistrict Litigation Manual § 6:11 (2021) ("Neither the pendency nor denial of a motion for transfer under § 1404(a) directly affects the Panel's selection of a transferee district."); *In re IBP Confidential Bus. Documents Litig.*, 491 F. Supp. 1359, 1361-63 (J.P.M.L. 1980) (centralizing actions in a district to which a transferor judge had declined to transfer an action pursuant to Section 1404(a)); *In re Air Crash Disaster at Toronto Int'l Airport on July 5, 1970*, 346 F. Supp. 533, 534 (J.P.M.L. 1972) (same).  In denying Google's Section 1404 motion, the court presiding over the *Texas* Action was required to consider primarily the interests of the plaintiffs who had chosen to bring suit in Texas and the single defendant in that action (Google). By contrast, the Panel "must consider not just the parties to [one action], but the parties in [numerous similar] actions pending" in federal courts around the country.  *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, MDL No. 2800, 2018 WL 3770539, at *1 (J.P.M.L. Aug. 8, 2018).  The cases at issue in this Motion involve more than 70 plaintiffs who filed 28 actions in a

14

variety of locations—with more actions (10) filed in the Northern District than in any other district—and two defendants that are both based in the Northern District of California.

Similarly, in denying the Section 1404 motion, the court in the *Texas* Action emphasized the differences it had identified between that case and the putative class actions pending against Google in the Northern District of California. *See* Order at 15, *Texas*, No. 20-cv-00957-SDJ, ECF No. 121 (noting existence of distinct legal theories and class certification issues present in the Northern District of California cases as compared to the *Texas* Action). But even if those differences were sufficient to defeat Google's Section 1404 motion, "transfer under Section 1407 does not require a complete identity . . . of common factual issues" or parties. *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004); *see also In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008) ("Plaintiffs argue against transfer, *inter alia*, that their action, which pleads claims under state statutory and common law on behalf of the state and a political subdivision, does not share sufficient questions of fact with the antitrust claims in [the pending] MDL [], which include claims brought on behalf of putative classes . . . . [The Panel] respectfully disagree[s] with this argument. . . . [T]he actions still arise from a common factual core, in this instance, the alleged anticompetitive conduct of defendants . . . ."). Instead, the critical issue for the Panel is whether there are sufficiently overlapping factual and legal issues that serve the interests of judicial economy—in particular, the interest in avoiding inconsistent determinations—and thereby favor centralization. On that point, the court's decision to deny transfer in the *Texas* Action directly supports centralization, as that court specifically found that "the central allegations in the cases pending against [Google] in the Northern District of California mirror the core allegations of the Plaintiff States [in the *Texas* Action]; that is, that Google has engaged in purportedly anticompetitive conduct in markets

associated with online display advertising." *See* Order at 15, *Texas*, No. 20-cv-00957-SDJ, ECF No. 121.

*Fourth*, the fact that the single action pending in the Eastern District of Texas was brought by state attorneys general (as opposed to private plaintiffs) is also not a reason to centralize the actions there as opposed to the Northern District of California.  Texas is only 1 of the 14 plaintiff-states in the *Texas* Action.  *See* Am. Compl. ¶ 1, *Texas*, No. 20-cv-00957-SDJ, ECF No. 77 (stating that the plaintiff-states in the *Texas* Action are:  Texas, Alaska, Arkansas, Florida, Idaho, Indiana, Mississippi, Missouri, Montana, Nevada, North Dakota, South Dakota, Utah, and the Commonwealths of Kentucky and Puerto Rico).  For the reasons noted above, including the location of Facebook's and Google's headquarters, litigating in Northern California will be more convenient than litigating in East Texas for the various plaintiff-states in the *Texas* Action, especially the numerous states located on the west coast and in the mountain west.  This Panel has previously centralized such *parens patriae* actions in the district in which the defendants were based regardless of where the state attorneys general elected to file.  *See, e.g.*, *In re Standard & Poor's Rating Agency Litig.*, 949 F. Supp. 2d 1360, 1362-63 (J.P.M.L. 2013) (centralizing actions brought by attorneys general of fifteen states in the Southern District of New York, where the defendant was based, even though none of the attorneys general had filed suit there).

In sum, the facts and circumstances related to the Ad Tech Antitrust Cases favor transferring and centralizing the cases in the Northern District of California, not the Eastern District of Texas, and selection of Judge Freeman as the transferee judge.

\*   \*   \*

**CONCLUSION**

For the foregoing reasons, Facebook respectfully requests that the Panel grant the Motion and centralize the Ad Tech Antitrust Cases in the Northern District of California before Judge Freeman.

Dated:  May 26, 2021                                       Respectfully submitted,

                                                          CRAVATH, SWAINE & MOORE LLP

                                                           /s/ Kevin J. Orsini
                                                          _____

                                                          Kevin J. Orsini
                                                          New York Bar. No. 4261806
                                                          Worldwide Plaza
                                                          825 Eighth Avenue
                                                          New York, New York 10019
                                                          Telephone: (212) 474-1000
                                                          Facsimile: (212) 474-3700
                                                          Email:  korsini@cravath.com

                                                          *Counsel for Facebook, Inc.*