BEFORE THE UNITED STATES
JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: DIGITAL ADVERTISING ) MDL No. 3010
ANTITRUST LITIGATION )

RESPONSE IN OPPOSITION TO MOTION
FOR TRANSFER AND CENTRALIZATION

The named plaintiffs in *In re Google Digital Publisher Antitrust Litig.*, No. 20-cv-08984 (N.D. Cal.), Genius Media Group, Inc.; Sterling International Consulting Group; Sweepstakes Today LLC; The Nation Company, L.P.; The Progressive, Inc.; JLaSalle Enterprises LLC; and Mikula Web Solutions, Inc., individually, and on behalf of all others similarly situated, respectfully submit this response in opposition to the motion of Google LLC, Alphabet Inc., and YouTube, LLC (collectively, "Google") for transfer and centralization pursuant to 28 U.S.C. § 1407.[1] In that motion, Google requests that the Panel centralize *Google Digital Publisher* with *In re Google Digital Advertising Antitrust Litig.*, No. 20-cv-03556 (N.D. Cal.); *Organic Panaceas, LLC v. Google LLC*, No. 21-cv-02629 (N.D. Cal.); *Negron v. Google LLC*, No. 21-cv-00801 (N.D. Cal.); *Cliffy Care Landscaping LLC v. Facebook, Inc.*, No. 21-cv-00360 (D.D.C.); *Texas v. Google, LLC*, No. 20-cv-00957 (E.D. Tex.); *Clarksburg Publishing Company v. Google LLC*, No. 21-cv-00051 (N.D.W. Va.); *HD Media Co. v. Google, LLC*, No. 21-cv-00077 (S.D.W. Va); *ECENT Corp. v. Google, LLC*, No. 21-cv-00251 (S.D.W. Va); *AIM Media Indiana Operating, LLC v. Google, LLC*, No. 21-cv-00951 (S.D. Ind.); *AIM Media Midwest Operating, LLC v. Google, LLC*, No. 21-cv-01915 (S.D. Ohio); *AIM Media Texas Operating, LLC v.*

---

[1] In this response, we cite the materials in this Panel's docket as "R. ___" and the materials in other dockets as "[*Case Name*], R. ___."

1

*Google, LLC*, No. 21-cv-00150 (S.D. Tex.); *Brown County Publishing Co. v. Google LLC*, No. 21-cv-00498 (E.D. Wis.); *Flag Publications, Inc. v. Google, LLC*, No. 21-cv-00965 (D. Md.); *Gale Force Media, LLC v. Google, LLC*, No. 21-cv-09716 (D.N.J.); *Associated Newspapers Ltd. v. Google LLC*, No. 21-cv-03446 (S.D.N.Y.); *Coastal Point LLC v. Google LLC*, No. 21-cv-00554 (D. Del.); *Journal, Inc. v. Google, LLC*, No. 21-cv-00072 (N.D. Miss.); *Emmerich Newspapers Inc. v. Google, LLC*, No. 21-cv-00274 (S.D. Miss.); and *Eagle Printing Co. v. Google, LLC*, No. 21-cv-00518 (W.D. Penn.) (collectively, the "ad tech actions"). R. 1-1 at 10-16. Google further requests that the Panel transfer the ad tech actions to the Northern District of California for pretrial proceedings before Judge Beth Freeman. *Id.* at 16-19. Finally, Google requests that the *Texas* action be transferred "for both pretrial and trial." *Id.* at 19.

These requests are premature. This Panel's prior decisions make clear that centralization under section 1407 is a remedy of last resort, to be invoked only after it has become apparent that neither informal coordination nor less intrusive judicial mechanisms will adequately advance parties' and witnesses' convenience and the just and efficient conduct of the actions. Ignoring those decisions, Google treats centralization as a first resort, bringing its motion almost immediately after the filing of the lion's share of the actions it seeks to transfer, without any meaningful attempt at informal coordination or less intrusive judicial intervention. This requires denial of Google's motion, without prejudice, to give the parties a reasonable opportunity to explore whether informal coordination or less intrusive judicial mechanisms can achieve the same efficiencies as multidistrict litigation, but without the severe inconvenience of transferring multiple actions across the country. Further, the *Texas* action should not be centralized with the other actions because the several sovereign states bringing that action have interests that significantly diverge from those of the private ad tech plaintiffs. Should this Panel nonetheless

choose to centralize the ad tech actions in whole or in part, it would be appropriate to centralize them in the Northern District of California for pretrial proceedings before Judge Freeman, who is presiding over the two ad tech proposed class actions.[2]

## I.     GOOGLE'S MOTION IS PREMATURE

Google's motion should be denied because it is premature. Under section 1407, the Panel may order the transfer and centralization of cases pending in different judicial districts if (1) those cases involve "one or more common questions of fact;" and (2) centralization "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). While Google correctly observes (but significantly overstates) that there is some factual overlap among the various ad tech actions, it has long been clear that this is not enough to mandate centralization. This is because the objectives of section 1407

> are not necessarily served by requiring joint pretrial whenever some—even many—questions of fact are common to a large number of cases. In some such cases . . . coordination and consolidation may impair, not further, convenience, justice and efficiency. To put it in other words, neither the convenience of witnesses and parties nor the just and efficient conduct of actions are served, ipso facto, by transfer just because there are common questions of fact in the civil actions involved.

