BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: DIGITAL ADVERTISING ANTITRUST LITIGATION | ) ) ) ) | MDL No. 3010 |

MEMORANDUM OF ADVERTISER PLAINTIFFS
IN OPPOSITION TO MOTION FOR TRANSFER AND CENTRALIZATION

The Advertiser Plaintiffs in *In re Google Digital Advertising Antitrust Litigation*, No. 5:20-cv-03556, a proposed class action pending in the Northern District of California (the "Digital Advertiser Case"), oppose Google's[1] motion for transfer and centralization ("Pet."). The Digital Advertiser Case was consolidated before U.S. District Judge Beth Labson Freeman in the summer of 2020. This spring, Judge Freeman established a leadership structure along with protocols for coordinating discovery and other matters with Publisher Plaintiffs in a parallel consolidated class action, *In re Google Digital Publisher Antitrust Litigation*, No. 5:20-cv-8984. *See* Digital Advertiser Case, No. 5:20-cv-03556, ECF Nos. 133, 134. The Court has directed the Advertiser Plaintiffs to file a Second Amended Complaint following its May 13, 2021 decision on Google's motion to dismiss. *Id.*, ECF No. 143.

The other private cases not before Judge Freeman remain in their infancy, and transfer could add months or years to the duration of the Digital Advertiser Case—which began months before any other Google advertising antitrust case, in May 2020. The class litigation is proceeding efficiently in the Northern District of California with separate but coordinated

---

[1] Movants Google LLC, Alphabet Inc. and YouTube, LLC are referred to collectively as "Google."

advertiser and publisher tracks.  "It's not an MDL because it's only one district, but it's a lot of cases that have come together," Judge Freeman noted.  *Id.*, ECF No. 119 (4/1/21 CMC Hr'g Tr.) at 7.  Bringing in another defendant, Facebook, would needlessly complicate this ongoing litigation and the Panel should allow the consolidated antitrust class actions against Google to proceed undisturbed.

I.       **Centralization is unnecessary and could cause inefficiency.**

Centralization may be appropriate for cases involving common facts if it will be "for the convenience of parties and witnesses" and "promote the just and efficient conduct" of the actions.  28 U.S.C. § 1407(a).  Here, although there are common issues of fact among the tagged cases,[2] centralization likely would not promote their just and efficient conduct.

The cases brought against Google (and not Facebook) on behalf of advertisers who used Google's services to place display ads are already consolidated,[3] with a plan in place to coordinate closely with the Publisher Plaintiffs.  Counsel have been acting on that plan, for example by serving Google with joint document requests in April 2021.  Judge Freeman appointed lead counsel and steering committees for both the Advertiser and Publisher Plaintiffs, as well as a joint discovery committee to coordinate between the two groups.  *See* 20-cv-3556 (N.D. Cal.), ECF Nos. 133, 134 & 20-cv-8984 (N.D. Cal.), ECF Nos. 74, 76.  In addition to being coordinated, these cases have made procedural headway.  Most recently, the Court heard oral argument on Google's motion to dismiss the Digital Advertiser Case and issued an order granting that motion

---

[2] Google incorrectly asserts that advertisers have "multiple options" for placing display ads and a "wide array of alternatives" to Google's ad-tech products and services.  Pet. at 2, 3.  Just the opposite is true: Google has acted to monopolize and now thoroughly controls this market.

[3] The *Negron* case is not part of the Digital Advertiser Case, as Judge Freeman deemed it unrelated—the plaintiff there seeks to represent a class of *Facebook* advertisers.  *See* N.D. Cal. Case No. 21-cv-801, Compl. ¶ 131.

with leave to amend.  *See* 20-cv-3556 (N.D. Cal.), ECF No. 143.

Google seeks to transfer cases that are at different stages, but the Panel has denied transfer in these circumstances.  *See, e.g.*, *In re Tyson Foods, Inc., Meat Processing Facilities Fair Labor Standards Act (FLSA) Litig.*, 581 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008) (declining to centralize where "the actions are at somewhat different procedural stages").  The other private plaintiffs' cases are well behind the Digital Advertiser Case.  *See* Pet. at 16-17.  While the State AG case is more advanced than those cases, it too is in a different posture than the Digital Advertiser Case.  Combining all these actions would slow the progress of each.  Hence in denying Google's motion to transfer the State AG case to California, the district court in the Eastern District of Texas found that "the procedural posture of the proposed private class actions in the Northern District of California undermines Google's argument that judicial economy will necessarily be advanced by transferring this case." 20-cv-00957 (N.D. Tex.), ECF No. 121 at 15.  The Court noted in part that the need for class certification proceedings in the private actions would "introduce a substantial risk of unnecessary delay" in the State AG case.  *Id*. at 16.

