## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Digital Advertising Antitrust Litigation | MDL No. 3010 |
| *This document relates to*: | |
| CLIFFY CARE LANDSCAPING LLC, *et al.*, on behalf of themselves and all others similarly situated, | Civil Action No. 1:21-cv-360-KBJ |
| *Plaintiffs*, | (Consolidated with Case Nos. 21-cv-622 and 21-cv-658) |
| v. | |
| FACEBOOK, INC., *et al.*, | |
| *Defendants*. | |

### RESPONSE OF CLIFFY CARE PLAINTIFFS IN OPPOSITION TO
### GOOGLE DEFENDANT'S MOTION FOR TRANSFER OF ACTIONS
### TO THE NORTHERN DISTRICT OF CALIFORNIA

Plaintiffs, Cliffy Care Landscaping LLC, Kinin, Inc., Raintree Medical and Chiropractic Center LLC, and Rodrock Chiropractic PA (collectively, "*Cliffy Care* Plaintiffs") submit the following Memorandum of Points and Authorities in Opposition to Google's Motion For Transfer pursuant to 28 U.S.C. § 1407 (JPMDL, filed April 30, 2021).

## I.     INTRODUCTION

The *Cliffy Care* Plaintiffs are entitled to a separate determination by the Panel of whether transfer and centralization of the consolidated *Cliffy Care* case[1] with 33 other, dissimilar

---

[1] A consolidated amended complaint was filed on May 19, 2021 (attached hereto as Exhibit "A," hereinafter *Cliffy Care*) which combined the following actions pending in the District of the District of Columbia by consolidation order entered on April 19, 2021: *Cliffy Care Landscaping LLC v. Facebook, Inc. et al.*, No. 21-cv-00360-KBJ (D.D.C., filed Feb. 9, 2021) (Mot. Ex. "T"), *Kinin, Inc. v. Facebook, Inc. et al.*, No. 21-cv-00622-KBJ (D.D.C., filed Mar. 8, 2021) and

(partially consolidated) actions will promote the just and efficient conduct of its case or serve the convenience of the parties and witnesses. The proposed transferee judge, the Honorable Beth L. Freeman of the Northern District of California, has already determined that a case like *Cliffy Care* which asserts a claim under Section 1 of the Sherman Act involving both Google and Facebook should not be related to the consolidated advertiser or publisher cases pending before her. Thus, Judge Freeman must have determined that those cases do not "concern substantially the same parties, property, transaction or event" and there would be no "unduly burdensome duplication of labor and expense or conflicting results" if the cases remain separate, as provided by the Local Rules. *See* Civ.L.R. 3-12(a) (N.D. Cal.).

Google has failed to offer any reason to set aside Judge Freeman's determination and provides only conclusory generalities in support of its extraordinarily broad motion for a Section 1407 bulk transfer of *Cliffy Care* to the Northern District of California, along with 14 antitrust actions brought by newspaper publishers and a civil antitrust action brought by the State of Texas and nine other States where a § 1404 transfer motion was also rejected. Google further requests that, once transferred, these 16 actions (the 14 newspaper cases, the Texas case, and *Cliffy Care*) be centralized with 11 cases currently pending before Judge Freeman which were brought by digital advertiser plaintiffs and already consolidated (Mot. Exs. R and Q), six cases pending in that district brought by digital publishers and separately consolidated (Mot. Ex. S), and the action pending in that district alleging a Section 1 claim brought by Facebook advertisers against Google (Mot. Ex. P) (which that Court declined to relate to either of the consolidated cases because its claim is so dissimilar). Neither record evidence nor any legal analysis of the

---

*Raintree Medical and Chiropractic Center LLC*, *et al. v. Facebook, Inc. et al.*, No. 21-cv-00658-KBJ (D.D.C., filed Mar. 12, 2021).

specific claims alleged in these other disparate cases has been presented to support Google's request to centralize *Cliffy Care* with all these other actions before Judge Freeman.

