**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: DIGITAL ADVERTISING ANTITRUST LITIGATION | MDL No. 3010 |

**INTERESTED PARTY RESPONSE OF DIGITAL CONTENT NEXT (DCN) TO GOOGLE DEFENDANTS' MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PROCEEDINGS**

Digital Content Next, by counsel, hereby submits this Interested Party Response to the Google Defendants' Motion for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. Sec. 1407 for Coordinated or Consolidated Proceedings, and in support thereof, states as follows:

1. Founded in 2001, Digital Content Next (DCN) is the only trade organization dedicated to serving the unique and diverse needs of high-quality publishers that manage trusted, direct relationships with consumers and marketers.[1]

2. The main requirement for membership in DCN is that the member company's core business is focused on the creation and monetization of original content.

3. As a result, DCN's members are some of the most trusted and well-respected media brands, including The New York Times, Disney, Conde Nast and the Vox Media Group, among others.

4. Together, DCN's 80+ members have an unduplicated audience of over 223 million unique visitors, or essentially 100 percent reach of the U.S. online population.

---

[1] *See* https://digitalcontentnext.org/membership/members/ for a listing of DCN's current members.

5. DCN's premium publishers are directly impacted by Google's dominant position in the digital advertising marketplace.

6. According to DCN's proprietary benchmarking research, advertising makes up approximately 80% of the digital revenues for its member companies.

7. Many of DCN's members, such as The Weather Company and WebMD, offer free content, which is supported almost entirely by advertising revenue.

8. Other DCN members, such as the Washington Post and NBC Universal, offer subscription models, which are supplemented in large part by advertising revenue.

9. Across the spectrum of publishers, advertising plays an important role in the creation of content, especially journalism.

10. Regardless of the publisher's business model, however, in order to operate a publishing business with any amount of advertising revenue, it is impossible to avoid working with Google.

11. As a result of its dominant position in search, software, advertising and industry standards-setting on all sides of the market, Google has unique access to industry intelligence, and is able to dictate terms to publishers and shield information about their operation from publishers.

12. In a healthy marketplace with competition, publishers would be able to negotiate fairer and more transparent terms with regard to advertising, consumer data collection and use, content availability and audience acquisition.

13. As a result, DCN and its member companies are interested in the suits brought by the Texas Attorney General and private companies because they could lead to the restoration of competition in the marketplace.

14. Of the many hundreds of publisher brands that are members of DCN, the vast majority of the parent companies have headquarters and/or significant operations in New York.

15. For this reason, a majority of DCN's events and DCN's meetings of its Board of Directors take place in New York City.

16. Thus, traveling to California would be a significant hurdle for most employees of publishers who might be called upon to testify as witnesses.

17. In addition, DCN and its member companies prefer that the case brought by the Texas Attorney General be heard in the Eastern District of Texas (EDTX), as that court's calendar appears able to accommodate this case more quickly than the Northern District of California (NDCA). The most recent report from the National Judicial Center (attached hereto as Exhibit 1) shows that EDTX has 689 pending cases per judgeship, compared to the NDCA's 931 pending cases per judgeship.

18. Further, the median time to trial in a civil case in EDTX is 17.5 months, significantly shorter than the 37.6 months for the NDCA.

19. In addition, Judge Sean Jordan in the EDTX case has actually set a June 5, 2023 trial date for the State AG case against Google. *See* Scheduling Order dated May 21, 2021, attached hereto as Exhibit 2.

20. None of the other cases in Google's motion in New York, California, or elsewhere have trial dates.

21. One of the concerns that DCN hears from its member companies is how long antitrust solutions may take to bear competitive fruit, as they consider their options in acting as witnesses or being more and more dependent on a single company.

22. If the private suits must be consolidated, DNC requests that the suits be moved to the Southern District of New York (SDNY), because the SDNY would be far more convenient than California for most employees of publisher organizations.

23. Moreover, the SDNY is likely to move forward more quickly with the case than the NDCA, SDNY has 689 pending cases per judgeship, compared to the NDCA's 931 pending cases per judgeship.

24. Further, the median time to trial in a civil case is lower in the SDNY at 30.7 months, compared to the NDCA median time to trial of 37.6 months.

25. Given the important issues at stake, and the current, dire challenges facing the publishing industry, especially local news organizations, it is important that these cases proceed as soon as possible.

Date:  May 26, 2021                              Respectfully submitted,


                                                 /s/ *DRAFT*
                                                 _____
                                                 Charles B. Molster, III
                                                 THE LAW OFFICES OF CHARLES B.
                                                 MOLSTER, III PLLC
                                                 2141 Wisconsin Avenue, N.W., Suite M
                                                 Washington, D.C. 20005
                                                 (202) 787-1312
                                                 cmolster@molsterlaw.com

                                                 *Counsel for Interested Party Digital Content Next*