UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE GOOGLE DIGITAL ADVERTISING             21-md-3010 (PKC)
ANTITRUST LITIGATION
                                         ORDER

-----------------------------------------------------------x
CASTEL, District Judge:

        At a hearing held on September 24, 2021 the Court encouraged counsel in the several class actions brought on behalf of advertisers to confer on a leadership structure. The conferral has not led to agreement and the Court set a timetable for submissions on the appointment of interim counsel for a putative class of advertisers. (Doc 249.) The submissions have been received.

        Certain movants have sought to be appointed interim lead counsel for essentially the class as defined in their own pleading. They propose in essence that each would serve as interim counsel in the class action that they have filed and envision multiple advertiser class actions against Google LLC and potentially others. They place great emphasis on the differences in the contours in the class definitions they propose and the legal theories they pursue. They propose that each of the separately led class actions would coordinate with the others and have a liaison counsel who would communicate to the Court the unified the position of the various constituencies, or their differences of opinion. All would-be interim counsel profess their devotion to efficiency and non-duplication of efforts.

        The advertiser class actions differ in several respects. The <u>Cliffy Care</u> plaintiffs seek to represent a class of digital advertisers claiming injury by reason of the Facebook-Google "Network Bidding Agreement" ("NBA") and assert claims against Facebook and Google under

section 1 of the Sherman Act, claiming that they were harmed by the NBA .[1] The SPX plaintiffs assert claims against Google LLC and Facebook under section 1 of the Sherman Act that relate to the NBA, but on behalf of advertisers who purchased display ads on Facebook.[2] Of course, advertisers could seek to place display ads on Facebook and locations other than Facebook. The Surefreight plaintiffs bring their federal antitrust claim under section 2 of the Sherman Act, on behalf of "[a]ll persons and entities in the United States that, from January 1, 2016 to the present, used Google's digital advertising services to (1) place an ad on a website operated by another entity (advertisers) or (2) place an ad from a third party on their own website (publishers)." (21 cv 7001 at Doc 1 ¶ 87.) The Surefreight complaint has been pending since May 27, 2020, before the NBA came to light, and counsel for Surefreight states that it intends to move to add a section 1 claim relating to the NBA.

Rule 23(g)(3), Fed. R. Civ. P., allows a Court to appoint interim counsel for a putative class at any stage prior to class certification. The provision necessarily envisions that the pleadings may be subject to further amendment, and the scope of a class and even the appropriateness of certifying a class have not been determined. The 2003 Advisory Committee Notes observe that, "Ordinarily, such [pre-certification] work is handled by the lawyer who filed the action. In some cases, however, there may be rivalry or uncertainty that makes formal designation of interim counsel appropriate." None of the firms representing putative advertiser classes argue that there should not be some Court-imposed structure in place at this juncture;

---

[1] Cliffy Care defines the class as follows: "All persons who purchased digital display advertising through Google Ads, Amazon DSP, or other non-Facebook demand-side platform to reach consumers in the United States between September 2018 and the present. . . ." (21 cv 6910 at Doc 1 at ¶18.)
[2] The SPX plaintiffs allege a class of "all persons and entities who, during the Class Period purchased advertising on or over Facebook. . . ." (21 md 3010 at Doc 256, 4 of 14.)

indeed, they request that the Court impose a structure. They disagree as to what that structure should be and who should be at the helm.

Logically, interim counsel should be a lawyer or lawyers who are capable of serving as counsel in the event that a class is certified. See In re Mun. Derivatives Antitrust Litig., 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (Marrero, J.). Thus the Court considers "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class." Rule 23(g)(1)(A). Present counsel for Cliffy Care, SPX and Surefreight each satisfies the four criteria. Rule 23(g)(2) counsels that when multiple applicants meet the criteria, the Court "must appoint the applicant best able to represent the interests of the class."

The Court concludes that Dena Sharp of Girard Sharp LLP and Tina Wolfson of Ahdoot & Wolfson, PC are best able to represent the interests of a class of advertisers in an action alleging injury by reason of anticompetitive conduct by Google LLC and potentially others relating to digital display ads, including but not limited to injury caused by the NBA. These two lawyers and their firms are presently working together on Surefreight and will best ensure the smooth, efficient and just prosecution of claims by a class of advertisers. Surefreight was one of the early class actions brought by advertisers. Sharp and Wolfson were appointed by Judge Freeman of the Northern District of California as co-interim counsel. In that capacity they have moved the case forward and coordinated with counsel for the States and the publisher plaintiffs. Sharp and Wolfson have expressed a willingness to work cooperatively with counsel for Cliffy Care and SPX. As co-interim counsel, Sharp and Wolfson are in a position to assess

whether a manageable and appropriate class may be proposed in an amended pleading that is broad enough to include most or all allegedly injured purchasers of display ads harmed by anticompetitive conduct of Google LLC and potentially others. They can explore whether subclasses are necessary or appropriate.

    Interim co-lead counsel shall have authority to conduct all pretrial and trial work on behalf of a putative advertiser class. Such work includes crafting pleadings, conducting discovery, and negotiating case matters and settlement as well as all other pretrial and trial proceedings. Interim co-lead counsel shall be authorized and responsible for overseeing the following tasks:[3]

1. Directing overall case strategy, scheduling, and case management for a putative advertiser class(es).
2. Investigating claims on behalf of a putative advertiser class(es).
3. Drafting any amended complaints, including identifying claims to be made in such complaints and selecting class representatives.
4. Coordinating and conducting all discovery.
5. Determining and presenting (in briefs, oral argument, or any such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties the position of the plaintiffs and the proposed class(es) on all matters.
6. Drafting and serving all pleadings and filings, including briefs, legal memoranda, and discovery requests either personally or by a designee.
7. Conducting arguments, court hearings, and appearances.

---

[3] The decretal portion is modelled on the order of Judge Freeman in In re Google Digital Advertising Antitrust Litigation, 20 cv 03356 (N.D. Cal. Apr. 26, 2021), found at 21 cv 7001 (PKC) (Doc 133.)

8. Communicating with opposing counsel, governmental and regulatory authorities, and the Court.

9. Hiring consultants, vendors, and other litigation professionals.

10. Retaining experts and preparing reports.

11. Assessing common litigation costs and collecting such assessments.

12. Initiating and conducting settlement discussions with any opposing party and entering into any settlement agreements on behalf of the purported class(es).

13. Maintaining comprehensive, contemporaneous billing records and expense reports on behalf of all counsel submitting time and expenses in this matter, including recommendations to the Court as to what fees and expenses should be awarded in this matter.

14. Ensuring that work assignments are not given to any firm that has not promptly submitted its time and expense records or paid its assessments.

Fred Isquith Sr. and Jonathan Rubin are appointed to the Advertiser Class Action Steering Committee. Interim co-lead counsel may designate other members of Advertiser Class Action Steering Committee to assist with the litigation with respect to the above or any other matters. Counsel for defendants and other parties and non-parties may rely on the conduct and representations of interim co-lead counsel, or members of the Advertiser Class Steering Committee who have been designated to perform particular tasks.

Nothing herein impairs or intrudes on the attorney-client relationship between the named class representatives in the Cliffy Care and SPX actions and their respective counsel. They are eligible to be considered by co-interim counsel as class representatives and, if not so

selected, free to become class members of any class that emerges.  They are also free to pursue individual actions on their own.

The Clerk is respectfully directed to terminate the motions.  (Doc 253, 254, 255.)

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       March 3, 2022