## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | ) MDL No. 3010 <br> ) <br> ) <br> ) <br> ) |

## RESPONSE IN OPPOSITION TO MOTION TO
## VACATE CONDITIONAL TRANSFER ORDER (CTO-9)

Plaintiff Inform Inc. ("Inform") respectfully submits this memorandum in opposition to the motion to vacate Conditional Transfer Order-9 ("CTO-9") (Dkt. 215) filed by Defendants Google LLC, Alphabet, Inc., and YouTube, LLC in *Inform Inc. v. Google LLC, et al.*, 1:19-cv-05362-JPB (N.D. Ga.) ("Inform Action").  For the reasons set forth below, the Judicial Panel on Multidistrict Litigation ("JPML") should uphold CTO-9, transfer this case to MDL No. 3010 in the Southern District of New York ("MDL") as it has already done with over 30 other related actions (*see* Dkt. 126, 130, 135, 141, 147, 157, 163, 201), and deny Defendants' motion to vacate.

## INTRODUCTION

Inform alleges that Google violates the Sherman Act by monopolizing or suppressing competition in ad-tech-related markets.  This is the same core allegation asserted in more than 30 related actions brought by publisher and advertisers currently centralized and proceeding in MDL 3010 in the Southern District of New York.  The fundamental overlap of core issues in both the Inform

Action and the MDL warrants denying Google's motion to vacate CTO-9, and to finalize the transfer of the Inform Action to the MDL for coordinated or consolidated pretrial proceedings.

Transfer of the Inform Action is appropriate under 28 U.S.C. § 1407 because the Inform Action shares numerous common questions of fact related to Google's anticompetitive conduct in the ad-tech related markets with the MDL, transfer of the Inform Action would promote the just and efficient conduct of the cases and also serve the convenience of the parties and witnesses. Google's argument against transfer is premised almost entirely on its erroneous effort to recast Inform's claims as relating only to the transition from Flash to HTML5.

The sole issue before the Panel is whether transferring this action to the MDL is appropriate under 28 U.S.C. § 1407. The answer is yes. Google's motion to vacate the Conditional Transfer Order should be denied.

## BACKGROUND

### I.    The Inform Action

Inform filed its Complaint on November 25, 2019. *See Inform Inc. v. Google LLC, et al.*, No. 1:19-cv-05362 (N.D. Ga.) ("Inform Dkt.") (Inform Dkt. 1). Inform's Complaint was the first of what became a string of claims filed by various plaintiffs across the country asserting antitrust claims directed at Google's advertising technology ("ad tech"). For example, in May and December 2020, online advertisers and publishers filed multiple class action complaints alleging that Google had monopolized or suppressed competition in ad-tech-related

markets.  Also in December 2020, a group of state attorneys general filed a complaint alleging that Google had monopolized ad-tech-related markets. And in January and April 2021, another series of similar cases were filed on behalf of various newspaper owners, asserting the exact same markets and the same core set of allegations as presented here.  Other related cases were filed as well, including a case filed by another newspaper owner (the Daily Mail) and several cases filed by online advertisers.

As Defendant Google itself detailed its papers before the MDL Panel: "The plaintiffs' conduct allegations also overlap massively. Without centralization, multiple courts would be asked to decide whether the same conduct allegations can support an antitrust claim as a matter of law. Judge Freeman has already provided an initial answer to some of these questions in ruling on Google's motion to dismiss a first complaint; *no other court has engaged substantively with the allegations in these cases*. Asking other courts to decide the same questions regarding the same conduct only risks inconsistency. Common conduct allegations include:

- o 'Monopoly leveraging,' or the theory that Google is trying to use its alleged dominance in search to gain a monopoly in Ad Tech;

- o 'Tying,' or the theory that Google improperly bundled together its ad server and ad exchange functionalities;

- o Allegations that Google designed auction formats to advantage Google's ad exchange;

○ Allegations that Google's long-ago-completed acquisitions of Ad Tech companies were anticompetitive;

○ Allegations that Google should, but does not, provide certain information about auctions or bids to competitors or auction participants."

