**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | MDL No. 3010 |

## GOOGLE'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF MICHAEL STELLMAN'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER NO. 9

Google LLC and Alphabet, Inc. ("Google") respectfully submit this memorandum of law in opposition to Plaintiff Michael Stellman's Motion to Vacate Conditional Transfer Order 9 ("CTO-9"), as it relates to the *Stellman* action (ECF No. 218-1) ("Motion"). As *Stellman* is substantially similar to the complaints already centralized in *In re: Google Digital Advertising Antitrust Litigation* in the Southern District of New York, Google respectfully requests that the Panel deny Plaintiff's Motion and allow transfer of this action.

## I.   INTRODUCTION

All factors point in favor of transferring *Stellman* to the Google Digital Advertising MDL. Mr. Stellman acknowledges that the *Stellman* complaint is premised on the same conduct and the same legal theories as other complaints that are already part of the MDL. Indeed, Mr. Stellman recognizes that the only reason he brought this case was because he was not satisfied with how the MDL court *ruled on* the conduct in the *Stellman* complaint and wants a second bite at the apple in a different forum. Mot. at 1 ("[Stellman's claims] are premised exclusively on conduct that the MDL Court recently held does not support an antitrust claim against Google in that same MDL— allegations concerning Google's secret auction-manipulation program known as Reserve Price Optimization ('RPO')"). Yet Mr. Stellman seeks to have it both ways. His counsel advances similar claims on behalf of a nearly identical putative class of advertisers in a proposed amended complaint in the MDL. And Mr. Stellman even contemplates dismissing his complaint *if* those

claims survive in the MDL. *Id.* at 6-7. As the challenged conduct, legal theories, and proposed class all overlap substantially, and Mr. Stellman improperly seeks to circumvent the MDL procedure, this Court should transfer *Stellman* to the MDL where his claims are already being litigated.

## II.  BACKGROUND

### A.  *Stellman* Is Substantially Similar to Cases Already Part of the MDL.

The *Stellman* complaint challenges the same conduct, based on the same theories of harm, as other complaints already part of the Google Digital Advertising MDL. Given that Mr. Stellman's counsel also represents the putative advertiser class in the MDL (the "MDL Advertisers"), it is no surprise that the *Stellman* Complaint borrows heavily from the MDL Advertiser Complaint and from other complaints in the MDL. Indeed, 70 of the 75 paragraphs in the *Stellman* Complaint's factual allegation section are repurposed from the MDL Advertiser Complaint. *See* Appendix A.

***Same conduct.*** Mr. Stellman argues that his claims are based exclusively on allegations regarding Google's RPO. He alleges that RPO "operated to override publishers' exchange floor prices and deceptively increase the amount advertisers must pay for impressions on AdX [Google's ad exchange]." Stellman Compl. at ¶ 3, ECF No. 218-3. Mr. Stellman's counsel makes nearly the same allegation in the MDL Advertisers' proposed amended complaint. For example, a heading in the MDL Advertisers' complaint reads "Google's Reserve Price Optimization Deceived and Injured Advertisers in the Ad Exchange Market." [Proposed] Consolidated Advertiser Class Action Compl. at § VI.B.5., *In re: Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC, ECF No. 317-1 ("MDL Advertiser Compl."). Mr. Stellman's RPO allegations also repeat allegations made by other plaintiffs in the MDL, namely the State Attorneys General, who alleged that RPO overrode publishers' exchange floor prices, misled publishers and advertisers,

deceptively increased the amount advertisers paid for impressions on AdX, and excluded competition in an ad exchange market.  *See* Third Am. Compl. at § VII.C.3, *In re: Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC, ECF No. 176 ("State Attorneys General Compl.").[1]  Although the MDL Court dismissed the State Attorneys General's RPO-related antitrust claims, the State Attorneys General have suggested that they intend to still challenge this conduct.  *See* Ltr. from State Attorneys General to Judge Castel at 2, *In re: Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC, ECF No. 362 ("Even as to some of the federal antitrust claims that the Court held were inadequately pled, the Court suggested that those claims may allege deception. *See, e.g.*, Doc. 308, at pp. 59-61 (describing how Reserve Price Optimization misled publishers and advertisers).").

