**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE**: **GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | **MDL No. 3010**<br><br>**ORAL ARGUMENT REQUESTED** |

*This Document Relates To:*

| | |
|---|---|
| **STATE OF TEXAS, et al.,**<br><br>       *Plaintiffs*,<br><br> - against -<br><br>**GOOGLE LLC,**<br><br>       *Defendant*. | **No. 1:21-cv-06841 (PKC) (S.D.N.Y.)**<br><br>**No. 4:20-cv-957 (SDJ) (E.D. Tex.)** |

**RESPONSE OF DEFENDANT GOOGLE LLC IN OPPOSITION TO THE STATE
PLAINTIFFS' MOTION TO REMAND TO THE EASTERN DISTRICT OF TEXAS**

FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005

*Counsel for Defendant Google LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 3

    A.  The Panel Centralizes Google AdTech Antitrust Litigation Before Judge Castel.............. 3

    B.  Judge Castel Makes Substantial Progress Toward Resolving The Litigation Based On The State Plaintiffs' Case ................................................................... 4

    C.  Congress Passes The Venue Act ....................................................................... 6

    D.  The State Plaintiffs Press Ahead Before Judge Castel........................................ 6

LEGAL STANDARD .......................................................................................................... 8

ARGUMENT ..................................................................................................................... 8

    I.     The Venue Act Does Not Apply To The States' Case................................................ 8

         A.  In repeatedly removing a retroactivity provision from the Venue Act, Congress clearly indicated that the Venue Act should not apply retroactively .......8

         B.  Even if the Venue Act were ambiguous, the Panel should still decline to apply the statute retroactively because the States' case has already been transferred.....13

         C.  The purportedly "jurisdictional" nature of the Venue Act does not overcome the clear indication in the drafting history that the Venue Act should not apply retroactively ........................................................................................15

    II.    The Panel Should Decline to Order Remand As A Matter of Discretion Where State Plaintiffs Offer No Arguments That Would Change The Panel's Earlier Exercise of Discretion In Ordering Transfer................................................. 17

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204, (1988) ................................................................................................ 1

*Bruner v. United States*,
  343 U.S. 112 (1952) ................................................................................................ 16

*Doe v. Chao*,
  540 U.S. 614 (2004) ................................................................................................ 12

*Gulf Oil Corp. v. Copp Paving Co.*,
  419 U.S. 186 (1974) ................................................................................................ 12

*Hallowell v. Commons*,
  239 U.S. 506 (1916) ................................................................................................ 16

*Hamdan v. Rumsfeld*,
  548 U.S. 557 (2006) ................................................................................................ 16

*Hughes Aircraft Co. v. United States ex rel. Schumer*,
  520 U.S. 939 (1997) .................................................................................................. 9

*In re Air Crash Disaster at Tenerife*,
  461 F. Supp. 671 (J.P.M.L. 1978) ............................................................................ 8

*In re: Google Digit. Advert. Antitrust Litig.*,
  No. 21-cv-6841, 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022) ............................. 5

*In re Holiday Magic Sec. & Antitrust Litig.*,
  433 F. Supp. 1125 (J.P.M.L. 1977) .......................................................................... 8

*In re Integrated Res., Inc. Real Est. Ltd. P'ship Sec. Litig.*,
  851 F. Supp. 556 (S.D.N.Y. 1994) ........................................................................... 8

*In re Wilson*,
  451 F.3d 161 (3d Cir. 2006) ..................................................................................... 8

*In re: Dig. Advert. Antitrust Litig.*,
  555 F. Supp. 3d 1372 (J.P.M.L. 2021) ............................................................ *passim*

*INS v. Cardoza-Fonseca*,
  480 U.S. 421 (1987) ................................................................................................ 12

## TABLE OF AUTHORITIES—CONTINUED

*INS v. St. Cyr*,
  533 U.S. 289 (2001) ........................................................................................ 1, 9

*Kankamalage v. I.N.S.*,
  335 F.3d 858 (9th Cir. 2003) ........................................................................ 9

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994) ................................................................................. *passim*

*Lindh v. Murphy*,
  521 U.S. 320 (1997) ...................................................................................... 1, 16

*Martin v. Hadix*,
  527 U.S. 343 (1999) ............................................................................ 10, 14, 15

*Mathews v. Kidder, Peabody & Co.*,
  161 F.3d 156 (3d Cir. 1998) ......................................................................... 9

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
  461 U.S. 190 (1983) ...................................................................................... 12

*Republic Nat'l Bank of Miami v. United States*,
  506 U.S. 80 (1992) ........................................................................................ 15

*Scheidemann v. INS*,
  83 F.3d 1517 (3d Cir. 1996) ......................................................................... 12

*Vernon v. Cassadaga Valley Cent. Sch. Dist.*,
  49 F.3d 886 (2d Cir. 1995) ........................................................................... 13

*Wright v. Morris*,
  111 F.3d 414 (6th Cir. 1997) ....................................................................... 15

**Statutes:**

28 U.S.C. § 1407 .................................................................................. 3, 10, 11, 16

28 U.S.C. § 1407(a) ...................................................................................... 8

28 U.S.C. § 1407(g) ...................................................................................... 6, 10

28 U.S.C. § 1407(h) ...................................................................................... 10

Detainee Treatment Act of 2005,
  Pub. L. No. 109–148, 119 Stat. 2739 ........................................................ 16

