BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | MDL No. 3010 |

*This document relates to:*

| | |
|---|---|
| STATE OF TEXAS, et al.,<br><br>*Plaintiffs,*<br><br>-against-<br><br>GOOGLE LLC,<br><br>*Defendant.* | No. 1:21-cv-06841 (PKC) (S.D.N.Y.)<br>No. 4:20-cv-957 (SDJ) (E.D. Tex.) |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION
FOR STAY PENDING APPEAL BY WRIT OF MANDAMUS**

Boris Feldman
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
(650) 461-8200
boris.feldman@freshfields.com

Eric Mahr
Julie S. Elmer
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4545
eric.mahr@freshfields.com
julie.elmer@freshfields.com

*Counsel for Defendant Google LLC*

## TABLE OF CONTENTS

                                                                             <u>Page</u>

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................2

    I.      GOOGLE IS LIKELY TO SUCCEED ON THE MERITS ............................................2

           A.      The Panel Erred In Holding That The Venue Act Applies Retroactively ....................................................................................................2

           B.      Google's Entitlement To Relief Is Clear And Indisputable ....................................6

    II.     GOOGLE WILL SUFFER IRREPARABLE HARM ABSENT A STAY ......................8

    III.   THE BALANCE OF HARMS AND THE PUBLIC INTEREST FAVOR A STAY ........................................................................................................9

CONCLUSION .....................................................................................................................10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Brenntag Int'l Chems., Inc. v. Bank of India*,
    175 F.3d 245 (2d Cir. 1999) ............................................................................................. 9

*Centurion v. Holder*,
    755 F.3d 115 (2d Cir. 2014) ............................................................................................. 9

*Cheney v. U.S. Dist. Ct.*,
    542 U.S. 367 (2004) ......................................................................................................... 1

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010) ............................................................................................... 7

*Doe v. Chao*,
    540 U.S. 614 (2004) ......................................................................................................... 3

*Eastman Kodak Co. v. STWB, Inc.*,
    452 F.3d 215 (2d Cir. 2006) ............................................................................................. 6

*Ex parte Collett*,
    337 U.S. 55 (1949) ................................................................................................... 4, 5, 6

*Fernandez-Vargas v. Gonzales*,
    548 U.S. 30 (2006) ........................................................................................................... 4

*Graham v. Johnson*,
    168 F.3d 762 (5th Cir. 1999) ............................................................................................ 4

*Hirschfeld v. Board of Elections*,
    984 F.2d 35 (2d Cir. 1993) ............................................................................................ 1, 7

*In re Air Crash Disaster at Tenerife*,
    461 F. Supp. 671 (J.P.M.L. 1978) .................................................................................... 8

*In re City of New York*,
    607 F.3d 923 (2d Cir. 2010) ............................................................................................. 7

*In re Cooper Tire & Rubber Co.*,
    568 F.3d 1180 (10th Cir. 2009) ........................................................................................ 6

*In re Digital Advert. Antitrust Litig.*,
    555 F. Supp. 3d 1372 (J.P.M.L. 2021) ..................................................................... 5, 8, 9

*In re Food Lion, Inc.*,
    73 F.3d 528 (4th Cir. 1996) .............................................................................................. 9

*In re Warrick*,
    70 F.3d 736 (2d Cir. 1995) ....................................................................................... 7, 8, 9

*In re Wilson*,
    451 F.3d 161 (3d Cir. 2006) ............................................................................................. 8

## TABLE OF AUTHORITIES—CONTINUED

Page(s)

*INS v. Cardoza-Fonseca*,
  480 U.S. 421 (1987) ................................................................................................. 2

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994) ......................................................................................... 1, 4, 6

*Linde v. Arab Bank, PLC*,
  706 F.3d 92 (2d Cir. 2013) ...................................................................................... 1

*Lindh v. Murphy*,
  521 U.S. 320 (1997) ............................................................................................ 2, 4

*Morgan Guar. Tr. Co. v. Republic of Palau*,
  971 F.2d 917 (2d Cir. 1992) .................................................................................... 6

