**UNITED STATES JUDICIAL PANEL**
on
**MULTIDISTRICT LITIGATION**

IN RE: GOOGLE DIGITAL ADVERTISING
ANTITRUST LITIGATION                                                                                         MDL No. 3010

**ORDER DENYING MOTION FOR STAY PENDING APPEAL**

**Before the Panel:**[*]  The action listed on Schedule A (*State of Texas*) previously was transferred from the Eastern District of Texas to the Southern District of New York for centralized pretrial proceedings in MDL No. 3010.  *See In re Digital Advertising Antitrust Litig.*, 555 F. Supp. 3d 1372, 1373 (J.P.M.L. 2021).  Following centralization, legislation was enacted in late 2022 amending Section 1407(g) to exempt state antitrust enforcement actions arising under federal antitrust law from MDLs, and plaintiffs in *State of Texas* then moved for remand to the Eastern District of Texas.[1]  On June 5, 2023, we held that the amendment to Section 1407(g) applies to *State of Texas* and ordered remand of the action to the Eastern District of Texas.  *See In re Google Digital Advertising Antitrust Litig.*, __ F. Supp. 3d __, 2023 WL 3828612 (J.P.M.L. June 5, 2023).

This matter is now before us on Google's motion to stay the remand order pending its appeal by petition for writ of mandamus to the Second Circuit under Section 1407(e).[2]  The State Plaintiffs oppose the motion.

I.

In deciding whether a stay pending appeal is warranted, we weigh the following factors: (1) whether the applicant has made a "strong showing that he is likely to succeed on the merits"; (2) "irreparable injury to the applicant in the absence of a stay"; (3) "substantial injury to the nonmoving party if a stay is issued"; and (4) the public interest.  *See New York v. United States Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020) (per curiam) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  The two "most critical" factors are likelihood of success on the merits and irreparable injury.  *See Nken*, 556 U.S. at 434 ("The first two factors of the traditional standard are the most critical.")

---

[*] Judge David C. Norton did not participate in the decision of this matter.

[1] The legislation at issue is part of the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. gg, Title III, § 301, 136 Stat. 4459, 5970 (Dec. 29, 2022).  The section at issue, titled "Venue for State Antitrust Enforcement," amends Section 1407(g) to add the words "or a State" to the exemption originally created for U.S. antitrust enforcement actions.  *See id.* § 301(1).  Thus, Section 1407(g), as amended, now states: "Nothing in this section shall apply to any action in which the United States or a State is a complainant arising under the antitrust laws."

[2] On June 12, 2023, we entered a temporary administrative stay of the remand order to allow full briefing and consideration of Google's motion for stay pending appeal.

After weighing these factors, we hold that a stay pending appeal is not warranted. Google's principal arguments in support of a stay pending appeal are that (1) the Panel erred in interpreting the Section 1407(g) amendment to apply to actions centralized before its enactment; and (2) Google will be irreparably harmed absent a stay because, as Google reads applicable precedent, the Second Circuit risks losing jurisdiction to grant mandamus relief after remand is effectuated, thus depriving Google of meaningful appellate review. We find these arguments unpersuasive.

Turning first to the irreparable harm objection,[3] Google is incorrect in asserting that, absent a stay, it could lose its appeal rights or the Second Circuit could lose jurisdiction to grant mandamus relief. The main case Google relies on for this argument is *In re Warrick*, 70 F.3d 736 (2d Cir. 1995), which concerned whether the Circuit had authority to order mandamus relief after a transfer under 28 U.S.C. § 1404 already had been effectuated – i.e., after the district court had implemented the order transferring the subject case to the Middle District of Pennsylvania in the Third Circuit. In that context, the Second Circuit determined: "We lack power to prevent or reverse the transfer, because the case was received by the Middle District prior to any application by [petitioner] for a stay." *See id.* at 737. The Circuit thus held that it was limited to "directing the district court [there, the District of Connecticut] to request return of the case from the Middle District." *See id.*

The *Texas* action stands in a fundamentally different posture – one that allows the Second Circuit to grant mandamus relief, should it see fit to do so. Transfer and remand of *Texas* between the transferor and transferee court happens under the Panel's authority under Section 1407, in contrast to a district court's authority under Section 1404. Under Section 1407(e), the Panel's remand order is subject to "review in the court of appeals having jurisdiction over the transferee district" – here, the Second Circuit. Thus, should the Second Circuit find error in the remand order, its order would be directed to the Panel, not to a district court. This is obvious from the relief requested in Google's petition for writ of mandamus, in which Google asks the Circuit to "reverse [the] Panel's Remand Order, and remand to the Panel with instructions that the State Plaintiffs' case should remain in [SDNY] . . . for coordinated pre-trial proceedings."[4] The fact that the *Texas* action would be in the Eastern District of Texas, instead of a district court within the Second Circuit, does not circumscribe the Second Circuit's appellate authority over the Panel under Section 1407(e), or the Panel's Section 1407(a) authority to transfer and remand cases.

Second, Google has not made a strong showing that it is likely to succeed on the merits. Google's motion for stay largely repeats the arguments it previously made in its opposition to the States' motion for remand and, in particular, the argument that the Panel must consider legislative history at step one of the *Landgraf* analysis – "whether Congress has expressly prescribed the statute's proper reach." But the remand order explained why consideration of legislative history is not appropriate: "The Supreme Court in *Landgraf* cautioned against relying on the deletion of a retroactivity provision, explaining that such omissions may reflect a political 'compromise' and 'does not tell us precisely where the compromise was struck.'" *See* 511 U.S. at 256. The cases

---

[3] The Second Circuit has held that irreparable harm is the "single most important prerequisite" for preliminary injunctive relief. *See, e.g., Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).

