**BEFORE THE UNITED STATES JUDICIAL PLANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE GOOGLE DIGITAL** | ) | **MDL No. 3010** |
| **ADVERTISING ANTITRUST** | ) | |
| **LITIGATION** | ) | |
| | ) | |

## PLAINTIFF RUMBLE CANADA INC.'S RESPONSE IN OPPOSITION TO MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-11)

In accordance with 28 U.S.C. § 1407 and Rule 7.1 of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, Plaintiff Rumble Canada Inc. respectfully requests the Panel grant the order (CTO-11) conditionally transferring the action in *Rumble Canada Inc. v. Google LLC et al.*, No. 5:24-cv-02880 (N.D. Cal.)[1] (the "*Rumble* action") to the MDL Court in the United States District for the Southern District of New York (*In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-3010-PKC (S.D.N.Y.))[2] (the "MDL") and deny the Motion to Vacate filed by Defendants Google LLC and Alphabet Inc. ("Google").

## **INTRODUCTION**

Transfer to MDL No. 3010 is appropriate for the *Rumble* action because it alleges claims against Defendants that are nearly identical to those of the cases already centralized in the MDL. As Rumble acknowledged in its Amended Complaint, allegations and claims in the *Rumble* complaint "closely mirror several of those made in plaintiffs' complaints in the MDL Case." Am Compl., N.D. Cal. ECF No. 23 at ¶ 3.

---

[1] Citations to ECF filings in the Rumble docket will be abbreviated to "N.D. Cal. ECF."
[2] Citations to ECF filings in MDL docket will be abbreviated to "MDL ECF."

There is no doubt (despite Google's arguments to the contrary) that the *Rumble* action involves multiple "common questions of fact" with those cases already centralized. 28 U.S.C. § 1407(a). Centralization of the *Rumble* action will serve to "promote the just and efficient conduct" of both the *Rumble* action and the actions already centralized because it will ensure that pretrial proceedings in the *Rumble* action are consistent with other cases that revolve around the same allegations of Google's anticompetitive conduct. 28 U.S.C. § 1407(a) (*see also In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004) ("Centralization under Section 1407 is thus necessary in order to […] prevent inconsistent pretrial rulings"). Although fact discovery has closed for cases currently centralized, there are several months of pretrial briefing still planned and any additional discovery needed for the *Rumble* action can take place during this time.

## PROCEDURAL BACKGROUND

The MDL was established by the Panel in August 2021 as MDL No. 3010 under Judge Castel in the Southern District of New York. *See In re Digital Advertising Antitrust Litig.*, 555 F. Supp. 3d 1372 (J.P.M.L. 2021). The panel found that centralization was proper because all the pending actions "present common factual questions concerning the allegation that Google has monopolized or suppressed competition in online display advertising services in violation of federal antitrust law, whether that market is described singly as all display advertising services, as components of display advertising, or as some larger spectrum of digital advertising." *Id*. at 1375.

Rumble filed its initial complaint in the *Rumble* action on May 13, 2024 in the United States District Court for the Northern District of California. Compl. N.D. Cal. ECF No. 1. Google filed a motion to dismiss Rumble's complaint on August 1, 2024. Mot. to Dismiss, N.D.

Cal. ECF No. 17. Rumble filed an amended complaint on August 22, 2024. Am Compl., N.D. Cal. ECF No. 23. On September 11, 2024, Google filed a Notice of Potential Tag-Along Action. Not. of Potential Tag-Along Action, *In re: Google Digital Advertising Antitrust Litig.*, MDL No. 3010 (J.P.M.L. Sept. 11, 2024), ECF No. 262.[3] On September 13, 2024, the Clerk of the Panel issued a Conditional Transfer Order (CTO-11). Cond. Transfer Or. (CTO-11), JPML ECF No. 263.

Google filed a Motion to Dismiss Rumble's Amended Complaint on September 26, 2024. Mot. to Dismiss, N.D. Cal. ECF No. 34. That motion is still being briefed and is pending before Judge Freeman in the Northern District of California. On October 7, 2024, Google filed its opposition to the Conditional Transfer Order. JPML ECF No. 269. On October 21, 2024, Judge Freeman granted an extension to the briefing schedule for Google's Motion to Dismiss to allow the JPML panel hearing on this CTO to take place before briefing is completed for the Motion to Dismiss. N.D. Cal. ECF No. 37.