*In re Concrete Pipe*, 302 F. Supp. 244, 254 (J.P.M.L. 1969) (Weigel, J., concurring). In fact, "[t]here are a number of inherent inconveniences in transfers for coordinated or consolidated pretrial." *Id.*

> Some plaintiffs are temporarily deprived of their choices of forum and some defendants may be forced to litigate in districts where they could not have been sued. Considerable time and trouble are involved in the sheer mechanics of transferring and remanding. After transfer, the process of segregating the pretrial matters which should be remanded for handling by the transferor courts may be time-consuming as well as subject to reasonable disagreement. Since remand

---

[2] These Publisher Plaintiffs take no position regarding Google's request to transfer *Texas* for trial if it is transferred for centralization.

> must be by order of the Panel, the Panel may have to hold further hearings to
> resolve disagreements among the parties.

*Id.* at 254-55 (footnote omitted).

As a result, "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). And as this Panel has recognized, those options are not lacking. To the contrary:

> Various mechanisms are available to minimize or eliminate the possibility of
> duplicative discovery even without an MDL. Notices of deposition can be filed in
> all related actions; the parties can stipulate that any discovery relevant to more
> than one action can be used in all those actions; or the involved courts may direct
> the parties to coordinate their pretrial activities.

*In re Crest Sensitivity Treatment & Prot. Toothpaste Mktg. & Sales Pracs. Litig.*, 867 F. Supp. 2d 1348, 1348 (J.P.M.L. 2012). And informal coordination among the courts can reduce the risk that they will reach inconsistent rulings. *See*, *e.g.*, *In re Am. Exp. Co. Anti-Steering Rules Antitrust Litig.*, 657 F. Supp. 2d 1365, 1366 (J.P.M.L. 2009) (denying centralization, noting that the involved courts could "coordinate their efforts in order to avoid as much as practicable inconsistent pretrial rulings"). It is only if the movant can demonstrate that centralization – despite its inherent inconvenience – will better advance the convenience of witnesses and parties and the just and efficient conduct of actions than informal coordination that a motion under section 1407 should be granted. *See*, *e.g.*, *Best Buy*, 804 F. Supp. 2d at 1379 (denying motion because involved "cases can proceed just as efficiently without centralization"); *see also Concrete Pipe*, 302 F. Supp. at 255 (Weigel, J., concurring) ("The basic question before the Panel in each proceeding looking to coordinated or consolidated pretrial is, then, whether the objectives of the statute are sufficiently served to justify the necessary inconveniences of transfer and remand.").

4

Google cannot make this showing at this time. While Google declares that coordination "would be too complicated to undertake informally" without an MDL, R. 1-1 at 9, Google does not claim that it has even *attempted* informal coordination, whether by requesting, *e.g.*, that notices of deposition be filed simultaneously in all the ad tech actions (or at least groups of those cases) or by requesting a stipulation that discovery relevant to one ad tech action may be used in all others. Indeed, the timing of Google's motion for centralization into an MDL belies any serious effort at informal coordination. Less than two weeks after 12 of the 13 newspaper actions – the majority of the ad tech actions Google now seeks to transfer – were filed, Google moved before this panel on April 30, 2021. Nor does Google offer any reason that it could not ask the various courts to simply direct the parties to coordinate their pretrial activities – had Google done so, it would have learned that Plaintiffs would readily agree to such an order, (as Plaintiffs have in the two separate class actions before Judge Freeman for publishers and for advertisers, respectively), as would all 13 of the newspaper plaintiffs, R. 68 at 7 n.15.