Similarly, progress in the Digital Advertiser Case would be slowed by transferring antitrust cases that name Facebook as an additional defendant.  *See In re Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016) (recognizing that "a multi-defendant MDL may prolong pretrial proceedings").  There is little to be gained—and substantial complication and uncertainty to be introduced—by transferring cases that add Facebook as a defendant while also charging Google with monopolization, especially where the Google monopoly cases on behalf of putative advertiser and publisher classes have been proceeding for many months.  *See In re Provident Sec. Litig.*, 715 F. Supp. 2d 1356, 1357 (J.P.M.L. 2010) ("[W]hatever benefits centralization would achieve do not outweigh the complications it could

create."). The Panel has also been disinclined to order centralization when, as here, multiple parties oppose it. *See, e.g.*, *In re Women's Clothing Antitrust Litig.*, 455 F. Supp. 1388, 1391 (J.P.M.L. 1978).

## II. Efficiencies can be achieved without section 1407 transfer.

Moreover, the Panel has made clear that centralization "should be the last solution after considered review of all other options." *In re Kmart Corp. Customer Data Sec. Breach Litig.*, 109 F. Supp. 3d 1368, 1368-69 (J.P.M.L. 2015) (citation omitted). "These options include transfer pursuant to 28 U.S.C. § 1404, as well as voluntary cooperation and coordination among the parties and the involved courts to avoid duplicative discovery or inconsistent pretrial rulings." *Id.* at 1369; *see also* Federal Judicial Center, Manual for Complex Litigation § 20.14 (4th ed. 2004). "Relevant discovery already completed should ordinarily be made available to litigants in the other cases" and there are "a variety of techniques to coordinate overlapping or duplicative cases, such as establishing coordinated schedules for discovery and the filing and briefing of motions." *Id.* §§ 20.14, 21.15. Courts presiding in related cases may review each other decisions and communicate directly. *See, e.g.*, *Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, No. CV 11-5887, 2014 WL 12597071, at *1 (C.D. Cal. June 10, 2014) (noting that four Judges had "conferred regarding possible coordination . . . to avoid duplicative litigation and/or inconsistent pre-trial rulings" after the Panel denied transfer); *Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-CV-474, 2019 WL 3082314, at *29 (E.D. Tex. July 15, 2019) ("Additionally, the Court is well aware of the previous orders and can reduce any risk of inconsistent rulings").

There is no reason these methods of ensuring efficient case management cannot work in the present situation. In fact, they are already occurring, with the Advertiser and Publisher Plaintiffs productively coordinating. And the plaintiffs in most of the publisher opt-out cases are

represented by the same law firm (Pet. at 7), which should ease further coordination. *See In re CP4 Fuel Pump Mktg., Sales Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1366 (J.P.M.L. 2019) (concluding that the risk of duplicative discovery or inconsistent rulings "is further diminished in that plaintiffs in nine of the ten actions, as well as one of the two tag-alongs, are represented by the same attorneys.").

## CONCLUSION

Accordingly, the Panel should deny Google's Petition.

Dated: May 26, 2021                    Respectfully submitted,

| **GIRARD SHARP LLP** | **AHDOOT & WOLFSON, PC** |
|---|---|
| /s/ *Christina C. Sharp* | /s/ *Tina Wolfson* |
| Christina "Dena" C. Sharp | Tina Wolfson |
| Jordan Elias | Theodore Maya |
| Adam E. Polk | Rachel Johnson |
| Scott M. Grzenczyk | Andrew Ferich |
| 601 California Street, Suite 1400 | 2600 West Olive Avenue, Suite 500 |
| San Francisco, CA 94108 | Burbank, California 91505 |
| Tel: (415) 981-4800 | Tel: (310) 474-9111 |
| Fax: (415) 981-4846 | Fax: (310) 474-8585 |
| dsharp@girardsharp.com | twolfson@ahdootwolfson.com |
| jelias@girardsharp.com | tmaya@ahdootwolfson.com |
| apolk@girardsharp.com | rjohnson@ahdootwolfson.com |
| scottg@girardsharp.com | |

*Interim Co-Lead Counsel for the Advertiser Plaintiffs*