Google has wielded a chain saw where, if anything, a scalpel is called for. By presenting only generalized and plenary arguments and conflating superficially similar allegations from pleadings that state wholly different legal theories in clearly separate relevant product markets resting on plainly distinct theories of recovery, Google has made that task nearly impossible. However, when applied to the specific circumstances of *Cliffy Care*, Google's generalized arguments fail to present a sufficient basis for the Panel to take the sweeping action Google has requested.[2]

Google argues that transfer and centralization will prevent "extraordinary inconvenience" to the parties and witnesses, "inconsistent rulings" on the "same legal and factual issues," and duplicative recovery for the "same allegedly anticompetitive conduct, concerning the same products and services" by persons and entities that are members of "overlapping" classes.[3] Such jeremiads are unlikely when considering the advertiser, publisher, and newspaper cases, but they are utterly implausible with respect to *Cliffy Care*.

*Cliffy Care* is a price fixing and auction rigging case brought by a specific subset of digital advertisers who allege that Google and Facebook conspired and entered into an unlawful

---

[2] *See In re Light Cigarettes Mktg. & Sales Practices Litig.*, 652 F. Supp. 2d 1379, 1380 (J.P.M.L. 2009) (denying transfer and centralization of 3 of 11 actions because not showing their inclusion would "serve the convenience of the parties and witnesses or further the just and efficient conduct of the litigation"); *In re Dow Chem. Co. "sarabond" Prods. Liab. Litig.*, 650 F. Supp. 187 (J.P.M.L. 1986) (denying transfer and centralization of 1 of 14 actions because its inclusion would not satisfy § 1407 convenience, justice, and efficiency requirements); *In re Concrete Pipe*, 302 F. Supp. 244, 249 (J.P.M.L. 1969) (denying transfer and centralization for one case that lacked factual overlap with the other cases sought to be transferred).

[3] Memorandum of Points and Authorities in Support of Google Defendants' Motion Pursuant for Transfer and Centralization Pursuant to 28 U.S.C. § 1407 ("Mem.") at 1.

written agreement that distorted the conduct and outcome of Google's exchange auctions for open display advertising beginning in September 2018 in violation of Section 1 of the Sherman Act. *Cliffy Care* thus concerns a limited universe of relevant facts, a narrowly defined class, a relatively short class period, and a specific theory of harm tied to defendants' unlawful concerted action.

In sharp contrast, to our knowledge, every other case alleges a theory of harm that is tied to Google's alleged monopolization of one or more digital advertising product markets or does not arise out of the Section 1 violation alleged in *Cliffy Care*. Virtually every other action, exclusively or principally, concerns Google's alleged monopolization or attempted monopolization of variously defined digital advertising markets and disparate products and services in violation of Section 2. To the extent allegations in those cases bear on Google and Facebook's conspiracy or agreement, they appear solely to support a monopolization theory against Google. Indeed, because they are monopolization cases, they are dominated by legal and factual issues not relevant to the *Cliffy Care* litigation.

Transferring *Cliffy Care* and consolidating it with the many pending monopolization actions will not yield significant efficiencies but, rather, will cause significant delay and prejudice for the *Cliffy Care* parties and ensnare them in protracted discovery and litigation of non-germane matters, the resolution of which is unnecessary to resolve their case. Google's motion with respect to *Cliffy Care* should be denied.

## II.    ARGUMENT

Nearly every argument Google makes in support of transfer and centralization is incorrect when applied to *Cliffy Care*. First, *Cliffy Care* does not involve the same legal claims or core of facts as the other cases listed on Google's Schedule of Actions ("SOA"). Second, courts will not

be asked to rule on the same questions and there is little or no risk of conflicting rulings if *Cliffy Care* remains independent. Third, the parties and witnesses are not likely to be burdened by the same discovery multiple times if *Cliffy Care* is not transferred and centralized because, fourth, the parties can informally coordinate to achieve efficiencies and non-duplication of discovery despite the apparent size and complexity of the litigation as a whole.

### A.    *Cliffy Care* Shares Very Few Issues in Common with the Monopolization Cases

Contrary to Google's argument, it is a gross over-generalization to describe the universe of pending cases as asserting "antitrust claims directed at Google's advertising technology ('ad tech') on behalf of U.S. publishers, advertisers and/or internet users" (Mem. at 1), as if Google were the seller of a simple product in a single market. Nor is this antitrust action similar to a mass tort. In reality, "ad tech" refers to a range of separate markets involving disparate products in which Google participates in different capacities, including as advertiser, advertiser-facing intermediary, ad auctioneer, auction clearinghouse, publisher-facing intermediary, and publisher. The monopolization cases allege that Google has monopolized several of these separate markets through a range of anticompetitive conduct (*e.g.*, tying, exclusionary conduct, unlawful merger) spanning roughly a decade, allegedly injuring many different market participants in several different ways. By contrast, *Cliffy Care* alleges that a discrete class of advertisers were injured by a Section 1 antitrust conspiracy between Google and Facebook evidenced by a specific written agreement that rigged auctions and inflated prices for open display advertising apparently beginning only in September 2018.