Dkt. 89 at 10-11 (internal citations omitted).  All of these conduct allegations are also at issue in the Inform Action.

Because the Inform action was filed first, it was ahead of the other actions initially.  But multiple rounds of motion practice and an appeal have slowed it down considerably.  On January 22, 2020, Google filed a motion to dismiss Inform's complaint.  Inform Dkt. 16.  Following briefing, the court, on September 25, 2020, issued a five-page order granting-in-part and denying-in-part the motion. Inform Dkt. 33.  Notably, the court only addressed Google's argument that Inform's complaint constituted a "shotgun pleading" and ordered Inform to file an amended complaint.  *Id.*

Consistent with the court's order, Inform filed its First Amended Complaint on October 9, 2020.  Inform Dkt. 35.  And Google filed a motion to dismiss the amended complaint on November 13, 2020.  Inform Dkt. 38.

## II.   MDL 3010

On August 10, 2021, the Judicial Panel on Multidistrict Litigation ("JPML") issued a Transfer Order, transferring 19 actions pending in 16 districts to the

Southern District of New York for centralization.  Dkt. 126.  Google sought

centralization because, among other things:

> All these cases challenge the same alleged practices involving Google's ad tech products and services. All the complaints attack the way in which Google works in alleged ad-tech markets. All assert that Google has market power in those markets. Though the details of specific practices and particular theories into which various plaintiffs try to shoehorn them differ slightly in certain cases, all the cases arise from the same factual circumstances and present the same core claims under Sections 1 and 2 of the Sherman Act. Issues common to all cases include the following:

> • Defining a relevant antitrust market in the digital advertising space, including whether such market constitutes a two-sided transaction platform pursuant to *Ohio v. American Express Co.*, 585 U.S. ___, 138 S. Ct. 2274 (2018)

> • The participants in any antitrust market relevant to Google's ad tech

> • Google's and its competitors' market shares in any antitrust market related to Google's ad tech

> • How Google's ad tech interacts with competitors' ad tech

> • The competitive impacts of Google's acquisitions related to ad tech.

> • The design and operation of Google's ad tech products and services, including changes made to the design and operation of those products and services over the course of years

> • The extent to which Google's optimization of its ad tech products and services constituted competition on the merits rather than anticompetitive conduct

> • What information Google does or does not provide to others in relation to its ad tech

> • Header bidding -- in particular, its operation, effects, and popularity -- along with Google's competitive responses to it

- The prices that Google charges to advertisers and publishers for use of Google's ad tech, including quality-adjusted prices

Dkt. 1-1 at 10-11.  And the JPML agreed.  The JPML explained in part as follows:

> All actions present common factual questions concerning the allegation that Google has monopolized or suppressed competition in online display advertising services in violation of federal antitrust law, whether that market is described singly as all display advertising services, as components of display advertising, or as some larger spectrum of digital advertising. Common factual issues in all actions include: (1) defining the relevant market for online display advertising services; (2) identifying the competitors in the market and their market shares; (3) the design and operation of Google's ad tech products and services, including alleged barriers to interoperability with competitors' products; (4) assessing the alleged anticompetitive effects of Google's conduct on market participants; and (5) Google's response to a competitive threat to its ad exchange known as "header bidding," which allegedly enabled publishers to use non-Google exchanges more effectively.

Dkt. 126 at 2-3.

Since the initial transfer order, the JPML has transferred at least 13 additional actions to the Southern District of New York for centralization.  Dkt. 130, 135, 141, 147, 157, 163, 201.

## III.   Recent Procedural History

At the time the JPML issued its transfer order, Google's motion to dismiss Inform's First Amended Complaint had been pending for nearly nine months. And, shortly after the transfer order issued, the court granted Google's motion. Inform Dkt. 51.  Again, the court determined that Inform's complaint constituted a "shotgun pleading," or in the alternative, that Inform lacked antitrust standing.  *Id.*

But the court did not address any of the arguments raised by Google under Federal Rule of Civil Procedure 12(b)(6). *Id.*

Inform appealed. On August 26, 2022, the Eleventh Circuit Court of Appeals reversed the court's order and remanded the action. Inform Dkt. 57. The Eleventh Circuit issued its mandate on September 26, 2022. Inform Dkt. 60. And, on the very same day, Inform filed its notice of potential tag-along. Dkt. 202.