   ***Same alleged markets and theories of harm.***  Mr. Stellman's complaint cuts-and-pastes liberally from the MDL Advertiser Complaint.  For example, the *Stellman* Complaint begins with a "Nature of the Case" section that is merely an abbreviated version of the MDL Advertiser Complaint's "Nature of the Action" section—describing advertising technology, Google's alleged dominance in this market, and introducing RPO.  In this section, Plaintiff and the MDL Advertisers present near-identical descriptions of RPO.  *Compare* Stellman Compl. ¶ 3 (alleging that RPO "operated to override publishers' exchange floor prices and deceptively increase the amount advertisers must pay for impressions on AdX") *with* MDL Advertiser Compl. at ¶ 10 (alleging that RPO "secretly overrode publishers' exchange floor prices, increasing the amount advertisers paid for impressions on AdX").

---

[1] The State Attorneys General have also recently stated their intention to amend their complaint for a fourth time.  *See* Ltr. from State Attorneys General to Judge Castel at 3 n.6, *In re: Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC, ECF No. 362.

The *Stellman* Complaint then presents a section titled "Overview of the Digital Advertising Market" that borrows heavily from the corresponding "Overview of Digital Advertising and the Ad Tech Stack" section in the MDL Advertiser Complaint—even including some of the same exact language and embedded images. *Compare* Stellman Compl. at ¶¶ 15-25 *with* MDL Advertiser Compl. at ¶¶ 42-53. Throughout the *Stellman* Complaint there are descriptions of the platforms, exchanges, and auctions that are the same or similar to those presented in the MDL Advertiser Complaint. *Compare, e.g.*, Stellman Compl. at ¶ 24 *with* MDL Advertiser Compl. at ¶ 183. Plaintiff repurposes entire paragraphs from the "Antitrust Impact" section of the MDL Advertiser Complaint, reframing them as allegations relating to Google's "alleged dominance" through AdX. *Compare, e.g.*, Stellman Compl. ¶ 61 *with* MDL Advertiser Compl. ¶ 302; Stellman Compl. ¶ 62 *with* MDL Advertiser Compl. ¶ 303; Stellman Compl. ¶ 63 *with* MDL Advertiser Compl. ¶ 304. The *Stellman* Complaint's allegations relating to Google's "alleged dominance" in AdX not only overlap with the MDL Advertisers, but with each of the other MDL parties as well (State Attorneys General, Publishers, Newspaper Plaintiffs, and Daily Mail). *See, e.g.*, State Attorneys General Compl. at § VI.A.2.ii; [Proposed] First Am. Consolidated Class Action Compl. at § II.D, § III.B., *In re: Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC, ECF No. 322-1 ("Publisher Compl."); Am. Compl. and Jury Demand at ¶¶ 187-91, *In re: Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC, ECF No. 328-2 ("Newspaper Compl."); Am. Compl. for Damages and Injunctive Relief at ¶¶ 72-76, *In re: Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC, ECF No. 319-1 ("Daily Mail Compl.").

**Overlapping causes of action.** Mr. Stellman alleges that Google's RPO violates California's Unfair Competition Law and various non-California consumer-protection statutes. The complaint also alleges common-law "fraudulent concealment" and "unjust enrichment." The

MDL Advertiser Complaint includes a California Unfair Competition Law claim based in part on RPO.  *See* MDL Advertiser Compl., Seventh Cause of Action at ¶ 403 ("Among other deceptive and unlawful acts that injured advertisers, Google used (a) Reserve Price Optimization to deceptively increase the amounts advertisers paid on AdX").  And other MDL complaints include overlapping or similar state-law consumer-protection claims and common law claims for fraud and unjust enrichment.  *See generally* State Attorneys General Compl. (bringing 17 state law deceptive trade practices claims)[2]; Daily Mail Compl. (bringing Unlawful Deceptive Acts or Practices claim under New York law and common-law fraud claim); Newspaper Compl. (bringing unjust enrichment claim); Publisher Compl. (bringing California Unfair Competition Law and Cartwright Act claims).