## TABLE OF AUTHORITIES—CONTINUED

Consolidated Appropriations Act, 2023,
  Pub. L. No. 117-328, 136 Stat. 4459 ................................................................. 6

**Rules:**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 3, 18

R.P.J.P.M.L 10.3(a) ................................................................................ 7, 8, 20

**Legislative Material:**

168 Cong. Rec. H8173 (daily ed. Sept 28, 2022) ................................... 12

168 Cong. Rec. H8252 (daily ed. Sept 29, 2022) ................................... 6, 10

168 Cong. Rec. H10475 (daily ed. Dec. 23, 2022) ................................. 12

168 Cong. Rec. S2935 (daily ed. June 14, 2022) .................................... 6, 10, 11

168 Cong. Rec. S2945 (daily ed. June 14, 2022) .................................... 6, 10

168 Cong. Rec. S7328 (daily ed. Dec. 19, 2022) .................................... 11

168 Cong. Rec. S7752 (daily ed. Dec. 19, 2022) .................................... 11

168 Cong. Rec. S10007 (daily ed. Dec. 21, 2022) .................................. 11

168 Cong. Rec. S10073 (daily ed. Dec. 22, 2022) .................................. 2, 11, 12

168 Cong. Rec. S10077 (daily ed. Dec. 22, 2022) .................................. 12

H.R. 3460, 117th Cong. (as introduced May 21, 2022) .......................... 6, 10

H.R. 3843, 117th Cong. ........................................................................... 12

168 Cong. Rec. H10528 (daily ed. Dec. 23, 2022) ................................. 12

S. 1787, 117th Cong. (as introduced, May 24, 2022) ............................. 6, 10, 11

**Other Authority:**

Bryan Koenig, *State AGs' Google Ad Suit Must Join Private Ones in NY*,
  Law360 (Aug. 10, 2021), *available at* https://tinyurl.com/y9zb4mbe ...................... 20

Defendant Google LLC ("Google") respectfully submits this brief in opposition to the State Plaintiffs' Motion for Remand to the Eastern District of Texas.

The State Plaintiffs' request for remand is based on a provision of the Consolidated Appropriations Act of 2023 that President Biden signed into law months ago, on December 29, 2022. As enacted, this provision ("the Venue Act") amended the multidistrict litigation ("MDL") statute to exempt states from centralization and transfer when they are plaintiffs in suits brought under the antitrust laws. For two months after it was enacted, the States continued litigating in the MDL: they served discovery requests and responses on behalf of all Plaintiffs, they actively negotiated with Google on discovery issues and subsequent stipulations, and they even sought to (again) amend their complaint. Then, on February 27, and without asking Judge Castel for a suggestion of remand, they filed a remand motion with the Panel, asserting that the Venue Act applies retroactively and had stripped Judge Castel of jurisdiction two months before. Both assertions, in addition to being inconsistent with the State Plaintiffs' active litigation in the months after the Venue Act's enactment, are also just wrong.

First, the Venue Act does not apply retroactively. *See Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). The Supreme Court has recognized that, although Congress is empowered to enact retroactive legislation, retroactive statutes raise such "special concerns," *INS v. St. Cyr*, 533 U.S. 289, 315 (2001), and that "congressional enactments . . . will not be construed to have retroactive effect unless their language *requires* this result," *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, (1988) (emphasis added). Consequently, those "cases where [the] Court has found truly 'retroactive' effect adequately authorized by a statute have involved statutory language that was so clear that it could sustain only one interpretation." *Lindh v. Murphy*, 521 U.S. 320, 328 n.4 (1997) (citation omitted). The Venue Act is *not* one of those statutes. Indeed, Congress

considered and repeatedly rejected explicit statutory provisions that would have made the law retroactive. *See, e.g.*, 168 Cong. Rec. S10073 (daily ed. Dec. 22, 2022) (striking a provision of the Venue Act that would have said "[t]he amendments made by subsection (a) *shall apply to any matter pending on*, or filed on or after, *the date of enactment* of this Act"). Congress's repeated deletion of language that would have made the Venue Act apply retroactively strongly suggests that Congress did not intend the Act to undo MDL transfers predating its enactment or to unwind post-transfer MDL proceedings in which a judge has invested significant time and resources addressing a state's antitrust complaint. Moreover, the Venue Act differs from jurisdiction-stripping statutes, where a provision removes the power of federal courts to hear a cause of action, because the Act simply concerns whether certain claims can or should be moved from one federal district court to another. Any supposed "jurisdictional" nature of the Act therefore does not make up for the statute otherwise lacking an express retroactivity command.

Second, the Panel should reject the State Plaintiffs' fallback argument that the Panel should remand as a matter of its discretion. Remand at this time would neither serve the convenience of the parties and witnesses nor promote judicial efficiencies. Just the opposite: The reasons that motivated the Panel's initial decision to centralize the States' action in the MDL remain just as compelling today as they were then. There is "substantial overlap" between the States' case and the private plaintiffs' cases, including with respect to "the alleged Google conduct, plaintiffs' overlapping but different proposed relevant markets, and the involvement of third-party discovery." *In re: Dig. Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1378-79 (J.P.M.L. 2021). Moreover, Judge Castel has made significant progress in the 18 months since the Panel's decision to centralize and transfer these cases. He has established a structure for the efficient management of these cases, he resolved Google's motion to dismiss the States' Third Amended Complaint and

other pretrial disputes, and he continues to marshal coordinated discovery.  Since the MDL was established, Judge Castel has prioritized the States' case, making that case the lead for the others.  If the States' remand motion is successful, Judge Castel will be left with complex questions including whether the motion-to-dismiss ruling on the States' complaint remains law of the case and applicable to the private plaintiffs or whether the Fed. R. Civ. P. 12(b)(6) process needs to start over with private plaintiffs' complaints.