*Rivers v. Roadway Express, Inc.*,
  511 U.S. 298 (1994) ................................................................................................. 3

*Scheidemann v. INS*,
  83 F.3d 1517 (3d Cir. 1996) .................................................................................... 2

*SEC v. Rajaratnam*,
  622 F.3d 159 (2d Cir. 2010) .................................................................................... 7

*United States v. National City Lines, Inc.*,
  337 U.S. 78 (1949) ............................................................................................. 4, 5

*Yee v. City of Escondido*,
  503 U.S. 519 (1992) ................................................................................................. 6

**STATUTE:**

28 U.S.C. § 1407(g) .................................................................................................. 5

**RULE:**

Fed. R. App. P. 21(b)(6) ......................................................................................... 10

**INTRODUCTION**

The State Plaintiffs' Opposition to Google's Emergency Motion for a Stay confirms that a stay is justified. With respect to Google's likelihood of success on the merits of this appeal, the State Plaintiffs urge the Panel to deny the stay because, in their view, the ruling was correct. *See* Stay Opp. 4-7. But, to obtain a stay, Google need only show that there is a "substantial possibility" that the Second Circuit will grant Google's mandamus petition. *Hirschfeld v. Board of Elections*, 984 F.2d 35, 39 (2d Cir. 1993) (citation omitted). That possibility exists here because the Panel's decision made serious errors at both steps of the retroactivity analysis prescribed by *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). Google's exclusive avenue of review is a writ petition in the Second Circuit, *see Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380–381 (2004), and the petition presents a question of first impression, *Linde v. Arab Bank, PLC*, 706 F.3d 92, 108 (2d Cir. 2013).

With respect to the equitable factors, the State Plaintiffs leave most of Google's stay motion undisputed. They do not dispute that Google faces irreparable harm because it could lose its appeal rights and access to the efficiencies of multi-district litigation (MDL) proceedings. They do not dispute that a stay would permit the litigation to progress in the Southern District of New York (SDNY). Nor do they dispute that a stay would conserve judicial resources. Ignoring Google's compelling reasons for a stay, the State Plaintiffs instead suggest that because the Second Circuit could contravene its own precedent to unwind the remand if Google is ultimately successful on appeal, this Court should prioritize the State Plaintiffs' desire to get to trial quickly, which they say will happen faster with a remand. *See* Stay Opp. 7-10. But there is no need to risk Google's chance at relief in order to permit the State Plaintiffs to move forward with their case. Litigation can, and will, move forward in the SDNY, where Judge Castel has consistently prioritized the State Plaintiffs' case, and where the State Plaintiffs will continue to benefit from the coordinated proceedings. This Court should grant the stay.

**ARGUMENT**

I.  **GOOGLE IS LIKELY TO SUCCEED ON THE MERITS.**

   A.  **The Panel Erred In Holding That The Venue Act Applies Retroactively.**

The State Plaintiffs begin by summarizing the Panel's remand order. *See* Stay Opp. 4-6. But, as explained in Google's stay motion, the Panel's decision made serious errors at both steps of the retroactivity analysis.

***Landgraf* Step One.**  At *Landgraf* step one, the Panel looked only at the enacted text of the Venue Act, and—because the Panel "s[aw] nothing in this sentence that sets forth the amendment's temporal reach"—the Panel proceeded to *Landgraf*'s second step. Remand Order 2-3. That was error. The Supreme Court has squarely rejected reading *Landgraf* as holding "there are only two alternative sources of rules to determine its ultimate temporal reach: either an 'express command' from Congress or application of our . . . default rule" at *Landgraf*'s second step. *Lindh v. Murphy*, 521 U.S. 320, 324 (1997). Instead, "[i]n determining whether a statute's terms would produce a retroactive effect . . . and in determining a statute's temporal reach generally, our normal rules of construction apply." *Id.* at 326. Under the proper analysis, "[a]s the Court in *Landgraf* demonstrated, a court may determine congressional intent from the statutory text, by necessary implication from the statute taken as a whole, or from the statute's legislative history." *Scheidemann v. INS*, 83 F.3d 1517, 1521 (3d Cir. 1996). And "[f]ew principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-443 (1987) (citation omitted). That canon of interpretation leads to the inescapable conclusion that the Venue Act does not retroactively undo already completed transfers under the MDL statute because Congress twice considered and rejected proposed language that would have made the Venue Act retroactive.