[4] *See In re Google*, App. No. 23-910, Doc. No. 1, at 31 (S.D.N.Y. June 20, 2023).

Google relies upon now are not to the contrary.[5]

Google next argues that it likely will prevail on appeal because, under *Landgraf* step two, the Panel did not consider whether Section 1407(g) has "actual retroactive effect" – here, "undoing" the transfer of *Texas* to the MDL. But the order plainly shows that we did consider whether Section 1407(g) has retroactive effect, stating that at *Landgraf* step two, "we ask whether application of the statute to pending actions would have a genuinely retroactive effect," which we explained turns on "'whether it [the statute] would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *See* 2023 WL 3828612, at *2 (quoting *Landgraf*). The Panel determined that the Section 1407(g) amendment did *not* have a "retroactive effect" because it is a venue provision that does not affect any primary conduct:

> Section 1407 is in the nature of a venue provision for pretrial proceedings; moreover, Congress labeled the Section 1407(g) amendment in the Consolidated Appropriations Act a "venue" provision – that is, it is located at Section 301 of Title III, both of which are captioned "Venue for State Antitrust Enforcement." <u>The venue of an action cannot be characterized as impairing rights that a party had when it acted, increasing a party's liability for past conduct, or imposing new duties</u>. *Landgraf* leaves no doubt on this matter – there, the Court highlighted Section 1404 as an example of a "procedural" rule that did not raise retroactivity concerns when applied to cases arising before its enactment. *See* 511 U.S. at 275 ("For example, in *Ex parte Collett,* 337 U.S. 55, 71 (1949), we held that 28 U.S.C. § 1404(a) governed the transfer of an action instituted prior to that statute's enactment. We noted the diminished reliance interests in matters of procedure."); *see also United States v. National City Lines, Inc*., 337 U.S. 78 (1949) (applying Section 1404(a) to antitrust action filed before its enactment, citing *Ex parte Collett*).

*See id.* at *2 (emphasis added). During the Panel briefing on the States' motion for remand, Google made no attempt to distinguish the application of Section 1404 to pre-enactment cases in *Ex parte Collett* and *National City Lines*, and its attempt to do so for the first time now during the motion to stay briefing is unpersuasive. The Supreme Court expressly stated in *Landgraf*: "Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." *See* 511 U.S. at 275.

---

[5] Google relies heavily on *Rivers v. Roadway Express*, 511 U.S. 298 (1994) – a companion case to *Landgraf* – concerning the temporal scope of a statutory amendment expanding civil rights protections in 42 U.S.C. § 1981. But *Rivers* considered legislative history in a different context – whether Congress intended to "restor[e] … the understanding of § 1981 that allegedly prevailed before … *Patterson*." *See Rivers*, 511 U.S. at 304 (citing *Patterson v. McLean Credit Union*, 491 U. S. 164 (1989)). The Court ultimately rejected petitioner's argument that the amendment to § 1981 was "restorative," holding that "it [the amendment] creates liabilities that had no legal existence before the Act was passed," and thus it did not apply to pre-enactment conduct. *See id.* at 313. Given this different context, we do not understand *Rivers* to mean that legislative history should be considered at step one of *Landgraf* – determining whether Congress has "expressly prescribed" the statute's reach.

-4-

Google also relies on footnote 29 of the *Landgraf* opinion and Justice Scalia's concurrence to argue that not all "procedural" rules apply to every pre-enactment pending case. But this footnote is appended to the Court's discussion of how Section 1404(a) applies to pre-enactment pending cases *without* giving rise to retroactivity concerns, which suggests that venue is not one of the special kind of procedural rules that should apply to some pending cases but not others. Additionally, footnote 29 lists as examples "[a] new rule concerning the filing of complaints" and "a new rule evidence" issued after trial has taken place, explaining that "orders approving amendments to federal procedural rules reflect the commonsense notion that the applicability of such provisions ordinarily depends on the posture of the particular case." *See* 511 U.S. at 275 n.29. Transfer of venue during pretrial proceedings does not implicate the "commonsense" concerns raised by footnote 29 – on the contrary, it is in the very nature of Section 1407 that cases are transferred into and out of MDLs in the midst of pretrial proceedings.

The remaining two factors in determining whether a stay is warranted are essentially neutral – specifically, the potential "injury to the nonmoving party if a stay is issued" and the public interest. The State Plaintiffs assert that delay of remand prevents them from obtaining an expedited trial date in their original transferor court, and Google asserts that immediate remand creates duplicative litigation that burdens both Google and the judicial system. In essence, both the States and Google make arguments premised on what would be most convenient for their respective sides, and the scales do not tip significantly in favor of either side.

Accordingly, we deny Google's motion for stay of remand pending appeal.

II.

Google alternatively requests that the Panel stay the remand order for seven days from the denial of its motion for stay pending appeal to provide Google time to seek a stay pending appeal from the Second Circuit. We will grant this request. But considering that Google already has had nearly two months to prepare to apply to the Second Circuit for a stay pending appeal, we will not entertain any further requests for a temporary administrative stay of the remand order.

IT IS THEREFORE ORDERED that defendant's motion for stay pending appeal is DENIED.

IT IS FURTHER ORDERED that the temporary administrative stay entered on June 12, 2023, shall expire in seven days. The Panel will not entertain further motions to stay the remand order.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

Nathaniel M. Gorton          Matthew F. Kennelly
Roger T. Benitez              Dale A. Kimball
Madeline Cox Arleo

**IN RE: GOOGLE DIGITAL ADVERTISING
ANTITRUST LITIGATION**  MDL No. 3010

## SCHEDULE A

<u>Southern District of New York</u>

THE STATE OF TEXAS, ET AL. v. GOOGLE, LLC, C.A. No. 1:21−6841
 (Eastern District of Texas, C.A. No. 4:20−00957)