## <u>LEGAL STANDARD</u>

The Panel may transfer a civil action "involving one or more common questions of fact" when it determines that transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Transfer is appropriate "if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay." *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 669 F. Supp. 3d 1375, 1380 (U.S. Jud. Pan. Mult. Lit. 2023). While common factual questions are required, transfer under Section 1407 "does not require a

---

[3] Citations to ECF filings in the instant proceeding before the Panel will be abbreviated to "JPML ECF."

complete identity or even majority of common factual issues as a prerequisite to transfer." *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005). In determining whether transfer is appropriate, the Panel must "weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in light of the purposes of the law." *In re Nat. Student Mktg. Litig.*, 368 F. Supp. 1311, 1317 (J.P.M.L. 1972) (quoting *In re Childrens' Books Litigation*, 297 F.Supp. 385, 386 (Jud.Pan.Mult.Lit.1968)).

## ARGUMENT

The *Rumble* action features exactly the kinds of common factual questions that make centralization under 28 U.S.C. § 1407 proper. The allegations in the *Rumble* complaint closely mirror those of other plaintiffs against the same defendants in cases already centralized in the MDL and will benefit from coordinated pretrial proceedings in front of Judge Castel. Google's arguments to the contrary attempt to misconstrue the allegations in the Rumble complaint, but the plain language of the complaint establishes that common factual questions predominate over any individualized questions that are specific to Rumble as a plaintiff.

Despite fact discovery having closed in the MDL after Rumble filed its initial complaint, there are many efficiencies to be gained through centralization and there is no prejudice to Google if the case is centralized with similar cases already included in the MDL.

### 1.  The Rumble Action and the MDL Involve Common Questions of Fact

Google argues in its Motion that the "*Rumble* action presents individual factual questions that would predominate over the MDL's common factual questions pertaining to online display advertising." Opp. at 2 JPML ECF 269-2. Google makes this argument by ignoring the allegations in Rumble's complaint and focusing on Rumble's status as a video platform. Rumble has alleged that Google "has been able unlawfully to obtain and maintain a monopoly in the

online Ad Tech markets," which are the same markets at issue in the MDL. Am Compl., N.D.

Cal. ECF No. 23 at ¶ 22.

Rumble's claims against Google include:

(1) Monopolization in violation of Section II of the Sherman Act, 15 U.S.C. § 2,
in the market for publisher ad servers, ad exchanges, ad network, ad buying
tools for large advertisers, and ad buying tools for small advertisers. N.D. Cal.
ECF No. 23 at ¶ 283.

(2) Attempted monopolization in violation of Section II of the Sherman Act, 15
U.S.C. § 2, in the market for publisher ad servers, ad exchanges, ad networks,
ad buying tools for large advertisers, and ad buying tools for small advertisers.
N.D. Cal. ECF No. 23 at ¶ 290.

(3) Unlawful tying in violation of Sections I and II of the Sherman Act, 15 U.S.C.
§§ 1 and 2 between: Google's ad server and exchange product (N.D. Cal. ECF
No. 23 at ¶ 298-302); Google's ad buying tools (DV360 and Google Ads) and
YouTube (N.D. Cal. ECF No. 23 at ¶ 303-306); and Google Ads and Google's
network and exchange products (N.D. Cal. ECF No. 23 at ¶ 307-311).

These are precisely the types of claims that the Panel found contained common questions

of fact that would benefit from centralization in the MDL. *In re Digital Advert. Antitrust Litig.*,

555 F. Supp. 3d at 1375 ("All actions present common factual questions concerning the

allegation that Google has monopolized or suppressed competition in online display advertising

services in violation of federal antitrust law" and "the 17 actions asserting Section 2

monopolization claims raise additional common factual questions" including "alleged tying

arrangements between, *inter alia*, Google's publisher ad server and Google's ad exchange.").

In its Opposition, Google makes the same failed argument it has raised in its pending motion to dismiss Rumble's amended complaint; that "Rumble does not plead that it transacted in online display advertising at all." Opp. at 9 JPML ECF 269-2. Google makes this argument by ignoring the facts alleged in Rumble's complaint that clearly establish Rumble participates in online display advertising in several ways. First, Rumble is a publisher that "monetizes its content through placing ads that are displayed [...] alongside videos that appear on Rumble's platform." N.D. Cal. ECF No. 23 at ¶ 19. Despite the arguments Google presents in its Opposition, Google is aware that Rumble participates in display advertising because Rumble has used Google's own ad server product to serve display ads on Rumble.com since at least 2017. *See* N.D. Cal. ECF No. 23 at ¶ 19 ("Rumble was a customer of Google's ad server"). Rumble is also a competitor to Google through its new advertising solution, Rumble Advertising Center ("RAC"), that competes with Google's ad server product for publisher customers seeking to monetize their content through display and video advertisements. N.D. Cal. ECF No. 23 at ¶ 94-95. Rumble has also alleged that it is an advertiser that has suffered from Google's anticompetitive conduct in the market for ad buying tools. N.D. Cal. ECF No. 23 at ¶ 112-113 ("These tools allow small advertisers such as Rumble to optimize for their own interests").