Rather, Google simply throws its hands in the air, declaring that there are "too many lawsuits" to coordinate and that any "[o]vertures about working together will evaporate when the different plaintiff groups actually start litigating their cases." R. 1-1 at 15. But, as we observe above, merely noting the existence of "a large number of cases" sharing common facts is never enough to warrant all the inherent inconvenience of a formal MDL proceeding. *Concrete Pipe*, 302 F. Supp. at 254 (Weigel, J., concurring). And Google's belief that Plaintiffs will not honor their promises to coordinate is baseless speculation – again, Google does not claim that it ever even *attempted* informal coordination, so it has no basis whatsoever for believing any plaintiffs will go back on their promises to coordinate. That is particularly true since 13 of the actions Google seeks to centralize "were filed by the same counsel," R. 1-1 at 7 – the fact that "a great

number of the plaintiffs are represented by the same counsel" shows that "the opportunity exists for gaining many of the advantages of transfer through informal cooperation." *Concrete Pipe*, 302 F. Supp. at 256 (Weigel, J., concurring); *see* R. 68 at 7 n.15 (expressing no objection to informal coordination). Moreover, any concern Google might have that a plaintiff might backtrack on a promise to coordinate can be easily addressed without requiring formal centralization, by simply requesting a stipulation or agreed order requiring coordination among the various plaintiffs. *See Crest*, 867 F. Supp. 2d at 1348.

Google also pays short shrift to the prospect of utilizing judicial mechanisms short of formal centralization, such as motions to transfer under section 1404, proclaiming instead that "judicial efficiency requires centralization." R. 1-1 at 14. But Judge Freeman has already achieved significant efficiencies in the *Google Digital Advertising* and *Google Digital Publisher* actions currently pending before her in the Northern District of California, and without formal centralization. Despite recognizing that the several complaints underlying those actions were related to each other, Judge Freeman did not simply lump all those actions together – as Google seeks here – but instead determined that the claims brought by advertisers should be consolidated into one action, *Google Digital Advertising*, R. 142, and the claims brought by publishers should be consolidated into another, *Google Digital Publisher*, R. 49. She has also formed a committee with representatives from each of those two actions to coordinate discovery. *Google Digital Publisher*, R. 74. So arranged, the *Google Digital Advertising* and *Google Digital Publisher* actions are now coordinated, but not consolidated, and are proceeding efficiently along parallel but separate tracks. And by maintaining those class actions on separate tracks, Judge Freeman crafted a nuanced solution that accommodated the facts, among other differences, that (1) publishers and advertisers stand in very different positions *vis-à-vis* Google in part because

publishers are direct competitors with Google, while advertisers are not; and (2) Google's anticompetitive conduct targets advertiser-side ad tools differently than it targets publisher-side tools.

In sum, Google has no good faith basis for asserting at this time that neither informal coordination among the parties nor other judicial mechanisms can achieve sufficient coordination to make formal centralization under section 1407 unnecessary. Accordingly, this Panel should deny Google's motion without prejudice.

## II. IF THIS PANEL ORDERS CENTRALIZATION, TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA WOULD BE APPROPRIATE.

If the Panel disagrees and orders centralization of any or all of the ad tech actions, the *Google Digital Advertising* and *Google Digital Publisher* actions should be maintained on separate tracks for discovery and motion practice, in order to maintain the efficiencies those actions have already realized from that structure in their separate albeit coordinated proceedings. The *Texas* action, if it is transferred with other ad tech actions, should also be placed on its own separate track to reflect that, as sovereigns, the plaintiff States have interests that significantly diverge from those of the private plaintiffs in all the other ad tech actions. But as this Panel has explained, the determination whether to break an MDL into different tracks is a matter for the transferee court. *E.g.*, *In re Generic Pharms. Pricing Antitrust Litig.*, No. MDL 2724, 2017 WL 4582710, at *2 (J.P.M.L. Aug. 3, 2017); *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Pracs. Litig.*, 582 F. Supp. 2d 1373, 1375 (J.P.M.L. 2008).

That said, if this Panel orders centralization, Plaintiffs believe it would be most appropriate to transfer the ad tech actions for centralization before Judge Freeman in the Northern District of California. Centralization in the Northern District of California before Judge Freeman would be appropriate for the reasons set forth in Google's motion. R. 1-1 at 16-

7

18. As Google notes, that district is conveniently located near Google's headquarters and, thus, the bulk of its likely witnesses. In addition, it is home to the first-filed ad tech action, and Judge Freeman has already coordinated eight of the ad tech actions pending there into two separate class proceedings over which she is now presiding.

## CONCLUSION

For all the reasons stated above, Plaintiffs respectfully request that the Panel deny Google's motion to centralize without prejudice. In the alternative, if the Panel determines that centralization is appropriate, Plaintiffs respectfully request that the Panel transfer some or all of the actions to the Northern District of California for pretrial proceedings before Judge Freeman.

Dated: May 26, 2021    BOIES SCHILLER FLEXNER LLP

By: */s/ Philip C. Korologos*
Philip C. Korologos
pkorologos@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Tel.: (212) 446-2300 / Fax: (212) 446-2350

*Attorneys for Plaintiffs Genius Media Group, Inc., Sterling International Consulting Group, The Nation Company, L.P., The Progressive, Inc., Sweepstakes Today, LLC, JLaSalle Enterprises LLC, and Mikula Web Solutions, Inc.*