Google glosses over the factual and legal differences among the actions listed on the SOA, creating a façade of relatedness through inaccurate generalities. *See*, *e.g.*, Mem. at 9 ("The cases all challenge the same practices and purport to advance the interests of overlapping groups

of claimants."). This is incorrect. The various cases allege different antitrust claims based on different misconduct that cause antitrust injuries in separate markets under different theories of harm on behalf of differently situated and disparate classes and individuals. The cases are far more varied and dissimilar than Google describes them.

Because of this, disparate issues of fact and law predominate between the targeted Section 1 claim alleged in *Cliffy Care* and the comparatively broader Section 2 claims alleged in the other actions. Of the 10 "[i]ssues common to all cases" itemized by Google,[4] almost none of them arise (or arise only tangentially) in the *Cliffy Care* case. Specifically, market definition and the possible application of two-sided market theory are not issues to be determined in the *Cliffy Care* litigation because the area of commerce affected by the alleged Section 1 violation is defined by the restraint on competition exerted by the alleged unlawful agreement between the defendants.[5] Similarly, issues related to the identity of market participants, Google's and its competitors' market shares in antitrust markets related to Google's ad tech, how Google's ad tech interacts with competitors' ad tech, the competitive impact of Google's prior acquisitions or mergers, and whether Google's optimization of its ad tech products and services constituted competition on the merits or anticompetitive conduct are also not likely to arise in the *Cliffy Care* litigation.

Although "the design and operation of Google's ad tech products and services, including changes made … over the course of years" (Mem. at 11) could describe an issue in *Cliffy Care*, it

---

[4] Mem. at 10-11.

[5] *See, e.g., FTC v. Indiana Federation of Dentists*, 476 U.S. 447 (1986) (affirming judgment in favor of FTC challenging anticompetitive agreement despite failure to define a relevant market because product market analysis "is but a surrogate for detrimental effects"); *See also Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 737 (7th Cir. 2004) (direct proof of anticompetitive effects avoids "the usual showing of a precisely defined relevant market …").

does so only in the limited sense that the unlawful agreement relates to how Google conducted its final auctions for open display advertising and the changes it made after entering into its illicit agreement with Facebook. Similarly, *Cliffy Care* only concerns the information Google does or does not provide to others in relation to its ad tech in the limited context of the alleged conspiracy in which only very specific information was provided by Google to Facebook. Moreover, the prices Google charges to advertisers are not relevant to the *Cliffy Care* case because the antitrust violation here concerns auction-determined prices, not prices "charged by" Google.

A party seeking transfer and centralization must demonstrate "that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C.S. § 1407. Even so, such transfer and centralizations should be "the last solution" after considered review of all other options. *In re Best Buy Co*., 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). It is inappropriate to transfer a case, therefore, where hoped for efficiencies would be offset by prejudice and delay. *In re Aqueous Film-Forming Foams Prods. Liab. Litig*., No. MDL No. 2873, 2021 U.S. Dist. LEXIS 21511, at *6 (J.P.M.L. Feb. 4, 2021). It is likewise inappropriate to consolidate actions in which common questions of fact or law do not predominate. *In re Mortg. Lender Force-Placed Ins. Litig*., 895 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012) (denying centralization because "[c]ommon questions of fact … do not predominate"); *In re Sears, Roebuck & Co. Emp't Practices Litig*., 487 F. Supp. 1362, 1364 (J.P.M.L. 1980) (denying consolidation despite presence of some common issues because non-common issues predominated); *In re Asbestos Sch. Prods. Liab. Litig*., 606 F. Supp. 713, 714 (J.P.M.L. 1985) (denying centralization because, *inter alia*, the panel was "not persuaded that

these common questions of fact will predominate over individual questions of fact present in each action").[6]