On October 5, 2022, the JPML issued CTO-9. Dkt. 206. On October 21, 2022, after the JPML issued the CTO, Defendants filed another motion to dismiss Inform's First Amended Complaint over Plaintiff's objection.

## ARGUMENT

The only issue before this Court is whether the Conditional Transfer Order satisfies the requirements of 28 U.S.C. § 1407. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990). A transfer order is appropriate if (1) actions pending in different federal courts involve "one or more common questions of fact"; and (2) centralization "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Because the actions involve one or more common questions of fact, transfer will promote the just and efficient conduct of the actions, and transfer will serve the convenience of the parties and witnesses, Google's motion should be denied.

## I. The Inform Action and the MDL Involve One or More Common Questions of Fact

The Inform Action and the cases in the MDL generally accuse the same defendants of the same allegedly anticompetitive conduct, concerning the same ad-tech-related products and services, on behalf of overlapping groups of plaintiffs. Indeed, it cannot be reasonably disputed that the Inform Action involves one or more common questions of fact with the MDL.  Nearly every common question fact identified by the Panel in its transfer order is at issue in the Inform Action, including: "defining the relevant market for online display advertising services"; "identifying the competitors in the market and their market shares"; "the design and operation of Google's ad tech products and services, including alleged barriers to interoperability with competitors' products"; "assessing the alleged anticompetitive effects of Google's conduct on market participants"; "Google's acquisitions of other digital ad tech companies, such as DoubleClick, and the competitive impacts of those acquisitions"; and "alleged tying arrangements between, inter alia, Google's publisher ad server and Google's ad exchange."  Dkt. 126 at 2-3.

Google implicitly concedes that several of the common factual issues identified in the Panel's transfer order are at issue here by selectively omitting them from the discussion in its motion and by focusing its argument on whether

individual facts will "predominate" over common fact questions.[1]  Dkt. 215-1 at 5

7.  But, to support its argument, Google is forced to recast Inform's complaint as

centering on "Google's transition from Adobe Flash to the open-source HTML5

technology and associated restrictions on advertisements supported by Flash."

Dkt. 251-1 at 6.  Simply put, this is wrong.

As the Eleventh Circuit Court of Appeals recognized, in addition to

engaging in a series of anticompetitive acts to exclude Inform from competing in

the relevant markets:

> [t]he amended complaint also asserts that Google excluded all
> competitors from the online advertising markets by disabling and
> disparaging its competitors' products and services; illegally
> conditioning the purchase of ads on its subsidiary YouTube on
> Google's ad-buying tools; using its control over the dominant ad
> auction to preference its own offerings and disadvantage those of rivals;
> and purposefully rendering some of its dominant products and services
> incompatible with its competitors' offerings. Google allegedly did all
> of that to avoid and eliminate competition, rather than meet it on the
> merits. And in so doing, Google not only harmed its competitors, but
> also hurt consumers, allegedly degrading their privacy, stifling
> innovation, raising prices, and decreasing the quality and variety of
> products available to consumers.

---

[1] Google explicitly concedes three of the six common fact questions referenced
above are at issue in the Inform Action.  Dkt. 215-1 at 6 n.1.  And Google's
arguments with regard to two other common fact questions are specious.  Google
acknowledges that Inform's amended complaint contains allegations related to
Google "inhibit[ing] interoperability between Google's ad platforms and non-
Google ad platforms," and to "Google's ad tech acquisitions."  *Id.* at 6-7.  But
Google argues that Inform's amended complaint is "not about either."  *Id.* at 6.  In
short, Google recasts Inform's amended complaint as about only the transition to
HTML5 and ask the Panel to ignore any allegations that do not directly relate to its
version of Inform's claims.