  ***Almost identical putative classes.***  Mr. Stellman seeks to represent almost the identical class of advertisers already in the MDL (with only a slightly different class period).  *Compare* Stellman Compl. at ¶ 91 (defining the class as "All persons and entities in the United States that, from January 1, 2015 to September 5, 2019 (the 'class period'), used Google's display advertising services to place an ad on a website operated by another entity (advertisers)") *with* MDL Advertiser Compl. at ¶ 339 ("All persons and entities in the United States that, from January 1, 2016 to the present, placed a display ad on a website or mobile application operated by another entity via a transaction in which the impression was sold, brokered, exchanged or auctioned by Google.").

---

[2] *See also* Ltr. from State Attorneys General to Judge Castel at 2-3 (stating State Attorneys General's intention to move forward on deceptive trade practices claims).

**B.  The MDL Court Has Already Ruled on the Conduct at Issue in the Stellman Complaint, and Will Do So Again When Considering Mr. Stellman's Counsel's MDL Advertiser Complaint.**

Mr. Stellman's counsel freely admits that they filed *Stellman* in response to a motion to dismiss ruling in which the MDL Court dismissed the State Attorneys General's claims based on RPO.  Mot. at 1.  Recognizing the overlap in complaints, the MDL Court decided to treat a complaint by various State Attorneys General as a "bellwether" for the MDL pleadings.  Order at 1, *In re: Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC, ECF No. 271 ("the States' Third Amended Complaint is a bellwether for the pleadings of other plaintiffs"); *see also* Pre-Trial Order 1, *In re: Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC, ECF No. 4 (setting process for State Attorneys General's complaint to proceed through the motion to dismiss stage first).  After resolving Google's motion to dismiss the State Attorneys General's complaint, the Court allowed all other plaintiffs—including the putative advertiser class whom Mr. Stellman's counsel represents—to move to amend their complaints in conformance with the dismissal order.

The MDL Court found that the State Attorneys General's complaint did not plausibly allege RPO was anticompetitive conduct in any of the potential relevant markets, as the allegations of competitive harm were "opaque and theoretical."  Opinion and Order at 58, *In re: Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC, ECF No. 308.  As one such example, the MDL Court cites an allegation from the State Attorneys General's Complaint that "[o]n the surface, RPO appeared to increase yield because AdX initially returned higher bids. However, because RPO relied on inside information, combining bid data from AdX with publishers' ad server user IDs, it exacerbated problems of adverse selection in publishers' inventory auctions."  *Id.* at 58-59.  This is similar to Mr. Stellman's allegations.  *See* Stellman Compl. ¶¶ 75, 80, 85 (alleging that RPO relied on "inside information").

Although the MDL Court dismissed the State Attorneys General's RPO-related claims, the MDL Advertisers seek to reintroduce these dismissed claims in their proposed amended complaint, as described above.  Google has requested permission to move to dismiss the proposed amended MDL Advertiser Complaint, in part because the MDL court has already ruled on the merits of the RPO allegations.

## III.   TRANSFERRING THE STELLMAN CASE TO THE MDL ADVANCES THE INTERESTS OF SECTION 1407.

Apart from his argument based on the MDL Court's motion to dismiss ruling, Mr. Stellman argues against transfer on the basis that he does not assert antitrust claims, but rather only state-law claims based on consumer protection and fraud.  Mot. at 2-3, 5.  However, his complaint arises from the same common factual core (and some of the exact same claims) as the cases in the MDL and its transfer would promote the just and efficient conduct of this litigation, including by streamlining discovery and avoiding the serious risk of inconsistent adjudications.  This is particularly true where, as here, Plaintiff seeks to represent the same putative class of advertisers already represented in the MDL and is bringing a subset of those advertisers' same allegations.  Contrary to Mr. Stellman's assertions, informal coordination and cooperation are not a practicable and efficient alternative to transfer.