The Panel need not stick Judge Castel with this and other difficult questions.  The law does not require it.  And the efficiencies counsel against it.  The Panel should deny the motion.

## BACKGROUND

### A.  The Panel Centralizes Google AdTech Antitrust Litigation Before Judge Castel

In April 2021, Google came before the Panel requesting 19 actions across 16 districts be centralized before one district court for pretrial purposes, *see* 28 U.S.C. § 1407, including an action brought by the State Plaintiffs that was originally filed in the Eastern District of Texas.  Google explained that the actions each concerned the same conduct and thus presented common factual questions, such that coordination would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.  State Plaintiffs opposed transfer and coordination in large part because of proposed legislation, which at that time included an express retroactive effective date of June 1, 2021, that if passed would "requir[e] all state enforcement actions centralized after that date to return to their original venues."  State Plaintiffs' Opposition to Google's Motion to Transfer, *In re Google Dig. Advert. Antitrust Litig.*, No. 3010 (J.P.M.L. May 26, 2021), ECF No. 71 at 13.  The Panel agreed with Google, holding that coordination of the State Plaintiffs' action with the private actions was "especially compelling here in light of the substantial overlap in the alleged Google conduct, plaintiffs' overlapping but different proposed

relevant markets, and the involvement of third-party discovery." *In re: Dig. Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1378.

The Panel determined each of those actions "present[ed] common factual questions concerning the allegation that Google has monopolized or suppressed competition in online display advertising services in violation of federal antitrust law, whether that market is described singly as all display advertising services, as components of display advertising, or as some larger spectrum of digital advertising." *Id.* at 1375, 1377.  Because of this "common factual core," the Panel concluded that centralizing the litigation would be more efficient.  *Id.* at 1377.  Discovery in the State Plaintiffs' action, "which is likely to be voluminous and complex, will overlap substantially with the discovery in the other actions." *Id.* at 1377-78.  Substantive motions on key issues also would overlap across the actions, and "consistency in judicial rulings on these and other common issues will be important." *Id.* at 1378.  The Panel ultimately found that "[c]entralization will promote the just and efficient conduct of the litigation by eliminating duplicative discovery and avoiding the risk of inconsistent rulings on pretrial matters, particularly on discovery disputes, *Daubert* issues, and dispositive motions," because "[a]ll actions, whether brought as putative class actions, individual actions, or governmental actions, will require common discovery from Google, which is the principal and common defendant. *Id.* at 1375.  Moreover, "centralization will enhance the overall convenience of the parties, the witnesses, and the courts through coordinated proceedings on both discovery and motions in this MDL." *Id.* at 1378.  In short, the Panel reasoned that centralizing the litigation before Judge Castel would "maximize efficiencies." *Id.* at 1376.

### B.  Judge Castel Makes Substantial Progress Toward Resolving The Litigation Based On The State Plaintiffs' Case

The State Plaintiffs' action has been at the core of the MDL structure since the beginning. Indeed, in Pre-Trial Order No. 1, Judge Castel centered the MDL around the State Plaintiffs Third

Amended Complaint, which he said would serve as the lead pleading in the MDL.  *See* Pre-Trial Order No. 1, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Aug. 13, 2021), ECF No. 4.[1]  Judge Castel would first address the State Plaintiffs' federal antitrust claims, before proceeding to address the private plaintiffs' claims, and then all plaintiffs' state law claims.

After Google moved to dismiss the State Plaintiffs' federal antitrust claims, Judge Castel issued a 92-page opinion in which he partially granted and partially denied the motion.  He dismissed certain of State Plaintiffs' claims and narrowed others.  *In re: Google Digit. Advert. Antitrust Litig.*, No. 21-cv-6841, 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022).  Judge Castel then allowed the private plaintiffs to amend their complaints, encouraging that their amendments conform to his motion-to-dismiss opinion; and he set a briefing schedule for Google to seek dismissal of any "nonconforming" claims.  *See* Pre-Trial Order No. 2, ECF No. 309.  He also directed Google and State Plaintiffs to negotiate the effect of the Opinion and Order on State Plaintiffs' state law claims.  *See* Pre-Trial Order No. 4, ECF No. 392.

To maximize the efficiency of discovery, Judge Castel ordered the establishment of a Discovery Steering Committee that would include two representatives designated by the States, which was more representation than any other plaintiff group received.  *See* Pre-Trial Order No. 3, ECF No. 311.  Judge Castel ordered Google to produce to all plaintiffs the documents it had produced to the State of Texas in its pre-suit investigation, and he set discovery deadlines informed by Google's reproduction of those approximately 2 million documents to all other plaintiffs.  *See* Pre-Trial Order No. 5, ECF No. 394.  He also ordered that each witness be deposed only once, that all plaintiffs coordinate their discovery efforts, and that all discovery be shared across all MDL

---

[1] Unless otherwise indicated, all references to the docket are to Judge Castel's MDL docket, No. 1:21-md-03010 (S.D.N.Y. Aug. 13, 2021).

plaintiffs.  *Id.*  In other words, Judge Castel has imposed an efficient procedural framework on this sprawling litigation, and the State Plaintiffs sit at the very heart of that framework.