2

The State Plaintiffs' only response is to argue that Google's reliance on "drafting history" cannot amount to an express statutory command. Stay Opp. 5. But Congress's "deletion" of particular language "from the bill" as it was introduced in Congress "is fairly seen . . . as a deliberate elimination of" the covered concept from the enacted law. *Doe v. Chao*, 540 U.S. 614, 623 (2004). Indeed, the Supreme Court reached a similar conclusion in *Landgraf*'s companion case, *Rivers v. Roadway Express, Inc.*, 511 U.S. 298 (1994). *Rivers*, which was issued contemporaneously with *Landgraf*, addressed the temporal scope of another provision of the same statute at issue in *Landgraf* and relied on Congress's decision to delete an expressly retroactive provision of the bill. Among other arguments, the Supreme Court in *Rivers* focused on the fact that a prior version of the bill "expressly provided that the amendment [in question] 'shall apply to all proceedings *pending on* or commenced after' " the date of the decision abrogated by the enactment of the statute. *Id.* at 307-308 (emphasis added) (citation omitted). As the Court explained, because "[t]he statute that was actually enacted in 1991 contains no comparable language" to the retroactive language in the 1990 bill—that is, because "the Act lacks any direct reference to cases arising before its enactment"—the Court concluded that "the text of the Act does not support the argument that [it applies] *to cases arising before the 1991 Act's passage*." *Id.* at 308. The State Plaintiffs are wrong, as *Rivers* shows, to claim that drafting history is irrelevant. The Supreme Court contemporaneously relied on precisely that type of evidence in determining the temporal effect of a different provision in the same statute. *Id.* at 304-308.

In short, the Panel was not free to simply take a quick look at the enacted text and having "see[n] nothing in [the Act] that sets forth the amendment's temporal reach," move on to *Landgraf*'s second step. Remand Order 2-3. Absent express statutory language, the Panel, like any other court, must "try to draw a comparably firm conclusion about the temporal reach

specifically intended by applying 'our normal rules of construction.'" *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (quoting *Lindh*, 521 U.S. at 326). Congressional intent regarding the temporal reach of a statute "may be implied as well as explicit." *Graham v. Johnson*, 168 F.3d 762, 781 (5th Cir. 1999). Only if Congressional intent cannot be determined through normal rules of construction does the Court move to the second step of *Landgraf*'s test and decide whether application of the statute or rule would have a retroactive effect. *Landgraf*, 511 U.S. at 280; *Fernandez-Vargas*, 548 U.S. at 37-38. As the drafting history shows, Congress *did* define the temporal reach of the Venue Act. And because Congress's intent is clear that the Venue Act is not retroactive, the Panel's analysis should have ended there: If Congress has prescribed a statute's temporal reach, "there is no need to resort to judicial default rules." *Landgraf*, 511 U.S. at 280.

**Landgraf Step Two.** At *Landgraf* step two, the State Plaintiffs insist that the Venue Act is retroactive because it is procedural. Stay Opp. 5. That is wrong. As the Supreme Court has explained, "the mere fact that a new rule is procedural does not mean that it applies to every pending case." *Landgraf*, 511 U.S. at 275 n.29. The Venue Act cannot be applied retroactively here because the "relevant activity" has already occurred. *Id.* at 291 (Scalia, J., concurring in the judgments). It occurred two years ago, when this Panel transferred the State Plaintiffs' case for coordinated proceedings in the SDNY.