In addition to being contradicted by the allegations in the Complaint, Google's arguments are precisely the kind of market definition questions that should be handled with consistent pretrial proceedings through the MDL Court. *See In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1375 (identifying common factual issues including "defining the relevant market for online display advertising services" and "identifying the competitors in the market and their market shares").

Rumble's claims (and status as an online video company) are nearly identical to those of a specific case that the Panel transferred to the MDL last year. On February 1, 2023, the Panel granted a Conditional Transfer Order for *Inform v. Google LLC, et al.*, No. 1:19−05362, centralizing it as part of the MDL over Google's objection. *See* JPML ECF No. 227. Like Rumble, Inform was an "online video company" that used Google's ad server product to "coordinate[] the placement of targeted ads within its videos." MDL ECF No. 709 at 2-3. In its complaint, Inform alleged Google violated antitrust laws to gain "control of ad tech tools to dominate online advertising." *See* JPML ECF No. 227 at 2. Like Rumble, Inform also alleged that Google violated antitrust laws by "illegally conditioning the purchase of ads on its subsidiary YouTube on Google's ad-buying tools." *Inform Inc. v. Google LLC*, No. 21-13289, 2022 WL 3703958, at *6 (11th Cir. Aug. 26, 2022).

The Panel rejected Google's argument that Inform's video-based claims meant individual questions of fact would predominate over common ones because Google "ignore[d] the plain language of the complaint," which included claims for relief that "overlap[ped] with the monopolization and tying claims in the MDL." JPML ECF No. 227 at 2. Judge Castel denied Google's Motion to Dismiss the *Inform* Complaint on March 7, 2024. *In re Google Digital Advert. Antitrust Litig.*, No. 21-MD-3010 (PKC), 2024 WL 988966, at *1 (S.D.N.Y. Mar. 7, 2024).

## 2.   Transfer of the Rumble Action Will Promote Efficiency

Transfer of the *Rumble* action will promote efficiency because it will ensure that the *Rumble* action and similar cases already centralized in the MDL will be subject to consistent pretrial rulings, including Google's currently pending motion to dismiss Rumble's amended complaint. One of the purposes of centralization under Section 1407 is to "prevent inconsistent

pretrial rulings." *In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004). In originally forming this MDL, the panel stressed that "informal coordination appears inadequate to address the risk of inconsistent rulings in this factually and legally complex litigation." *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1376-77. The most efficient manner of ensuring that the *Rumble* action is subject to consistent rulings as similar cases is to centralize it in the MDL. Because Rumble's claims focus on the same conduct alleged by other plaintiffs already centralized in the MDL, Judge Castel is already familiar with the detailed factual history that is the subject of Rumble's amended complaint and Google's motion to dismiss.

In its opposition, Google argues that transfer is inappropriate because fact discovery (but not all discovery) is complete in the MDL. The cases that Google cites in support of its position are inapposite. Google cites to *In re A.H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litig.*, 505 F. Supp. 221 (J.P.M.L. 1981*)* for the proposition that new cases should not be centralized when "common discovery had been completed in the transferee district." JPML ECF No. 269-2 at 5-6. But *A.H. Robbins* was much farther along than the current MDL; the transferee judge had already "prepared a final pretrial order" which was "available to the parties, counsel and judges involved" in the potential tag-along actions being considered for centralization. *In re A. H. Robins Co., Inc.*, 505 F. Supp. at 223. In contrast, Judge Castel has not issued a final pretrial order and Google admits that "expert discovery is now underway" in the MDL and will not conclude until next year. JPML ECF 269-2 at 6.

Similarly, Google cites to *In re: Checking Acct. Overdraft Litig.*, 818 F. Supp. 2d 1373 (U.S. Jud. Pan. Mult. Lit. 2011), but in that case both plaintiff and defendant objected to centralization, and the panel noted that "each action" already centralized had already "been set for trial." Under the current Pretrial Order in this MDL, however, briefing on key pretrial issues,

such as class certification, will not be completed until several months after the close of expert discovery. MDL ECF No. 394 at 4.