### B.   *Cliffy Care*'s Section 1 Claim Requires Different Proof than the Cases Alleging Section 2 Claims

Claims brought under Section 1 and Section 2 of the Sherman Act govern different conduct and require proof of substantially different elements. Section 1 of the Sherman Act governs only concerted action involving multiple firms. *Copperweld Corp. v. Indep. Tube Corp*., 467 U.S. 752, 795, 104 S. Ct. 2731, 2754 (1984). It requires proof that a defendant (i) entered into a contract, combination or conspiracy (ii) that unreasonably restrained trade. *Sharp Elecs. Corp. v. Hitachi Ltd. (In re Cathode Ray Tube (CRT) Antitrust Litig.)*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 140647, at *189 (N.D. Cal. Oct. 7, 2016). By contrast, Section 2 governs unilateral conduct in which a firm monopolizes or attempts to monopolize a relevant market. *Copperweld*, 467 U.S. at 795. It requires proof of two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp*., 384 U.S. 563, 570–71 (1966). Defining a relevant market and proving monopoly power are fact intensive exercises that often dominate pre-trial litigation in Section 2 litigation. *See, e.g.*, *In re Google Dig. Advert. Antitrust Litig*., No. 20-cv-03556-BLF, 2021 U.S. Dist. LEXIS 98044 (N.D. Cal. May 13, 2021) (ECF No.

---

[6] Additionally, transfer pursuant to 28 U.S.C. § 1407 is inconsistent with the venue provisions of the Clayton Act (15 U.S.C. § 15(a)) as applied to the Sherman Act (15 U.S.C. §1) which expressly provides that any person injured by reason of anything forbidden in the antitrust laws may bring suit "in any district court of the United States in the district in which the defendant resides or is found or has an agent." Neither §§ 1407 (g) or (h) address private actions under the Clayton Act. The *Cliffy Care* Plaintiffs respectfully reserve their rights to object on these grounds.

13) ("*Google Dig. Advert.*") (dismissing advertisers' Section 2 claim for failure to define a relevant market); *see also Deutscher Tennis Bund v. ATP Tour, Inc*., 610 F.3d 820, 840 (3d Cir. 2010). These exercises are unnecessary in *Cliffy Care.*

The newspaper cases, the already consolidated advertiser and publisher cases, and the States' case are all predominantly Section 2 cases that are driven by legal issues that are immaterial to *Cliffy Care*. For example, in her recent order dismissing the consolidated advertiser case with leave to amend, Judge Freeman addressed whether the plaintiffs adequately alleged a relevant market, whether they alleged anticompetitive conduct actionable under Section 2, and whether they adequately alleged that Google's monopolization caused their injury.[7] None of these issues pertain to a Section 1 claim or the *Cliffy Care* litigation.

While the States' case and the newspaper cases include Section 1 claims, the claims are perfunctory and receive little or no support from the allegations stated in the operative complaints. Describing the States' case in a recent order, the Honorable Sean D. Jordan concluded that "[a]t its core, Plaintiff States' theory of the case is that Google has violated Section 2 of the Sherman Act, as well as applicable state antitrust laws, by unlawfully maintaining a monopoly, or attempting to acquire a monopoly, in markets associated with online display advertising."[8]

The newspaper cases are individual Section 2 cases that allege Google monopolized the digital advertising market by vertically integrating itself through hundreds of acquisitions spanning more than a decade. As a result, newspapers allegedly can no longer compete for online advertising sales and have lost revenue. *See*, *e.g.*, Mot. Ex. N (*Emmerich* Compl.) ¶108. The

---

[7] *Google Dig. Advert.* (ECF No. 143).
[8] *Texas v. Google LLC*, No. 4:20-CV-957-SDJ, 2021 U.S. Dist. LEXIS 96586, at *5 (E.D. Tex. May 20, 2021).

"digital advertising market" refers to the entire ad tech product suite for both search and display advertising. *Id.* ¶¶ 101-104. The newspaper cases, therefore, (i) are premised on an unrelated Section 2 monopolization theory; (ii) will require discovery into and litigating several unrelated Section 2 issues (*e.g.*, whether the relevant market is properly defined and whether Google has monopoly power in the relevant market); (iii) are based on facts irrelevant to *Cliffy Care* (*e.g.*, acquisitions that enabled Google to monopolize the digital advertising market); (iv) concern competition in a significantly broader segment (one or more of the many markets in the "ad tech stack"); (v) involve different injuries and damages; and (vi) do not involve any class action-related issues.