*Inform Inc. v. Google LLC*, No. 21-13289, 2022 WL 3703958, at *6 (11th Cir. Aug. 26, 2022).  And the various plaintiffs in the MDL also recognized the same when they argued before the Panel in May 2021 that Inform was the first-filed ad tech case.[2]  Despite Google's repeated attempts to recast Inform's allegations, they are not—and never have been—simply about the transition from Flash to HTML5.

Section 1407 "does not require a complete identity or even majority of common factual and legal issues as a prerequisite." *In re Avandia Mktg., Sales*

---

[2] *See e.g.*, Dkt. 71 at 3 ("Less than three months after the Texas Attorney General's announcement, ad tech company Inform filed the first Google ad tech litigation against Google in the Northern District of Georgia, lodging antitrust allegations relating to Google's ad tech practices and making specific reference to the Texas-led investigation."): Dkt. 63 at 17-18 (Google touts that the first case was filed in the Northern District of California. That is meaningless . . . . It is also false.  A related action was filed in the Northern District of Georgia six months before the first action was filed in the Northern District of California. *See Inform Inc. v. Google LLC*, No. 1:19-cv-5362 (N.D. Ga. filed Nov. 25, 2019). That case alleges that Google leveraged its monopolies in search and search advertising to gain a monopoly in the 'Online Advertising Market' and that Google illegally tied 'the purchase of ads on YouTube . . . with Google's own ad buying tools.' First Am. Compl. ¶¶ 104, 135, *Inform Inc. v. Google LLC*, No. 1:19-cv-5362 (N.D. Ga. Oct. 9, 2020) . . . .This is not the first time Google has neglected to mention the earlier-filed Georgia case when doing so would have conflicted with the procedural relief it sought.); *see also* Pl.'s Surreply to Google's Mot. to Transfer at 2, *Texas v. Google LLC*, No. 4:20-cv-957 (E.D. Tex. Feb. 16, 2021), ECF No. 66 ("Google also neglected to inform the Court of another digital advertising case that has been pending against it in the Northern District of Georgia since November 2019. *Inform Inc. v. Google LLC*, No. 1:19-cv-05362 (N.D. Ga. Nov. 25, 2019).  Google has not moved to transfer that case.  Google cannot extol the benefits of judicial economy or decry the risks of inconsistent adjudication with the West Virginia and Georgia actions pending in those venues."))

*Pracs. & Prod. Liab. Litig.*, 543 F. Supp. 2d 1376, 1378 (J.P.M.L. 2008); *see also In re Generic Digoxin and Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1343 (J.P.M.L. 2017) (rejecting argument against transfer where "[r]egardless of the differences among the actions, there will be significant factual overlap"); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1272-73 (J.P.M.L. 1975) (rejecting arguments against centralization where cases "bear virtually no resemblance" but "share common questions of fact on the economic and conspiratorial issues"). Because the Inform Action and the MDL share numerous common questions of fact, the Panel should deny Google's motion.

## II.   Transfer Will Promote the Just and Efficient Conduct of the Actions

Google's argument regarding the just and efficient conduct of the cases focuses on its assertion that "Judge Boulee of the Northern District of Georgia already has considered two previous motions to dismiss and therefore is well-positioned to address the outstanding issues that were presented but not resolved by his prior rulings." Dkt, 215-1 at 7-8. But Google fails to provide the Panel with one critical fact—Judge Boulee's prior orders focused almost entirely on whether Inform's complaint was a "shotgun pleading." Inform Dkt. 33 and 51. Judge Boulee has never considered any arguments raised under Federal Rule of Civil Procedure 12(b)(6). Even Google acknowledges that Judge Boulee would be considering any 12(b)(6) arguments for the first time. Inform Dkt. 63 at 1.