### A.   The Common Factual Core and Overlapping Claims in the *Stellman* Complaint and the MDL Merit Transfer.

Mr. Stellman does not and cannot argue that the subject matter at issue in his complaint is distinct from the MDL.  Rather he takes the position that the fact that the MDL has "antitrust" in its name precludes complaints containing anything *but* pure antitrust claims from being part of it.  Mot. at 5-6.  However, many MDL parties also include overlapping or similar state-law consumer-protection claims or common law claims for fraud and unjust enrichment.  *See supra* at 5.

7

Moreover, complaints need not have identical claims in order to be properly joined as part of an MDL.  *See, e.g.*, *In re Travel Agent Comm'n Antitrust Litig.*, 290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003) ("Section 1407 does not require a complete identity or even majority of common factual and legal issues as a prerequisite to centralization and [] the presence of different nuances does not negate the existence of common questions of fact.").  This Court routinely transfers actions containing non-overlapping allegations as those raised in the MDL, as the MDL Court can manage any differences through separate discovery and motion tracks if necessary.  The Panel has already recognized the benefits of coordinating cases that include various causes of action for this MDL, when centralizing these cases over objections from plaintiffs.  *See* Transfer Order at 4, ECF No. 126 (quoting *In re Valsartan Prods. Liab. Litig.*, 433 F. Supp. 3d 1349, 1352 (J.P.M.L. 2019) ("the transferee court may account, at his discretion, for any differences among the actions by using appropriate pretrial devices, such as separate tracks for discovery or motion practice")).

In fact, the Panel has already found in the context of this MDL that different parties asserting different claims is "not significant" because "the actions arise from a common factual core – Google's alleged suppression of competition in display advertising services."  Transfer Order at 4.  The same is true with *Stellman*: even where specific elements of a few claims might differ from other cases, there is substantial (and at times, complete) overlap among the underlying allegations.  As just one example, pre-trial rulings on MDL Advertisers' allegations that Google was engaging in "auction manipulation, [through] Reserve Price Optimization" (MDL Advertiser Compl. at ¶ 267) should not be made in a separate jurisdiction by a separate judge from rulings on Mr. Stellman's allegations that Google "secretly manipulated the auction through a subversive program: Reserve Price Optimization" (Stellman Compl. at ¶ 71).

The *Stellman* Complaint also contains other allegations substantially similar to the allegations in other complaints already in the MDL. For example, Mr. Stellman broadly alleges that Google exercised unlawful dominance of the ad tech stack and eliminated competition in display advertising. *Id.* at ¶¶ 55-56, 60. These issues permeate *all* of the MDL complaints—even those that do not include RPO-specific allegations. *See supra.* And Mr. Stellman alleges the same *injury* as the MDL Advertisers: that Google's conduct allegedly raises prices for advertisers. *Id.* at ¶ 60. A focus of the *Stellman* Complaint—Google's alleged "anticompetitive operation of the AdX platform," *id.* at ¶ 107—is directly at issue in all complaints in the MDL and would generate significant inefficiencies and risks of inconsistent adjudications were these complaints to proceed in separate jurisdictions. The overlapping requested remedies are also rife with opportunities for inconsistent and contradictory rulings. For example, Mr. Stellman requests injunctive relief "to correct Google's unfair business conduct" (Stellman Compl., § V.III.C.) and the MDL Advertisers request injunctive relief "to restore competition in the relevant markets" (MDL Advertiser Compl. at ¶ 406.C.). The overlap in relief sought also favors transfer. *See* Transfer Order at 5 (identifying the same or similar relief sought by parties as supporting transfer).

**B.      Plaintiff Seeks to Represent the Same Putative Class of Advertisers Already Represented in the MDL, Furthering the Likelihood of Inconsistent Rulings.**