### C.  Congress Passes The Venue Act

On December 29, 2022, President Biden signed into law a Consolidated Appropriations Bill that includes the Venue Act.  It amends 28 U.S.C. § 1407(g) to add the words "or a State" as follows:  "Nothing in this section shall apply to any action in which the United States *or a State* is a complainant arising under the antitrust laws."  *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. gg, Title III, § 301, 136 Stat. 4459, 5970 (emphasis added).  The Act as passed did not include any retroactive effective date like the one on which State Plaintiffs relied in opposing transfer to the MDL, Congress having since deleted that provision from prior versions of the bill.  *Compare* S. 1787, 117th Cong. (as introduced, May 24, 2022), *and* H.R. 3460, 117th Cong. (as introduced May 21, 2022), *with* 168 Cong. Rec. S2945, S2935-36 (daily ed. June 14, 2022), *and* 168 Cong. Rec. H8252-53 (daily ed. Sept 29, 2022).

### D.  The State Plaintiffs Press Ahead Before Judge Castel

Over the nearly ninety days since the Venue Act passed, the parties have expended considerable effort litigating State Plaintiffs' case, on the assumption it would proceed in the MDL. The State Plaintiffs' have actively participated in the MDL's discovery process during that period, and in fact even served in a key role on the Discovery Steering Committee, which was tasked with preparing discovery requests common to all plaintiffs.  Plaintiffs, including State Plaintiffs, served 301 Requests for Production, and Google served Responses and Objections.  And State Plaintiffs took and continue to take a leading role in the negotiation of ESI and other discovery issues, culminating in the entry of an order governing ESI discovery by Judge Castel on March 17, 2023. *See* Order Governing Discovery Procedure, ECF 508.

Google and State Plaintiffs have continued to be in regular communication, without the State Plaintiffs refusing to participate on the basis that they are no longer part of the MDL.  Google served Requests for Production and Interrogatories on all 17 State Plaintiffs on January 27, then State Plaintiffs requested an extension of the time to respond through March 13.  Google agreed to that extension on the condition that State Plaintiffs respond robustly and substantively to the discovery.  Google served 50 subpoenas to agencies affiliated with the State Plaintiffs concerning their use of ad tech, and Google has been actively negotiating subpoena compliance with those state-affiliated agencies.  State Plaintiffs and Google exchanged several drafts of a stipulation concerning the effect of the Court's September 13, 2022 Opinion and Order on State Plaintiffs' state-law claims, with State Plaintiffs changing their position at the last-minute, necessitating competing submissions to Judge Castel on February 24, 2023, ECF Nos. 475, 476.

The State Plaintiffs also continue to seek to refine their claims before the MDL court.  Just weeks ago, on February 16, 2023, State Plaintiffs filed a pre-motion letter (per Judge Castel's procedures) seeking to amend their Third Amended Complaint. ECF No. 466.  In response, the court issued an order allowing State Plaintiffs to file their fourth amended complaint with a deadline of May 5, 2023.  ECF No. 495.

On February 27, 2023, more than sixty days after the Venue Act became law, State Plaintiffs filed a motion to remand with the Panel—without first seeking a suggestion of remand from the Judge Castel despite this Panel's stated "reluctan[ce]" to grant remand in this circumstance.  R.P.J.P.M.L 10.3(a) ("[T]he Panel is reluctant to order a remand absent the suggestion of the transferee judge . . . .").  Notwithstanding their active engagement with the MDL, State Plaintiffs argue the Venue Act had deprived the district court of authority over their action.

## LEGAL STANDARD

The Panel has discretion to remand a case that has been transferred "at or before the conclusion of . . . pretrial proceedings."  28 U.S.C. § 1407(a); *see In re Wilson*, 451 F.3d 161, 172 (3d Cir. 2006).  Before exercising its discretion, the Panel will generally require, at least, a showing that remand "will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of [the litigation]," *In re Air Crash Disaster at Tenerife*, 461 F. Supp. 671, 672 (J.P.M.L. 1978), or that "everything that remains to be done is case-specific," *In re Wilson*, 451 F.3d at 173.  The burden is on the party seeking remand to establish that remand is warranted.  *In re Integrated Res., Inc. Real Est. Ltd. P'ship Sec. Litig.*, 851 F. Supp. 556, 562 (S.D.N.Y. 1994) (citing *In re Holiday Magic Sec. & Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977)).

When district courts are asked to suggest remand to the Panel, they determine remand is appropriate when their "role in the case has ended."  *In re Integrated Res.*, 851 F. Supp. at 562 (citation omitted).  And where, as here, the district court has not suggested remand, the Panel is "reluctant to order a remand."  *See* R.P.J.P.M.L. 10.3(a).

## ARGUMENT

### I.    The Venue Act Does Not Apply To The States' Case.

#### A.  In repeatedly removing a retroactivity provision from the Venue Act, Congress clearly indicated that the Venue Act should not apply retroactively.