Although the State Plaintiffs claim that *Ex parte Collett*, 337 U.S. 55 (1949), and *United States v. National City Lines, Inc.*, 337 U.S. 78 (1949), support their view of the Venue Act, *see* Stay Opp. 5-6, those cases are not to the contrary. The State Plaintiffs argue that "[i]n *Ex parte Collett* and *National City Lines*, the district court initially denied transfer, but later—after the statute changed the venue provision—granted transfer," which in State Plaintiffs' view, "amounted to '*undoing*' the initial denial." Stay Opp. 6 n.1. But the State Plaintiffs misstate the facts of those

4

cases; there was no "initial denial of transfer" in either case. Both cases involved an amendment to the Code that granted courts the power to transfer suits to a more convenient forum. In *National City Lines*, after having been denied a request for a dismissal based on the forum, the defendants "filed a *new* motion" for a transfer "citing § 1404(a)," that the district court granted on the basis of "the convenience of parties and witnesses" and "the interest of justice," which the statute had newly made relevant. 337 U.S. at 80 (emphasis added). The defendant in *Ex parte Collett* also filed a new motion that the district court granted based on the statutory factors. 337 U.S. at 56-57. In other words, the Supreme Court permitted the defendants in those cases to request—*for the first time*—a transfer under the forum non conveniens standard once Congressional action made that option available. That is not what the State Plaintiffs have done here.

Here, the State Plaintiffs sought to *undo* a transfer that the Panel had directed years earlier on the basis that Congress added the words "or a State" to § 1407(g). The Venue Act did not create a new procedural mechanism or a new standard for applying it. The State Plaintiffs did not file a new transfer motion, citing the transfer standard. And the Panel did not cite any changed facts that would have affected its prior ruling that the transfer standard favors centralization. *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1378 (J.P.M.L. 2021). Instead, the Panel granted the remand request without considering whether remand would be more convenient, more efficient, or more just. That is why this case has nothing in common with *Ex parte Collett* and *National City Lines*, and that is why the Panel's decision here was impermissibly retroactive.

Unable to rehabilitate *Ex parte Collett* and *National City*, the State Plaintiffs argue that Google somehow "forfeit[ed]" its response to these cases. Stay Opp. 6. Not so. Google's argument is the same in its mandamus petition as it was here: that the *Landgraf* two-step framework governs. Neither *Ex parte Collett* nor *National City* applied the *Landgraf* framework—

5

indeed, they predate *Landgraf* by decades—and the Panel's reliance on those cases misunderstands both the facts of those cases and *Landgraf*'s rule. *Landgraf* reshaped retroactivity jurisprudence. *Compare Ex parte Collett*, 337 U.S. at 71 (dismissing petitioner's argument "that his action may not be transferred because it was instituted prior to the effective date of the Code" because "[n]o one has a vested right in any given mode of procedure") (citation omitted), *with Landgraf*, 511 U.S. at 275 n.29 (explaining that "the mere fact that a new rule is procedural does not mean that it applies to every pending case"); *see also, e.g.*, *Morgan Guar. Tr. Co. v. Republic of Palau*, 971 F.2d 917, 921 (2d Cir. 1992) (noting, before *Landgraf*, that "[t]he Supreme Court's current position on retroactive application of civil statutes is . . . unclear").

Even if *Ex parte Collett* and *National City* had some relevance to the retroactivity analysis here, there is no bar preventing the Second Circuit from "entertain[ing] additional support that a party provides for a proposition presented below." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 (2d Cir. 2006). Google plainly "addressed [the] issue" of whether the Venue Act applies retroactively and may "make any argument in support of [its] claim" that the statute is *not* retroactive. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). The case the State Plaintiffs cite (at 6) simply states that a party may forfeit an issue where the party cannot at least "suggest that its argument pertained" to what "it now claims" on appeal, *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1196 (10th Cir. 2009). But Google has consistently argued that the Venue Act does not apply retroactively. No rule limits a party on appeal to citing or distinguishing only the cases mentioned in its brief below.