The Panel has previously ordered centralization even where fact discovery had been mostly completed for some of the related cases. *See In re Baby Food Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, No. MDL 3101, 2024 WL 1597351, at *2 (U.S. Jud. Pan. Mult. Lit. Apr. 11, 2024) (Ordering centralization of cases where "much of the common discovery has already been completed in two prior cases" to "eliminate any potential for duplicative discovery and inconsistent pretrial rulings"). The Panel has found that "[t]ransferee judges have demonstrated the ability to establish and effectively manage common and individual discovery tracks, thereby realizing the benefits of centralization without delaying or compromising consideration of case-specific issues." *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 936 F. Supp. 2d 1379 (U.S. Jud. Pan. Mult. Lit. 2013). There will be no loss of efficiency in this case either because Judge Castel can permit Google and Rumble to take limited fact discovery specific to this case without affecting the schedule of the other related cases. The Panel has "repeatedly" stated that "a transferee judge can employ any number of techniques, such as establishing separate discovery and motion tracks, to manage pretrial proceedings efficiently." *In re Glucagon-Like Peptide-1 Receptor Agonists Prod. Liab. Litig.*, 717 F. Supp. 3d 1370, 1374 (U.S. Jud. Pan. Mult. Lit. 2024).

Google attempts to distract from the efficiencies of centralization by noting that similar claims have been the subject of litigations outside of the MDL brought by the United States Department of Justice and several state Attorneys General. JPML ECF No. 269-2 at 5-6. But as Google is aware, both of those cases cannot be centralized under the MDL because they are antitrust actions "in which the United States or a State is a complainant." 28 U.S.C. § 1407(g).

Indeed, the matter in the Eastern District of Texas was originally centralized as part of the MDL until recent amendments to Section 1407 necessitated its remand. *In re Digital Advert. Antitrust Litig.,* 555 F. Supp. 3d at 1379 (ordering state plaintiffs' case be centralized).

Google will suffer no prejudice from centralization of the *Rumble* action. While limited factual discovery will be needed, the burden primarily will be on Rumble to produce discovery because Google has already produced significant amounts of discovery to plaintiffs in the MDL. Whatever minimal discovery is needed in addition to the discovery Google has already provided to plaintiffs in the MDL can be conducted in a short period of time and centralization will promote efficiency for discovery between the parties. After transfer to the MDL, Judge Castel will be well positioned to rule on Google's pending motion to dismiss, ensuring consistent pretrial rulings with cases already centralized in the MDL. After resolving the motion to dismiss, Judge Castel can grant Google and Rumble the ability to take fact discovery specific to Rumble's claims to "insure that the needs of the respective parties for any unique discovery" is "accommodated concurrently with the common pretrial matters." *In re Westinghouse Elec. Corp. Uranium Conts. Litig.*, 405 F. Supp. 316, 319 (J.P.M.L. 1975).

After pretrial proceedings are complete, Judge Castel may find that remand of the case to the transferor court is appropriate. Judge Castel is empowered by the Panel and Section 1407 to remand the *Rumble* action, or any other actions already centralized, once inclusion in the MDL "no longer serves the convenience of the parties and witnesses or promotes the just and efficient conduct of this litigation." JPML ECF No. 227 at 2.  The Panel has routinely found that when some "actions are further advanced than other actions" in an MDL "[i]t may well be that some actions may be ready for trial in advance of" others, but "nothing in the nature of this Section 1407 centralization will impede the transferee court, whenever it deems appropriate, from

recommending Section 1407 remand" for cases that are ready for trial. *In re Katz Interactive Call Processing Pat. Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007) *See also In re Rembrandt Techs., LP, Pat. Litig.*, 493 F. Supp. 2d 1367, 1370 (J.P.M.L. 2007 (Finding centralization proper where "the first-filed" was "somewhat further advanced than those in the other actions").

For these reasons, the Panel should grant the Conditional Transfer Order and deny Google's motion to vacate.

Respectfully submitted, this 28th day of October 2024.

/s/ Mark Meador_____
KRESSIN MEADOR POWERS LLC
Mark Meador (D.C. Bar No. 1046270)
300 New Jersey Avenue NW, Suite 900
Washington, DC 20001
Telephone: (202) 464-2905
Fax: (202) 998-9319
mark@kressinmeador.com

*Counsel for Plaintiff Rumble Canada Inc.*