Indeed, the allegations concerning the Google-Facebook agreement in the newspaper cases aver that the agreement contributed to Google's unlawful acquisition or maintenance of monopoly in one or more digital advertising markets, which supports their Section 2 claims but does not prosecute an independent Section 1 claim. *See, e.g.*, Mot. Ex. N (*Emmerich* Compl.) ¶¶ 24, 86 (alleging that "[the] agreement closed a growing threat to Google's primacy and further cemented its stranglehold on the marketplace"; and that "Google and Facebook entered into an illegal agreement to preserve and protect their respective positions in the digital advertising market"). These are substantially different issues than what is implicated by the narrowly crafted Section 1 claim brought in *Cliffy Care.*

The States' case is a combined *parens patriae* and sovereign action brought against Google by 10 State Attorneys General on behalf of their citizens allegedly harmed by Google's anticompetitive practices. The relevant markets at issue are publisher ad servers, ad exchanges, ad networks, ad buying tools for large and small advertisers, and YouTube. Mot. Ex. G (States' case Compl.) ¶¶ 65-116. The States' case was filed following an eighteen-month investigation

that included the production of millions of pages of documents and participation by more than sixty witnesses. *Google LLC*, 2021 U.S. Dist. LEXIS 96586, at *22. Therefore, the States' case (i) is premised on an unrelated Section 2 monopolization theory against a different set of defendants (not Facebook); (ii) requires litigating numerous unrelated Section 2 issues; (iii) is based on facts irrelevant to *Cliffy Care*; (iv) concerns product markets that are broader and largely irrelevant to *Cliffy Care*; (v) involves numerous theories of injury and damages unrelated to *Cliffy Care* (*e.g.*, whether publishers were harmed); and (vi) is much further along procedurally given the amount of discovery that has already occurred.

The separately consolidated advertiser and publisher cases have virtually no legal or factual overlap with *Cliffy Care*. They do not allege Section 1 claims, do not name Facebook as a defendant, and do not mention the Google-Facebook agreement nor do they allege that Google conspired with Facebook. *See generally* Mot. Exs. R (consolidated advertiser case Compl.) and S (consolidated publisher case Compl.). Instead, these cases allege that Google monopolized the markets for online display advertising services and unlawfully acquired or maintained those monopolies, causing the class of advertisers to pay higher prices and the class of publishers to receive less revenue. *Id.*

Even *Negron*,[9] the only case other than *Cliffy Care* that comes close to alleging a self-contained Section 1 case and that Judge Freeman refused to relate to the other cases before her, differs materially from *Cliffy Care*. *Negron* is brought against Google on behalf of a class of purchasers of advertising space through Facebook, a class which is expressly excluded from *Cliffy Care*. *Compare* Mot. Ex. P (*Negron* Compl.) ¶ 131 *with* Opp. Ex. A (*Cliffy Care* Consol.

---

[9] *Negron v. Google LLC*, No. 21-cv-00801-HSG (N.D. Cal., filed Feb. 1, 2021) (Mot. Ex. P).

Amended Compl.) ¶ 22. The Section 1 claim in *Negron*, moreover, alleges that Google possesses monopoly power in one or more advertiser technology services markets, that Google unlawfully acquired and maintained such power through various forms of anticompetitive conduct, and that Google's unlawful monopolization caused injury to Facebook's advertising customers. Mot. Ex. P (*Negron* Compl.) ¶¶ 52-115, 128, 146, 150. These allegations and damages theory do not overlap with *Cliffy Care* and the injuries are alleged to have been caused by monopolization rather than the effects of the allegedly unlawful agreement.

### C.    Multiple Courts Have Determined these Actions Lack Substantial Overlap

These distinctions have led two courts to deny requests to consolidate, relate, or transfer certain of these cases for lack of sufficient commonality or overlap. Judge Freeman denied an unopposed administrative motion filed on February 9, 2021 to relate *Negron* to the consolidated advertiser case[10] and declined a request to consolidate the consolidated advertiser case with the consolidated publisher case.[11]

Likewise, the Honorable Sean D. Jordan, who presides over the States' case,[12] recently denied Google's motion to transfer that case to the Northern District of California because the cases there "involve claims, parties, defenses, damages, and procedural frameworks that differ materially from those in this case. Given the important distinctions between this case and those pending in the Northern District of California, Google has failed to establish that transfer of this

---

[10] *Google Dig. Advert* (ECF Nos. 88, 108).