In contrast, Judge Castel of the Southern District of New York, in the MDL, has already considered and largely rejected Google's motion to dismiss the claims brought by the state attorneys general. *In re Google Digital Advert. Antitrust Litig.*, No. 21-CV-6841 (PKC), 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022). In addition, the MDL court has entered an order permitting the private parties, like Inform, to amend their respective complaints in accordance with its order. *See Capital Region Independent Media LLC v. Google LLC et al*, 1:22CV06997 (S.D.N.Y.), Dkt. 22; 1:21-MD-03010, Dkt. 309. Moreover, Google has ***consented*** to all such amendments to date. 1:21-MD-03010, Dkt. 354. Inform will have that same right to amend, and it intends to do just that.[3]

Reversing the transfer would actively frustrate the goals of the MDL, as it would result in different judges having to decide similar, and perhaps identical, 12(b)(6) issues (among other future issues). *Contra* 28 U.S.C. § 1407(a) (providing for transfer to "promote the just and efficient conduct of such actions"). Not only would this be inefficient, but it would raise the risk of inconsistent rulings—which the MDL is designed to prevent. *See, e.g., In re Pineapple*

---

[3] Regardless of the forum, Inform intends to amend its complaint consistent with the recently issued opinion from the Eleventh Circuit and Judge Castel's order in the Southern District of New York, denying in substantial part Google's motion to dismiss the Third Amended Complaint file by the State attorneys general.

*Antitrust Litig.*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004) (consolidating cases to "prevent inconsistent pretrial rulings").

In addition, the Inform Action and the MDL are in a very similar procedural posture.  The Inform Action was filed well before the MDL was formed, but motion practice and an appeal to the Eleventh Circuit resulted in a lengthy delay.  Now, Inform is preparing an amended complaint, like the private parties in the MDL.  And Google will consider whether it will seek to have those complaints dismissed under Federal Rule of Civil Procedure 12(b)(6).  Thus, transfer of the Inform Action to the MDL will not require or result in "slowing down" either.

Because transfer of the Inform Action to the MDL in the Southern District of New York will the just and efficient conduct of the cases, the Panel should deny Google's motion.

**III.   Transfer Will Serve the Convenience of the Parties and Witnesses**

The benefits of transfer to the parties and witnesses in terms of convenience is apparent.  Google does not argue to the contrary.  Google may have said it best in its motion to transfer when it stated as follows:

> Because the same core products, events, and issues underlie the ad tech cases, "depositions of common witnesses will be noticed and[] the documents and records of the common defendants will be subjected to intensive inspection by each group of plaintiffs." In re King Resources Co. Sec. Litig., 352 F. Supp. 975, 976 (J.P.M.L. 1972). Each group of plaintiffs will undertake discovery into the same Google products. This would entail production of the same documents and depositions of the same witnesses. Most of this evidence and the

majority of the witnesses are located in the Northern District of California; far more than are located in any other district.

…

Without centralization, Google and non-parties will be subjected to duplicative and overlapping discovery in separate actions in district courts across the country. By contrast, centralization under Section 1407 would ensure "that common parties and witnesses are not subjected to discovery demands which duplicate activity that has already occurred or is occurring in other actions." In re Cygnus Telecommunications Technology, LLC, Patent Litigation, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001) (transferring action to Northern District of California).

Dkt. 1-1 at 12.  Because transfer of the Inform Action to the MDL in the Southern District of New York will serve the convenience of the parties and witnesses, the Panel should deny Google's motion.

## CONCLUSION

For the foregoing reasons, Inform respectfully requests that the Panel deny Defendants' Motion, finalize CTO-9, and transfer this action to MDL No. 3010 in the Southern District of New York.


Respectfully submitted, this 16th day of November, 2022.

HERMAN JONES LLP

 /s/ *John C. Herman*
John C. Herman
  (Ga. Bar No. 348370)
Peter M. Jones
  (Ga. Bar No. 402620)
3424 Peachtree Road, N.E., Suite 1650
Atlanta, Georgia 30326
Telephone:  (404) 504-6500
Facsimile:  (404) 504-6501
jherman@hermanjones.com

pjones@hermanjones.com

Serina M. Vash
  (NJ Bar. No. 041142009)
104 Golf Edge
Westfield, NJ 07090
svash@hermanjones.com


*Counsel for Plaintiff Inform Inc.*