Mr. Stellman seeks to represent the same putative class of advertisers already in the MDL, and who are already represented by his same counsel. In addition to the substantive overlap between the claims and underlying conduct alleged in *Stellman* and the other cases in the MDL, *see supra*, the fact that these cases are being brought on behalf of the *same advertisers* poses numerous opportunities for potentially inconsistent pre-trial rulings. For example, all named advertiser plaintiffs (including Mr. Stellman) signed the same arbitration agreement, which Google intends to move to enforce. Allowing the cases to proceed separately also risks conflicting rulings

on certification of virtually identical classes.  Transferring *Stellman* to the MDL with the related litigation would avoid this risk.  *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017) (recognizing that failure to centralize similar cases "raises a significant risk of inconsistent rulings and inefficient pretrial proceedings"); *In re Roadway Exp., Inc. Emp. Pracs. Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974) (granting transfer motion where "crucially, the conflicting and overlapping class allegations contained in the complaints raise the indubitable possibility of inconsistent class determinations" because "this possibility presents a highly persuasive reason favoring transfer under § 1407"); *see also* Transfer Order at 3 ("Centralization will promote the just and efficient conduct of the litigation by eliminating duplicative discovery and avoiding the risk of inconsistent rulings on pretrial matters, particularly on discovery disputes, *Daubert* issues, and dispositive motions.").

### C.     Informal Coordination Is Not a Practicable and Efficient Alternative to Transfer.

Finally, Mr. Stellman argues that because he is represented by the MDL co-lead counsel for the class advertisers, his counsel are "perfectly positioned to ensure that there is no duplication of claims, discovery or litigation efforts going forward in the event that claims similar to Stellman's remain pending in the MDL[.]"  Mot. at 2, 6.  Of course, it is Mr. Stellman and his counsel that are duplicating claims, discovery, and litigation efforts by resisting transfer and asking two different courts to decide the same claims.  The fact that Mr. Stellman's counsel feels they could coordinate duplicate discovery of their own invention is no reason to keep *Stellman* separate when it should go forward with the related cases in the MDL for the reasons set forth above.

Mr. Stellman also fails to explain how having the same counsel would necessarily avoid duplicative discovery taking place in the two jurisdictions.  *See, e.g.*, *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 476 F. Supp. 445, 447 (J.P.M.L. 1979) (finding that without

transfer, "there inevitably would be repetitious depositions of scores of witnesses, repetitious examinations of thousands of documents, and yet other myriad duplications of pretrial proceedings. Much time and effort of numerous parties, witnesses, attorneys, and judges would be needlessly wasted.").  For example, counsel for Mr. Stellman has not indicated whether or how they would avoid duplicative discovery disputes being unnecessarily adjudicated by different judges in different jurisdictions.  As the Panel ruled previously when centralizing these cases, "informal coordination appears inadequate to address the risk of inconsistent rulings in this factually and legally complex litigation."  Transfer Order at 4.  Counsel for Mr. Stellman has already demonstrated by their decision to file this action in response to an order of the MDL Court that they do not intend to minimize duplication, and would rather forum shop for a court willing to give them a second chance.  Tellingly, Mr. Stellman cites no authority supporting this maneuver.

Nor does Mr. Stellman's citation to the Panel's decision to vacate CTO-7 and remand *Klein* to the Northern District of California earlier this year weigh against transfer here.  The Panel found that informal coordination and cooperation were preferable to transfer there because "the non-common issues far exceed[ed] the common issues."  ECF No. 194 at 2.  In particular, the "principal allegations" in the *Klein* advertiser action were not at issue in the MDL.  *Id.  Klein* also involved another consumer action that "did not involve claims that overlap[ped] with the MDL."  *Id.* at 1. *Klein* thus does not present an apt analogy where, as here, there is a clear common factual core between the case at issue and *all* of the cases in the MDL, and there are no irrelevant claims or cases that are part of *Stellman* that would need to be severed.  Google seeks transfer of *Stellman* in its entirety as contemplated by CTO-9.

## **CONCLUSION**

Mr. Stellman cannot maintain that his case should remain outside the MDL when he acknowledges both that he filed his case to *avoid* an existing MDL ruling and that he will dismiss his case if his counsel obtains favorable reconsideration of that ruling. Regardless of whether any claims relating to RPO ultimately survive in the MDL Court, other parties in the MDL currently make allegations relating to RPO which the Court will have to rule on—including the MDL Advertisers, as set forth above. And apart from the RPO-based allegations, there are numerous overlapping allegations relating to Google's alleged dominance in an ad exchange market that are present in *all* of the proposed amended complaints in the MDL. There is no reason to delay transferring *Stellman* to the MDL pending the resolution of those complaints when it is already appropriate for transfer and should be considered alongside the related cases. Litigating claims based on the same common factual core in two jurisdictions runs a serious risk of inconsistent rulings—which is exactly what Mr. Stellman and his counsel are seeking by opposing transfer.