In *Landgraf*, 511 U.S. 244, the Supreme Court set forth a two-part test for determining whether a statute applies retroactively.  At the first stage, a court must "determine whether Congress has expressly prescribed the statute's proper reach."  *Id.* at 280.  If Congress has done so, the inquiry ends, and the court enforces the statute as it is written.  *See id.*  If the statute is ambiguous, the court proceeds to the second stage of the *Landgraf* test and "determine[s] whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed

when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If the statute, as applied, would have such an effect, it will not be applied retroactively "absent clear congressional intent" to the contrary. *Id.*

Although the State Plaintiffs fail to do so, the Panel must begin by taking the statute that Congress enacted at face value. Whether a statute is substantive or procedural only becomes relevant *if* it is unclear whether Congress has "prescribed the statute's proper reach." *Id.* This first step of the *Landgraf* test, "determin[ing] whether Congress has expressly prescribed the statute's proper reach," *id.*, is "a demanding one," *see Kankamalage v. I.N.S.*, 335 F.3d 858, 862 (9th Cir. 2003). That is because "congressional enactments . . . will not be construed to have retroactive effect *unless their language requires this result*." *St. Cyr*, 533 U.S. at 315-316 (emphasis added) (citation omitted) (alteration in original). "Requiring [such] clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Landgraf*, 511 U.S. at 272-273. Thus, "if Congress seeks to . . . reach[] back in time to upset settled expectations, it must do so unequivocally and in a way that assures . . . that it has seriously considered the consequences of such action." *Mathews v. Kidder, Peabody & Co.*, 161 F.3d 156, 170 (3d Cir. 1998). Where a statute lacks an unambiguous command authorizing retroactive application, a statute is presumed to apply prospectively only. *See Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946 (1997) (holding that law applies prospectively "unless Congress has clearly manifested its intent to the contrary").

Here, the Venue Act lacks any of the language the Supreme Court has said could amount to an express retroactivity command. In *Landgraf*, for example, the Court concluded that a congressional statement that "all proceedings *pending on* or commenced after *the date of*

*enactment*" amounted to an "explicit retroactivity command."  511 U.S. at 255-256 & n.8 (emphasis added); *see also, e.g.*, *Martin v. Hadix*, 527 U.S. 343, 354 (1999) (describing the sentence, " '[t]he new provisions shall apply to all proceedings *pending on* or commenced after the date of enactment' " as "unambiguously address[ing] the temporal reach of the statute" (quoting *Landgraf*, 511 U.S. at 260)).  The Venue Act, by contrast, lacks a provision extending its force to cases pending on the date of enactment.

This is by design.  Indeed, Congress repeatedly considered *and removed* such language in drafting the statute.  *See Landgraf*, 511 U.S. at 262-263 (examining legislative history to determine congressional intent at the first stage of the *Landgraf* test).  As initially introduced in both the House and the Senate, the Venue Act included a provision that would have made the law retroactive.  The proposed bill included three sections:  Section 1 named the bill; Section 2 amended 28 U.S.C. § 1407 by inserting the phrase "or a State" into § 1407(g) and by striking § 1407(h); and Section 3 provided that "[t]his Act and the amendments made by this Act, *shall take effect on June 1, 2021*," a date that was *a year prior* to the bill's introduction.  S. 1787, 117th Cong. (as introduced, May 24, 2022) (emphasis added); H.R. 3460, 117th Cong. (as introduced May 21, 2022).  But in both chambers, after it was reported out of committee, the bill was revised to strike Section 3 and remove the retroactive effective date.  168 Cong. Rec. S2945, S2935-36 (daily ed. June 14, 2022); 168 Cong. Rec. H8252-53 (daily ed. Sept 29, 2022).  The bill's originally proposed language was thus changed to read, as follows:

> SECTION 1. Short Title.
> This Act may be cited as the "State Antitrust Enforcement Venue Act of 2021".
> SEC. 2. AMENDMENTS.
> Section 1407 of title 28 of the United States Code is amended—
> (1) in subsection (g) by inserting "or a State" after "United States", and
> (2) by striking subsection (h).

> ~~SEC. 3. EFFECTIVE DATE~~
>> ~~This Act and the amendments made by this Act, shall take effect on June 1, 2021.~~

*Comparing* S. 1787, 117th Cong. (as introduced, May 24, 2022), *with* S. 1787, 117th Cong. (as passed the Senate, June 14, 2022).  The revised version of the bill, *without the retroactive effective date*, was then passed by both houses.  168 Cong. Rec. S2935-36 (daily ed. June 14, 2022).

After passing both the House and Senate, the Venue Act was incorporated into Congress's Consolidated Appropriations Act, where Congress once again considered, and *once again rejected* a retroactivity provision.  168 Cong. Rec. S7328, S7752 (daily ed. Dec. 19, 2022).  The version of the venue bill that appeared in the Consolidated Appropriations Act included new language regarding the "Applicability" of the bill, providing that "[t]he amendments made by subsection (a) *shall apply to any matter pending on*, or filed on or after, *the date of enactment* of this Act."  *Id.* at S7752 (emphasis added).  This language had not previously appeared in any version of the bill.  But only a few days after its introduction, Senators Klobuchar and Lee, the original sponsors of the Venue Act, proposed an amendment that struck the new "applicability" language.  168 Cong. Rec. S10073 (daily ed. Dec. 22, 2022).  Put differently, the amendment struck the language as reflected below:

> SEC. 301. VENUE FOR STATE ANTITRUST ENFORCEMENT.
>> Section 1407 of title 28, United State Code, is amended—
>>> ~~(a)~~ (1) in subsection (g) by inserting "or a State" after "United States". . . .
>>> (2) by striking subsection (h).
>>> ~~(b) APPLICABILITY.   The amendments made by subsection (a) shall apply to any matter pending on, or filed on or after, the date of enactment of this Act.~~

*Comparing* 168 Cong. Rec. S7752 (daily ed. Dec. 19, 2022), *with* 168 Cong. Rec. S10007 (daily ed. Dec. 21, 2022).