**B.     Google's Entitlement To Relief Is Clear And Indisputable.**

The State Plaintiffs argue that the Second Circuit is unlikely to grant Google's request for mandamus, even if that court recognizes the Panel's errors. Stay Opp. 4, 6-7. In so arguing, the State Plaintiffs misstate the applicable legal standards.

*First*, as to Google's likelihood of obtaining mandamus relief, Google need not show "that it is likely *right* on the statutory question" and that "the Second Circuit will grant . . . mandamus." *Id.* at 4. Although the Supreme Court has "repeated the 'likely to succeed on the merits' phrasing, it did not suggest that this factor requires a showing that the movant is 'more likely than not' to succeed on the merits." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37 (2d Cir. 2010). Instead, the question is "whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal." *Hirschfeld*, 984 F.2d at 39 (internal quotation marks omitted). Consequently, Google only needs to show that there is a substantial possibility that the Second Circuit will grant mandamus.

*Second*, the State Plaintiffs are also wrong to contend that a lower court's "[f]ail[ure] to 'properly apply' a legal test" cannot justify mandamus relief. Stay Opp. 6-7. The Second Circuit has explained that it will find a clear and indisputable right to a writ of mandamus where a court under its supervision commits a "clear abuse of discretion." *In re City of New York*, 607 F.3d 923, 943 (2d Cir. 2010) (citation omitted). A court abuses its discretion if its ruling is based "on an erroneous view of the law." *SEC v. Rajaratnam*, 622 F.3d 159, 171 (2d Cir. 2010); *see also, e.g.*, *In re Warrick*, 70 F.3d 736, 740 (2d Cir. 1995). That is precisely what happened here. The Panel's decision failed to adhere to *Landgraf*. *See supra* at 2-6.

The State Plaintiffs attempt to distinguish the Second Circuit's grant of mandamus in *Warrick*, 70 F.3d at 740, arguing that the district court's decision to "giv[e] dispositive weight to *judicial* efficiency" and to discount "the convenience of parties and witnesses," is somehow different from the Panel's decision here. Stay Opp. 6 (citation omitted). It is not. The *Warrick* district court "[f]ail[ed] to apply the framework set by statute," *id.* at 7, which is the same error Google asserts occurred here. The Panel ordinarily will not remand a case unless the party seeking

7

remand has shown that remand "will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of [the litigation]," *In re Air Crash Disaster at Tenerife*, 461 F. Supp. 671, 672 (J.P.M.L. 1978), or that "everything that remains to be done is case-specific," *In re Wilson*, 451 F.3d 161, 173 (3d Cir. 2006). The Panel deviated from this standard in ordering remand based on its retroactivity analysis, without considering whether remand would be more convenient, efficient, or just. And the Panel had previously concluded that those factors all favored coordination of the State Plaintiffs' case before Judge Castel in the SDNY. *See In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1380. The Panel here therefore made the same "clear and indisputable error" in applying the statutory framework that the Second Circuit has previously granted mandamus to correct. *See Warrick*, 70 F.3d at 740.

*Third*, the State Plaintiffs are wrong to suggest that there is no error here because "this Panel unquestionably has the power to remand the case quite apart from the Venue Act." Stay Opp. 7. As noted above, that power is constrained by factors that the Panel had previously considered and had found favored Google's position. *See supra* at 7-8. The Panel's power to remand based on the application of a particular legal standard, does not grant the Panel the power to remand based on an erroneous interpretation of the Venue Act.

## II. GOOGLE WILL SUFFER IRREPARABLE HARM ABSENT A STAY.

Google faces irreparable harm absent a stay because it risks losing both access to the efficiencies of MDL proceedings and its appeal rights. Mot. 12-15. The State Plaintiffs try to brush off these harms by analogizing them to litigation expenses. Stay Opp. 8-9. The analogy doesn't work.[1]

---

[1] To the extent that the Panel disagrees, and concludes that Google's harms are litigation burdens, then that is an equally apt description of the harms that State Plaintiffs cite in support of their argument that a stay will injure them. *See* Stay Opp. 9-10 (citing a potential delay of the trial).