[11] *Google Dig. Advert*. (ECF No. 71) (containing request by Google to consolidate the publisher cases with the consolidated advertiser case).

[12] *Texas et al. v. Google, LLC*, No. 20-cv-00957-SDJ (E.D. Tex., filed Dec. 16, 2020) ("*Google LLC*").

case would clearly preserve judicial economy."[13] By seeking transfer and centralization now, Google is effectively asking this Panel to overturn these decisions.

Disparate issues of fact and law separate *Cliffy Care*'s narrow Section 1 claim from the comparatively broad Section 2 claims alleged in the other actions. As a result, no efficiencies or enhanced convenience will be gained by transferring and centralizing *Cliffy Care* in the Northern District of California.

### D.    There is No Risk of Conflicting Rulings or Duplicative Recoveries if *Cliffy Care* is Not Transferred

Google argues there is a risk of "inconsistent class determinations across cases" because *Cliffy Care*, the consolidated advertiser case, the consolidated publisher case, and *Negron* may have overlapping class members. But Google does not explain how or why this would lead either to inconsistent class determinations or duplicative recoveries. Google is alleged to have participated in many different capacities in the digital advertising industry and to have violated Section 2 by monopolizing or attempting to monopolize multiple separate markets through a litany of alleged anticompetitive conduct over the past decade that has allegedly caused injury to many different classes of market participants. It is entirely expected that such sprawling activities coupled with such widespread misconduct would give rise to multiple class actions that seek separate redress for each separate antitrust violation. It is also entirely expected that many of the same persons or entities would be members of more than one class. Google has failed to explain why multiple class actions should result in inconsistent class determinations, or how or why it runs a risk of having to pay duplicative recoveries unless all these cases are transferred to the Northern District of California. Google's conclusory argument in this regard is not sufficient to

---

[13] *Google LLC*, 2021 U.S. Dist. LEXIS 96586, at *23.

Case MDL No. 3010   Document 79   Filed 05/26/21   Page 14 of 18

support the legal and factual findings necessary to determine that all these cases should be centralized.

This is particularly true with respect to *Cliffy Care*, whose class members seek recovery for a specific antitrust injury caused by a particular act of collusion with Facebook bearing on the conduct of clearinghouse auctions after September 2018. Google can give no reason that qualified members of the *Cliffy Care* class should not also be entitled to participate as qualified class members in any other action which seeks to recover for antitrust injuries caused by Google's other acts or conduct. This applies to the consolidated publisher and various newspaper cases, as well as the consolidated advertiser and *Negron* cases. Each of the classes proposed in each of those cases seeks recovery for alleged injury stemming from an antitrust violation that is legally distinct and different from the violation alleged against Google and Facebook in the *Cliffy Care* case. Given these differences, class determinations among these cases cannot be inconsistent and Google runs no risk of duplicative recoveries.

Google also argues that "[a]bsent centralization, these cases are also likely to result in conflicting (not merely inconsistent) rulings on such issues as antitrust market definition" and that "[d]ifferent sets of plaintiffs allege conflicting things regarding whether certain companies participate in the alleged market." Mem. at 13. However, market definition and whether certain companies participate in an alleged market are issues that relate to Section 2 monopolization claims, not the kind of Section 1 claim brought in *Cliffy Care*. Therefore, there is no risk of inconsistent resolutions of these issues for the Panel to deny Google's motion to transfer *Cliffy Care*.

### E.   Informal Coordination Is A More Efficient and Less Disruptive Means of Ensuring that Discovery Is Non-Duplicative and Not Overly Burdensome

Google argues that it and non-parties will be subject "to the same discovery nineteen times" if their motion is not granted. Mem. at 11. But this argument does not apply to *Cliffy Care*. Substantial factual and legal differences between *Cliffy Care* and the other cases suggest that the amount of overlapping discovery is likely to be minimal. To the extent common discovery needs arise, the parties can engage in informal coordination to eliminate duplication, including filing notices of depositions in all related actions and stipulating that discovery relevant to multiple actions can be used in all of those actions. *See In re OSF Healthcare Sys. Emple. Ret. Income Sec. Act Erisa Litig.*, 223 F. Supp. 3d 1343, 1345 (J.P.M.L. 2016) (listing these as tools parties can use to ensure efficiencies through informal coordination).