For the foregoing reasons, Google respectfully requests that the Panel finalize CTO-9 as it relates to *Stellman*, and transfer the action to the MDL pending before Judge Castel in the Southern District of New York.

Dated: November 16, 2022

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Justina K. Sessions*
Justina K. Sessions
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Facsimile: (415) 947-2099
Email: jsessions@wsgr.com

*Counsel for Defendants Google LLC*
*and Alphabet Inc.*

**APPENDIX A**

| *Stellman* Complaint Paragraph (from Factual Allegations Section, Paragraphs 12-86) | Corresponding Paragraph in [Proposed] MDL Advertiser Complaint |
|---|---|
| 12 | Copied in part from MDL Advertiser Compl. Paragraph 37 |
| 13 | Copied in part from MDL Advertiser Compl. Paragraph 38 |
| 14 | Copied in part from MDL Advertiser Compl. Paragraph 40 |
| 15 | Similar to MDL Advertiser Compl. Paragraph 41; copied in part from MDL Advertiser Compl. Paragraphs 42-43; embedded image copied from MDL Advertiser Compl. Paragraph 42 |
| 16 | Copied in part from MDL Advertiser Compl. Paragraph 45 |
| 17 | Copied in part from MDL Advertiser Compl. Paragraph 45 |
| 18 | Copied in part from MDL Advertiser Compl. Paragraph 45 |
| 19 | Copied in part from MDL Advertiser Compl. Paragraph 216; similar to MDL Advertiser Compl. Paragraph 3 |
| 20 | Similar to MDL Advertiser Compl. Paragraph 45 |
| 21 | Copied in part from MDL Advertiser Compl. Paragraph 50 |
| 22 | Copied in part from MDL Advertiser Compl. Paragraph 49 |
| 23 | Copied in part from MDL Advertiser Compl. Paragraph 51 |
| 24 | Copied from MDL Advertiser Compl. Paragraph 183 |
| 25 | Copied in part from MDL Advertiser Compl. Paragraph 53 |
| 26 | Similar to MDL Advertiser Compl. Paragraphs 85 (alleging 20 percent take rate), 216 (describing second-price auction), 217 (describing second-price auction and price floors) |
| 27 | Copied in part from MDL Advertiser Compl. Paragraph 59 |
| 28 | |
| 29 | |
| 30 | |
| 31 | |
| 32 | Similar in part to MDL Advertiser Compl. Paragraph 241 |
| 33 | Similar in part to MDL Advertiser Compl. Paragraph 215 (describing efficiency of second-price auction model) |
| 34 | Similar in part to MDL Advertiser Compl. Paragraph 241 (describing how winner pays second-highest bidder's bid in second-price auction) |
| 35 | |
| 36 | Similar to example in MDL Advertiser Compl. Paragraph 242 |
| 37 | Similar in part to MDL Advertiser Compl. Paragraph 217 |
| 38 | Similar to MDL Advertiser Compl. Paragraph 217 |
| 39 | Copied in part from MDL Advertiser Compl. Paragraph 47 |
| 40 | Copied in part from MDL Advertiser Compl. Paragraph 48 |
| 41 | Similar to MDL Advertiser Compl. Paragraph 177 |
| 42 | Copied from MDL Advertiser Compl. Paragraph 180 |
| 43 | Similar to MDL Advertiser Compl. Paragraph 47 |
| 44 | Similar to MDL Advertiser Compl. Paragraph 177 |
| 45 | Similar in part to MDL Advertiser Compl. Paragraphs 146, 147 |