As both Senators Klobuchar and Lee put it, the amendment "restore[s] the language that passed in the Senate and passed in the House," 168 Cong. Rec. S10073 (daily ed. Dec. 22, 2022) (statement of Sen. Klobuchar); *see also id.* (statement of Sen. Lee).  As at least one commenter noted, the venue provision as included in H.R. 3843 was "*no longer retroactive* as in previous drafts of the bill[.]"  168 Cong. Rec. H8173-74 (daily ed. Sept 28, 2022) (letter from U.S. Chamber of Commerce included in the legislative record).  The amendment passed, and both the Senate and the House passed the Consolidated Appropriations Act of 2023, as amended.  168 Cong. Rec. S10077 (daily ed. Dec. 22, 2022); 168 Cong. Rec. H10475, H10528 (daily ed. Dec. 23, 2022).

Congress's repeated deletion of language that would have made the Venue Act apply retroactively strongly suggests that Congress did not intend the Act to apply retroactively.  "As the Court in *Landgraf* demonstrated, a court may determine congressional intent from the statutory text, by necessary implication from the statute taken as a whole, or from the statute's legislative history."  *Scheidemann v. INS*, 83 F.3d 1517, 1521 (3d Cir. 1996).  And "[f]ew principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language."  *INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-443 (1987) (citation omitted); *see, e.g.*, *Doe v. Chao*, 540 U.S. 614, 622-623 (2004) (rejecting an interpretation of the Privacy Act that would allow presumed damages when "Congress cut out the very language in the bill that would have authorized any presumed damages"); *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 220 (1983) (noting that it is "improper for us to give a reading to the Act that Congress considered and rejected"); *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 200 (1974) (deletion of provision in committee "strongly militates against a judgment that Congress intended a result that it expressly declined to enact").  Congress could have made the effective date of the

Venue Act a date prior to the statute's enactment.  Congress also could have provided that the Venue Act should apply to pending cases as well as cases filed after its enactment.  Congress considered both, but did neither.[2]  Accordingly, the temporal reach of the statute is clear and the Panel's inquiry should end there.

**B.  Even if the Venue Act were ambiguous, the Panel should still decline to apply the statute retroactively because the States' case has already been transferred.**

Even if the Venue Act were unclear about its prospective application, the States' argument would still fail.  When there is no clear evidence regarding whether Congress intended a statute to apply retroactively, courts next ask whether retroactive application of the statute would have "retroactive effects," *i.e.*, whether it would produce the kind of result that motivates the presumption against retroactive application.  *See Landgraf*, 511 U.S. at 265 (describing the presumption against retroactivity as rooted in "[e]lementary considerations of fairness[, which] dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly").  This second step of the *Landgraf* test has been described by some courts as an inquiry into whether the statutory change affects substantive or procedural rights.  *See, e.g.*, *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 890 (2d Cir. 1995) ("[A]pplying *Landgraf* requires courts to determine whether a portion of a statute operates retroactively or prospectively, and, in connection with that determination, to resolve whether the statutory provision at issue is substantive or procedural."); *see also Landgraf*, 511 U.S. at 275 ("Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural

---

[2] From a policy perspective, this was certainly a reasonable choice by Congress.  Google is aware of only two pending MDLs that include antitrust claims filed by state attorneys general (this case, and *In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 16-md-2724 (E.D. Pa. transferred Aug. 5, 2016)).  Given the extensive efforts each MDL judge has put into their respective coordinated proceedings, *see, e.g.*, *infra* 17-20, Congress may have deleted the retroactivity language and to avoid undoing all the work these two MDL courts had done thus far.

rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive.").

The States seize upon the "procedural" label and argue that "a rule governing venue is a paradigmatic procedural rule" and the Venue Act therefore "must apply to pending cases."  States' Mem. at 4, 6.  But, as *Landgraf* acknowledged, "the mere fact that a new rule is procedural does not mean that it applies to every pending case."  511 U.S. at 275 n.29.  There is no categorical "venue" exception from *Landgraf*'s presumption against retroactive application of legislation.  *See Martin*, 527 U.S. at 359 ("When determining whether a new statute operates retroactively, it is not enough to attach a label (*e.g.*, 'procedural,' 'collateral') to the statute; we must ask whether the statute operates retroactively.").  Instead, even where a statute works purely procedural change, the *Landgraf* Court instructed that a procedural change enacted while a case is pending does not require undoing or invalidating steps taken before the enactment.  *See* 511 U.S. at 275 n.29 ("A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime, and the promulgation of a new rule of evidence would not require an appellate remand for a new trial.").

As Justice Scalia explained in concurring with the majority on this point, "only such *relevant activity which occurs after the effective date* of the statute is covered."  *Id.* at 291 (Scalia, J., concurring in the judgments) (emphasis added).  "A new rule of evidence governing expert testimony, for example, is aimed at regulating the conduct of trial, and the event relevant to retroactivity of the rule is introduction of the testimony.  Even though it is a procedural rule, it would unquestionably not be applied to *testimony already taken*—reversing a case on appeal, for example, because the new rule had not been applied at a trial which antedated the statute."  *Id.* at 291-292 (Scalia, J., concurring in the judgments).  Applying this reasoning a few years later in

*Martin v. Hadix*, the Supreme Court held that a cap on fee reimbursements to attorneys litigating prisoner lawsuits was impermissibly retroactive as to work already performed.  527 U.S. at 358-360 (citing *Landgraf*, 511 U.S. at 275 n.29); *see also, e.g.*, *Wright v. Morris*, 111 F.3d 414, 418 (6th Cir. 1997) (stating that "[f]ootnote 29 of the [*Landgraf*] Court's opinion is controlling" and holding that newly enacted exhaustion requirement did not apply to pending suits).