Remand in the midst of pre-trial proceedings imposes an injury beyond mere "litigation expense." Stay Opp. 8. Google risks losing access to the coordinated MDL proceedings. The Panel initially granted coordination to Google to "eliminat[e]" the unique burdens from being a "common defendant" across disparate proceedings. *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1375. These "circumstances . . . constitute irreparable harm" because there is "substantial chance" Google "cannot be returned to the position [it] previously occupied" before Judge Castel. *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).

And, contrary to State Plaintiffs' claims, Stay Opp. 9, a stay is necessary to give meaning to Google's appeal because the Second Circuit has held that it only has the power to stop a transfer to a district court outside the Second Circuit *if the transfer has not yet occurred*. *Warrick*, 70 F.3d at 739. Although the State Plaintiffs point to a Fourth Circuit decision that reached a different conclusion, *see* Stay Opp. 9 (citing *In re Food Lion, Inc.*, 73 F.3d 528 (4th Cir. 1996)), the Second Circuit is "bound by [its] own precedent," not that of the Fourth Circuit, *Centurion v. Holder*, 755 F.3d 115, 123 (2d Cir. 2014). The Panel therefore cannot assume—contrary to binding Second Circuit precedent—that the Second Circuit could grant mandamus to correct a completed transfer.

## III. THE BALANCE OF HARMS AND THE PUBLIC INTEREST FAVOR A STAY.

The State Plaintiffs face no risk of injury from a stay here, meaning that the balance of harms favors a stay. Mot. 15. The public interest also supports the requested stay because it would avoid potentially duplicative litigation, thus conserving judicial resources. *Id.* at 15-16. Ignoring Google's arguments, the State Plaintiffs argue that they would be harmed by a stay because a stay would delay trial. *See* Stay Opp. 9. They offer the same reason for their assertion that a stay is not in the public interest: the State Plaintiffs believe that they will ultimately succeed at trial on their antitrust claims, and they will do so more quickly in Texas. *See id.* at 10.

But State Plaintiffs do not explain *why* a stay pending a mandamus petition is likely to affect a trial date that has not yet been set. The Second Circuit is likely to resolve Google's mandamus petition in short order because mandamus proceedings enjoy "preference over ordinary civil cases," Fed. R. App. P. 21(b)(6), and that court has already ordered the State Plaintiffs to respond to the mandamus petition by July 15, 2023, *see In re: Google LLC*, No. 23-910, ECF No. 30 (2d Cir. July 5, 2023). And while the State Plaintiffs assert that "litigation could not proceed effectively while the remand is stayed," Stay Opp. 10, that is not true. Litigation can and will continue to move forward in the SDNY, where discovery is ongoing, and Judge Castel has consistently prioritized the State Plaintiffs' case above others in the MDL. *See, e.g.*, Pre-Trial Order No. 1, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Aug. 13, 2021), ECF No. 4 (explaining that the State Plaintiffs' Third Amended Complaint would serve as the lead pleading in the MDL). State Plaintiffs' suggestion that a stay would preclude efficient resolution of this case is belied by Judge Castel's efficient handling of this case to date and the Coordination Order that the State Plaintiffs entered into setting out the terms of a Coordinated Discovery Period among the State Plaintiffs, the private plaintiffs in the MDL, and the parties to the federal action pending in the Eastern District of Virginia. *See* Order Regarding Coordination of Discovery, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. June 2, 2023), ECF No. 564.

## CONCLUSION

For the foregoing reasons, the Panel should enter an order staying its Remand Order, or alternatively, if it is inclined to deny relief, enter an administrative stay of 7 days from that denial to permit Google to seek a stay from the Second Circuit before the transfer is effectuated.

Dated: July 6, 2023                                Respectfully submitted,

/s/ Eric Mahr

Eric Mahr
Julie S. Elmer
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
(202) 777-4545

Boris Feldman
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
(650) 461-8200