The conduct by counsel to date demonstrates that informal coordination is practicable and can achieve the same efficiencies as transfer and consolidation. The consolidated advertiser and publisher cases are already well-equipped to engage in informal coordination of discovery because they have appointed a discovery committee tasked with "coordinating fact and expert discovery across similar cases brought by governmental entities and private parties in other jurisdictions to the extent reasonably feasible."[14] Counsel for *Negron* has already engaged in discussions concerning informal coordination of discovery with multiple actions.[15] In the States' case, although nearly all discovery was completed during the eighteen-month investigation that preceded the filing, there is no reason to doubt that the State AGs will not also engage in informal coordination. *See In re Uber Techs., Inc.*, 158 F. Supp. 3d 1372, 1373 (J.P.M.L. 2016)

---

[14] *Google Dig. Advert.* (ECF No. 134).

[15] *Negron* (ECF 22) ("the parties have discussed the time and cost saving advantages of seeking to align certain pre-trial procedures in the [consolidated publisher case] and the [consolidated advertiser case] with the *Negron* Action before this Court").

(finding centralization unnecessary in part because one of the actions had "little, if any, discovery left to coordinate"). Informal coordination between *Cliffy Care* and these other actions, therefore, to the limited extent it will be required, is available, practicable, and efficient.

Google's conclusory claim that "there are too many lawsuits, in too many districts" for informal coordination to succeed (Mem. at 15) is belied by the facts at issue in the proceedings and the nature of the pending actions. While Google's request concerns 19 pending actions (15 of which are subject to transfer) this number is misleading. Thirteen of the newspaper cases consist of practically identical complaints filed by the same counsel. Even as separate and independent cases, informal coordination is practicable because the same counsel appears in all of them. *See In re Energy Drilling, LLC, Contract Litig.*, 140 F. Supp. 3d 1333, 1334 (J.P.M.L. 2015) (denying centralization and finding informal coordination practicable in part because there was "limited factual overlap").

### III.    CONCLUSION

For the reasons set forth above, Google has failed adequately to support its request for transfer and centralization as it relates to *Cliffy Care*. Google has failed to demonstrate that transfer and centralization under § 1407 will increase convenience of the parties and witnesses or promote the just and efficient conduct of these actions. The *Cliffy Care* Plaintiffs respectfully request that Google's motion be denied.

Date: May 26, 2021

/s/ Jonathan Rubin
Jonathan L. Rubin (D.C. Bar No. 353391)
**MOGINRUBIN LLP**
1615 M Street, NW, Third Floor
Washington, D.C. 20036
(202) 630-0616
jrubin@moginrubin.com

Daniel J. Mogin (D.C. Bar ID CA00091)
Jennifer M. Oliver (D.C. Bar ID CA00097)
Timothy Z. LaComb *(Pro Hac Vice)*
**MOGINRUBIN LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
(619) 687-6611
dmogin@moginrubin.com
joliver@moginrubin.com
tlacomb@moginrubin.com

*Counsel for Plaintiffs Cliffy Care, Kinin, Rodrock, and Raintree*

Richard F. Lombardo *(Pro Hac Vice)*
Peter F. Rottgers *(Pro Hac Vice)*
**SHAFFER LOMBARDO SHURIN**
2001 Wyandotte Street
Kansas City, MO 64108
(816) 931-0500
rlombardo@sls-law.com
prottgers@sls-law.com

*Counsel for Plaintiffs Cliffy Care, Rodrock, and Raintree*

Jason S. Hartley *(Pro Hac Vice pending)*
Jason M. Lindner *(Pro Hac Vice pending)*
**HARTLEY LLP**
101 W. Broadway, Ste 820
San Diego, CA 92101
(619) 400-5822
hartley@hartleyllp.com
lindner@hartleyllp.com

*Counsel for Plaintiff Kinin*