| 46 | Similar in part to MDL Advertiser Compl. Paragraphs 146, 189 |
|---|---|
| 47 | Similar to allegations regarding take rates throughout MDL Advertiser Compl., including at Paragraphs 85, 310, 312, 314 |
| 48 | Copied in part from MDL Advertiser Compl. Paragraph 189 |
| 49 | Copied in part from MDL Advertiser Compl. Paragraph 2 |
| 50 | Copied in part from MDL Advertiser Compl. Paragraph 79 |
| 51 | Copied in part from MDL Advertiser Compl. Paragraph 80 |
| 52 | Copied in part from MDL Advertiser Compl. Paragraph 83 |
| 53 | Similar to part of MDL Advertiser Compl. Paragraph 75 |
| 54 | Copied from MDL Advertiser Compl. Paragraph 181 |
| 55 | Similar to allegations in, e.g., MDL Advertiser Compl. Paragraph 191 (alleging dominance in every part of the "ad stack") and Paragraph 1 (alleging that Google controls the "ad tech stack") |
| 56 | Similar to MDL Advertiser Compl. Paragraphs 201-208, 238 (alleging lack of transparency and inability for advertisers and publishers to make informed decisions) |
| 57 | Similar to MDL Advertiser Compl. Paragraph 215 |
| 58 | Similar to MDL Advertiser Compl. Paragraph 253 |
| 59 | Similar to MDL Advertiser Compl. Paragraph 240 |
| 60 | Similar to MDL Advertiser Compl. Paragraphs 318-320 |
| 61 | Copied in part from MDL Advertiser Compl. Paragraph 302 |
| 62 | Copied from MDL Advertiser Compl. Paragraph 303 |
| 63 | Copied from MDL Advertiser Compl. Paragraph 304 |
| 64 | Copied from MDL Advertiser Compl. Paragraph 305 |
| 65 | Similar to MDL Advertiser Compl. Paragraph 2 |
| 66 | Similar to MDL Advertiser Compl. Paragraph 215 |
| 67 | Similar to MDL Advertiser Compl. Paragraph 215 (cites to same 2010 interview) |
| 68 | Copied in part from MDL Advertiser Compl. Paragraph 215 |
| 69 | Copied in part from MDL Advertiser Compl. Paragraph 215 |
| 70 | Copied in part from MDL Advertiser Compl. Paragraph 215 |
| 71 | Similar to MDL Advertiser Compl. Paragraph 267 |
| 72 | Similar to MDL Advertiser Compl. Paragraph 241 |
| 73 | Similar to beginning of MDL Advertiser Compl. Paragraph 242 |
| 74 | Similar to example provided in MDL Advertiser Compl. Paragraph 242 |
| 75 | Copied in part from MDL Advertiser Compl. Paragraph 244 |
| 76 | Similar to MDL Advertiser Compl. Paragraph 245 |
| 77 | Copied in part from MDL Advertiser Compl. Paragraph 246 |
| 78 | Copied in part from MDL Advertiser Compl. Paragraph 246 |
| 79 | Similar to MDL Advertiser Compl. Paragraph 247 |
| 80 | Copied in part from MDL Advertiser Compl. Paragraph 248 |
| 81 | Copied in part from MDL Advertiser Compl. Paragraph 248 |
| 82 | Copied in part from MDL Advertiser Compl. Paragraphs 249 and 251 |
| 83 | Copied in part from MDL Advertiser Compl. Paragraph 245 |
| 84 | Copied in part from MDL Advertiser Compl. Paragraph 251 |

| 85 | Copied in part from MDL Advertiser Compl. Paragraphs 252, 207 ("exacerbate problems of adverse selection in the exchange market" and "foreclosed competition"), 244 ("RPO relied on inside information"); similar to parts of 239 |
| 86 | Similar to, e.g., MDL Advertiser Compl. Paragraphs 121, 318, 401 (alleging non-transparent pricing and non-transparent ad auctions) |

## SUMMARY

| | |
|---|---|
| Total *Stellman* Complaint Paragraphs in Factual Allegations Section (Paragraphs 12-86) | 75 |
| *Stellman* Complaint Paragraphs in Factual Allegations Section **With** Corresponding MDL Advertiser Complaint Paragraphs | 70 |
| *Stellman* Complaint Paragraphs in Factual Allegations Section **Without** Corresponding MDL Advertiser Complaint Paragraphs | 5 |