To the extent that the Venue Act can be interpreted as creating a procedural rule, the "relevant activity" governed by that rule has already occurred.  The Venue Act alters the rules governing the transfer of cases by the Panel.  Google already moved for transfer of the States' case under that statute.  And the Panel already granted that request.  *See In re: Dig. Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1379.  The "commonsense, functional" analysis that Supreme Court precedent demands points straight to the conclusion that the Venue Act cannot reach back and undo that transfer.  *Martin*, 527 U.S. at 357-358.

### C.  The purportedly "jurisdictional" nature of the Venue Act does not overcome the clear indication in the drafting history that the Venue Act should not apply retroactively.

The States argue in the alternative that "the Venue Act deprives the JPML of authority over the case entirely."  States' Mem. at 7.  The States call this a "second, independent reason" for retroactive application of the Venue Act, *id.*, because when a statute only alters jurisdiction, the ordinary presumption against retroactivity does not apply.  "Present law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'"  *Landgraf*, 511 U.S. at 274 (quoting *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 100 (1992) (Thomas, J., concurring)).  Consequently, "no retroactivity problem arises" with respect to an intervening change in jurisdiction "because the change in the law does not 'impair rights a party possessed when he acted, increase a party's

liability for past conduct, or impose new duties with respect to transactions already completed.' " *Hamdan v. Rumsfeld*, 548 U.S. 557, 577 (2006) (quoting *Landgraf*, 511 U.S. at 280).

*First*, the Venue Act is not "directly analogous to changes in a jurisdictional statute that strips a court of authority to hear a case." States' Mem. at 8. Jurisdictional statutes concern the power of federal courts to hear a cause of action, *see Landgraf*, 511 U.S. at 274, not whether certain claims filed by certain plaintiffs can or should be moved from one federal district court to another. Nothing in the Venue Act's addition of the three words "or a state" to 28 U.S.C. § 1407 can be said to oust federal courts of jurisdiction in the way the statutes at issue did in *Hallowell v. Commons*, 239 U.S. 506, 508 (1916), and *Bruner v. United States*, 343 U.S. 112, 116-17 (1952), on which the State Plaintiffs rely. Rather, the Venue Act dictates how federal courts should exercise their jurisdiction, instructing courts on when and how cases can be coordinated or transferred. Thus, the Venue Act is neither "jurisdictional"—nor even "directly analogous to changes in a jurisdictional statute," States' Mem. at 8—as that term is contemplated by *Landgraf*.

*Second*, State Plaintiffs are wrong to say that all "jurisdictional" statutory amendments apply retroactively. The fact that the Court has sometimes held that jurisdictional statutes can apply retroactively "does not mean . . . that *all* jurisdiction-stripping provisions . . . must apply to cases pending at the time of their enactment." *Hamdan*, 548 U.S. at 577. " '[N]ormal rules of [statutory] construction' . . . may dictate otherwise." *Id.* (quoting *Lindh*, 521 U.S. at 326). In *Hamdan*, for example, the Supreme Court considered whether the Detainee Treatment Act of 2005, Pub. L. No. 109–148, 119 Stat. 2739, stripped the federal courts of jurisdiction over habeas corpus actions filed by detainees and pending on the date the statute was enacted. 548 U.S. at 573. Earlier versions of the bill had specifically made the habeas jurisdiction-stripping provision applicable to pending actions, but that language had been deleted. The Court held the habeas jurisdiction-

stripping provision inapplicable to pending cases not only because a neighboring subsection expressly applied to pending cases, but also because Congress had "*rejected* earlier proposed versions of the statute that would have included [the habeas provision] within the scope of that directive [making certain provisions retroactive]." *Id.* at 579. The Court concluded that "Congress' rejection of the very language that would have achieved the result the Government urges here weighs heavily against the Government's interpretation." *Id.* at 579-580. Similarly, in this case, the fact that Congress rejected a provision of the Venue Act that would have allowed retroactive application of the law to the States' case weighs heavily against the States' proposed interpretation of the statute to achieve that result. *See supra* at 8-12.

## II.   The Panel Should Decline to Order Remand As A Matter of Discretion Where State Plaintiffs Offer No Arguments That Would Change The Panel's Earlier Exercise of Discretion In Ordering Transfer.

The State Plaintiffs' one-paragraph argument for a "discretionary" remand, "in the interests of judicial economy," is meritless. A remand at this juncture would undo the efficiencies the Panel sought to achieve by ordering coordination, and that Judge Castel has since worked to deploy.

The Panel centralized State Plaintiffs' action because it recognized the substantial overlap with private plaintiffs' actions, and in particular the "substantial overlap in the alleged Google conduct, plaintiffs' overlapping but different proposed relevant markets, and the involvement of third-party discovery." *In re: Dig. Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1378-79. The "common factual core" across the actions meant that discovery across plaintiffs' actions would "overlap substantially" such that the Panel determined centralization would be most efficient. *Id.* at 1377-78. Importantly, the Panel specifically considered "the risk of inconsistent rulings on pretrial matters, particularly on discovery disputes, *Daubert* issues, and dispositive motions," and held that "informal coordination appears inadequate to address the risk of inconsistent rulings in this factually and legally complex litigation." *Id.* at 1376-77. In short, the Panel reasoned that

centralizing the litigation before Judge Castel would "maximize efficiencies." *Id.* at 1376.  In the nearly eighteen months since, Judge Castel has made great efforts to do just that.

These realities are even more true today.  Judge Castel has invested substantial time and energy to become familiar with the factual and legal issues underpinning this litigation—and State Plaintiffs' claims in particular—over the last eighteen months; remand would unwind, or at least destabilize, his tireless work.  He established a structure for the efficient management of these cases, he resolved Google's motion to dismiss and other pretrial disputes, and he continues to marshal coordinated discovery.  *Supra* 4-6.  And this has all been done with the State Plaintiffs' action at the forefront, because State Plaintiffs' complaint has served as the lead complaint to test all plaintiffs' federal antitrust claims, i.e. to test the common factual core of the MDL.  Judge Castel's 92-page opinion grappled with State Plaintiffs' complaint and dismissed or narrowed some of their claims; Judge Castel then instructed private plaintiffs to amend their complaints based on this ruling.  If State Plaintiffs' remand motion is successful on the basis that the State Plaintiffs' case was never properly part of the MDL, it will raise many complicated questions about the viability of the court's motion-to-dismiss rulings, about the effect remand will have on private plaintiffs' amendments that turn on the State Plaintiffs' complaint, and about whether the Rule 12(b)(6) process needs to start over with private plaintiffs' complaints.  Remand will render great uncertainty to the plaintiff actions left behind in the MDL.

State Plaintiffs have also been at the center of discovery.  They serve key roles on the Discovery Steering Committee.  They prepare discovery requests common to all plaintiffs, and have drafted and served 301 Requests for Production on Google that they now contend they had no intention of pursuing in the MDL.  Judge Castel even planned the entire discovery process based off when Google complied with his order to reproduce to non-State plaintiffs the documents

it had already produced in Texas's pre-suit investigation.  If State Plaintiffs are removed from the MDL, Judge Castel's efforts to move discovery along will be for naught, because Google will at minimum need to review (and potentially revise) its Responses and Objections in light of the claims that remain, and the entire discovery structure will be affected.  Indeed, if the cases proceed separately, it could lead to parties and witnesses being subjected to duplicative discovery and motions practice.  Many of the same discovery disputes or procedural issues will arise in both venues, given the common factual core, and courts might issue inconsistent pretrial rulings.  And the courts could render inconsistent substantive rulings, which then could give rise to circuit splits on issues arising from Google's very same conduct, far from an efficient result.  In short, remand would risk precisely what the Panel sought to avoid by creating the MDL.  *See supra* 3-4.

Not only would granting State Plaintiff's motion be inefficient and prejudicial, but the motion comes too late:  More than sixty days elapsed after the Venue Act's enactment before State Plaintiffs moved to remand their action on the grounds that the Act had earlier destroyed the district court's MDL-authorization over their action.  But State Plaintiffs' ongoing and active participation in the MDL since the Act's enactment is hard to square with their subsequent litigation position.  They have actively engaged in discovery requests and responses on behalf of all plaintiffs in the MDL, they have negotiated with Google on discovery issues and substantive stipulations, and they have even sought to amend their complaint (for the fourth time) in Judge Castel's court.  *Supra* 6-7.  So if State Plaintiffs' position in their motion for remand is to be believed, then it would mean that for sixty days State Plaintiffs have engaged in extensive back and forth, with both Google and Judge Castel, all while actually believing the court lacked authority to adjudicate their case.  While all of this litigation conduct by State Plaintiffs might explain why they did not opt to ask Judge Castel to issue a suggestion of remand, it does not support their requested discretionary remand.

The Panel's stated "reluctan[ce]" to order remand without a suggestion of remand from the MDL court should carry particular weight in these circumstances. *See generally* R.P.J.P.M.L 10.3(a) (The Panel "is reluctant to order a remand absent the suggestion of the transferee judge."). State Plaintiffs' decision to come straight to the Panel tellingly avoids giving Judge Castel an opportunity to document the efforts he has put towards maximizing the efficiency of this sprawling litigation, structured with the State Plaintiffs' action at the center.

At bottom, the Panel originally placed the MDL before Judge Castel because of its "confiden[ce] that [Judge Castel] will steer [the] litigation on a prudent course" given his proven "willingness and ability to manage . . . litigation efficiently."[3]  Transfer Order, ECF No. 1 at 8. Since that order, Judge Castel has acted consistent with the Panel's prediction.  Given his efforts these last eighteen plus months, there is all the more reason the Panel should again find that centralization of the State Plaintiffs' action before Judge Castel will continue to "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *In re: Dig. Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1375.

Dated: March 22, 2023 

Respectfully submitted,

/s/  Eric Mahr

Eric Mahr
Julie S. Elmer
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4545

---

[3] State Plaintiffs, in fact, were "certainly excited that the panel assigned the case to Judge Castel," to the point that they would even consider not asking to return to Texas for trial and instead "request[ing] to try the case in the SDNY."  Bryan Koenig, *State AGs' Google Ad Suit Must Join Private Ones in NY*, Law360 (Aug. 10, 2021), *available at* https://tinyurl.com/y9zb4mbe.

(202) 777-4555 (Fax)
eric.mahr@freshfields.com
julie.elmer@freshfields.com

Boris Feldman
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
(650) 461-8200
boris.feldman@freshfields.com

*Counsel for Defendant Google LLC*