**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE:<br><br>GOOGLE DIGITAL ADVERTISING<br>ANTITRUST LITIGATION | **MDL No. 3010** |

**GOOGLE LLC AND ALPHABET INC.'S REPLY IN SUPPORT OF
MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-11)**

Rumble gambled when it waited until the end of fact discovery in the MDL to file its complaint, despite obviously wanting to draft off of the work done in those other cases. Rumble's Opposition brief provides no explanation for its dilatory approach in slavishly (and in many cases incomprehensibly) copying long-ago filed online display advertising allegations for its putative video-related harm allegedly suffered since 2014.  Indeed, Rumble is no stranger to suing Google, having filed a complaint alleging a different antitrust theory in January 2021.  *See* Am. Compl. ¶ 1, N.D. Cal. ECF No. 23 (identifying *Rumble Inc. v. Google LLC*, No. 4:21-cv-00229-HSG (N.D. Cal.)).[1]  Instead, Rumble's brief lays bare its strategy:  attempt to join the MDL, piggyback off of other plaintiffs, and argue for an unrealistically abbreviated discovery period of "several months" when discovery in every other related case has taken years.

Rumble's strategy should fail.  Transferring *Rumble* would serve neither justice nor efficiency.  Rumble's case is not as factually similar to the MDL's display advertising cases as it would have this Panel believe.  Rumble, an online video platform, only expressly alleges harm stemming from transacting in video advertising and, contrary to claims in Rumble's brief, does not plead facts unequivocally showing it transacted in display advertising.  Indeed, Rumble's

---

[1] Abbreviations for ECF filing citations are incorporated from Google's Brief in Support of Motion to Vacate CTO-11, JPML ECF No. 269-2 ("Mot.").

complaint does not expressly plead the necessary facts to qualify it for membership in any of the MDL putative classes.   And regardless, the MDL is but one of three sets of pending cases relating to Google's advertising technology (ad tech) across multiple jurisdictions, so the risk of inconsistent rulings exists equally whether *Rumble* is centralized or not.   Fact discovery is closed in every one of these other cases, so the *Rumble* action will require proceedings on its own track whether *Rumble* proceeds before Judge Castel or Judge Freeman.   The Panel should grant Google's Motion to Vacate CTO-11.

## **ARGUMENT**

Transferring this nascent action to a MDL that has finished common fact discovery and is nearing completion of pretrial proceedings serves neither efficiency nor justice.   Rumble's Opposition fails to offer efficiencies to the contrary, particularly because Rumble's action differs from those centralized in this display advertising MDL.   Rumble's amended complaint does not expressly allege display advertising transactions, and it does not even expressly plead facts that appear to qualify Rumble for membership in any of the MDL's putative classes.   Moreover, Rumble's proposal for an unrealistically abbreviated discovery schedule is not an efficiency, but rather an example of Rumble's gamesmanship that would prejudice Google's ability to adequately conduct discovery.   Applicable precedent shows that transfer is inappropriate here, and none of Rumble's cited authority counsels otherwise.

### **A.  Rumble Does Not Offer Any Efficiencies Gained Through Transfer**

In its Opposition brief, Rumble offers no actual efficiencies that would be gained from transferring the *Rumble* action to the MDL.   Rumble principally claims that transfer is the only way to ensure consistency of pretrial rulings.   Pl.'s Resp. in Opp. to Mot. to Vacate CTO-11 at 7-8, JPML ECF No. 273 ("Opp.").   This is obviously incorrect.   Rumble does not dispute that

there are currently three different sets of antitrust proceedings concerning Google ad tech:  a DOJ case, a state attorneys general case, and the MDL—each pending in a different jurisdiction.  Each of these courts has been attentive to issues of coordination across cases, *see* Mot. at 8, and there is no reason to expect that the Northern District of California would be any different.

Rumble also overstates the similarity of its case to those in the MDL and, therefore, overstates both the risk and the implications of inconsistent rulings.  The MDL "concern[s] the allegation that Google has monopolized or suppressed competition in online display advertising services."  *In re Digital Advertising Antitrust Litig.*, 555 F. Supp. 3d 1372, 1377 (J.P.M.L. 2021).  Rumble argues that its amended complaint shares common questions of fact with other actions in the MDL because it pleads the same claims as other centralized plaintiffs alleging injury in connection with online display advertising.  Opp. at 4-5.  This is exaggerated, and purely a function of Rumble's artificial approach of copying allegations from MDL constituent actions.  Three features demonstrate the difference between Rumble's video-related claims and this display advertising MDL:

*First*, despite amending its complaint in lieu of opposing Google's initial motion to dismiss premised on Rumble's failure to plead display advertising transactions, Rumble still does not expressly plead it transacted in display advertising as it does video advertising.  Rumble's citation to ambiguous allegations from its amended complaint does not save it.  *See* Opp. at 6.  The best Rumble can muster in defense of its attempt to join the MDL is the allegation that "[a]s an *online video platform*, Rumble monetizes its content through placing ads that are displayed before, during, after, and alongside videos that appear on Rumble's platform."  Am. Compl. ¶ 19, N.D. Cal. ECF No. 23 (emphasis added);[2] *see also* Opp. at 6.  But this allegation fails to plead

---

[2] Rumble argues its allegations that it uses Google's ad server and offers a competitive ad server, RAC, also demonstrate that it transacted in display advertising.  Opp. at 6.  But the amended complaint alleges that Google's ad server can serve video advertisements, *see* Am. Compl. ¶ 121,

that the advertisements displayed "alongside videos" were display advertisements, which Rumble alleges are distinct from the types of video ads that can appear "alongside" videos. *See* Am. Compl. ¶¶ 63, 121, N.D. Cal. ECF No. 23; *see also id.* ¶ 60 (both display ads and video ads can appear "alongside" web content). Nowhere else does the amended complaint otherwise specify that the advertisements Rumble transacted were display advertisements.

*Second*, Rumble does not even plead facts that would qualify it for membership in any of the MDL's putative publisher or advertiser classes, further underscoring the difference between Rumble's action and the MDL, and mitigating the impact of any hypothetical inconsistent rulings. The publisher class complaint defines two putative classes of display advertising sellers: one conditioning membership on using Google's ad exchange for display advertising and the other conditioning membership on using Google's ad network for display advertising. *See* First Am. Consol. Class Action Compl. ¶ 368, MDL ECF No. 408. But Rumble does not allege using Google's ad network, AdSense, to transact any online advertising, nor does it expressly allege that it actually used Google's ad exchange, AdX, to transact online display advertising. As a result, Rumble does not appear to qualify as a MDL putative publisher class member. The advertiser class complaint defines a putative class of online display advertisers that conditions membership on placing a display ad on a website or mobile application "via a transaction in which the impression was sold, brokered, exchanged or auctioned by Google." Consol. Advertiser Class Action Compl. ¶ 339, MDL ECF No. 399. Judge Castel further limited the

---

N.D. Cal. ECF No. 23, and does not plead RAC serves display advertising, *see id.* ¶¶ 94-95, N.D. Cal. ECF No. 23 (alleging RAC is the fruition of Rumble's desire to "establish[] its own Advertising Center to use for its own video content advertising, and to make that available to other publishers as well"). In contrast, there are no allegations in the MDL about the video-serving capabilities of Google's ad server. To the extent Rumble intends to suggest it uses Google's ad server for both display and video advertising, this would run counter to Rumble's own allegations that "publishers typically chose only one ad server to manage each type of inventory they sell." *Id.* ¶ 62, N.D. Cal. ECF No. 23.

putative advertiser class's federal antitrust claims to those plaintiffs using Google Ads.  Op. &
Or. at 11-13, MDL ECF No. 701.   Putting aside Rumble's bare assertions of its apparent
advertiser status, *see* Opp. at 6 (citing Am. Compl. ¶¶ 112-13, N.D. Cal. ECF No. 23), Rumble's
amended complaint does not allege that Rumble used Google's ad buying tools as an advertiser,
let alone to purchase display ads.  As a result, Rumble does not qualify as an MDL putative
advertiser class member either.  There is little risk, then, that pretrial rulings in the MDL will be
inconsistent with those prospectively rendered by Judge Freeman in the *Rumble* action.

And *third*, Rumble's attempt to liken itself to MDL plaintiff Inform does not raise the
prospect of inconsistent pretrial rulings or that transfer would promote efficiency.  *See* Opp. at 7;
*see also Inform Inc. v. Google LLC et al.*, No. 1:23-cv-01530-PKC (S.D.N.Y.).   As an initial
matter, the conditional transfer order that ultimately transferred the Inform action to Judge Castel
(CTO-9) was issued in October 2022, before the 18-month common fact discovery period began
in the MDL, and Inform was formally transferred just after the common fact discovery period
began.  *See* Conditional Tr. Or. (CTO-9), JPML ECF No. 206; Transfer Or., JPML ECF No. 227;
Pre-Trial Or. No. 5 ¶ 6, MDL ECF No. 394.  Additionally, though Inform's complaint included
certain non-display advertising allegations, Inform expressly alleged that it was a publisher
transacting in display advertising.  *See, e.g.*, Exhibit A (*Inform Inc. v. Google LLC et al.* First
Am. Compl.) ¶ 98, JPML ECF No. 202-3 (alleging Inform uses Google's ad server for "both
display and online video advertisements or creatives").  In comparison, while Rumble alleges
that it uses Google's ad server to monetize its online video platform, it does not specify that it
transacts in display advertising, and it additionally alleges that publishers typically use only one
ad server for each type of the publisher's inventory (e.g., display or video).  Am. Compl. ¶ 19,
N.D. Cal. ECF No. 23 (alleging use of Google's ad server to monetize Rumble online video

platform without specifying advertising type); *id.* ¶¶ 62-63 (alleging that "publishers typically chose only one ad server to manage each type of inventory they sell" and that "display and video ads are different types of ads . . . requir[ing] different technology to manage").  Thus, Rumble is not like Inform, or any of the other MDL plaintiffs.

### B. Rumble's Proposed Abbreviated Discovery Schedule Is Not An Efficiency And Would Prejudice Google

Rumble also argues that as a benefit of transfer, the MDL court could abbreviate the discovery period available for the *Rumble* action, forcing the parties to conduct "limited" discovery over an incredibly compressed timeline of "several months" so that Rumble could catch up with the MDL.  Opp. at 2, 9-10.  This argument spotlights the injustice and *inefficiency* of transferring this action to the MDL: during a "short period of time," Rumble expects the parties to brief Judge Castel on Google's motion to dismiss, receive a ruling, and then, if Rumble's complaint survives Google's motion to dismiss, conduct "limited" discovery "concurrently with the common pretrial matters," which are due to conclude case-specific expert discovery on February 2025 ahead of motions for summary judgment in mid-March.  *Id.* at 10; *see also* Rev. Case Mgm't Plan & Schedl'g Or., MDL ECF No. 880.  Rumble's proposal is unrealistic and unnecessary, and is nothing more than gamesmanship to engage in one-sided discovery while inhibiting Google's ability to take the discovery it needs of Rumble.  Proceeding on such an abbreviated schedule would prejudice Google, depriving Google of the opportunity to conduct the discovery that it needs of the many Rumble-specific issues raised in the amended complaint.

The eminently more just and efficient approach is to leave the action before Judge Freeman.  At Rumble's request, Google agreed to extend the briefing schedule for Google's motion to dismiss, and discovery has been stayed.  *See* Or. re Jt. Stipulation, N.D. Cal. ECF No.

37.  If Rumble survives Google's motion to dismiss, the parties can proceed with discovery on an appropriate timeline.

### C. Rumble's Cited Authority Does Not Offer Support for Denying Google's Motion to Vacate CTO-11

Contrary to Rumble's arguments, applicable and persuasive precedent shows transfer is inappropriate for newly filed actions where common fact discovery has concluded in the MDL. *See* Mot. at 5-8.  For instance, *In re A.H. Robins Co., Inc. "Dalkon Shield" IUD Prods. Liab. Litig.*, 505 F. Supp. 221 (J.P.M.L. 1981) (per curiam) is instructive.  There, the Panel assessed motions to vacate conditional transfer orders conditionally transferring five tag-along actions to an advanced MDL in which "common discovery relating to product liability ha[d] been completed."  *In re A.H. Robins Co.*, 505 F. Supp. at 222.  The Panel vacated the conditional transfer orders, observing that it had previously denied transfers to the MDL because the only remaining purpose for transfer was "obtaining the benefits and restrictions derived from the pretrial orders entered by the transferee judge" such that transfer would not "promote the just and efficient conduct of the litigation."  *Id.* at 222-23.

The Panel's ruling in *In re Richardson-Merrell, Inc.*, 582 F. Supp. 890, 891 (J.P.M.L. 1984), which involves conditional transfer orders to transfer newly filed actions to a MDL that already completed "discovery pertaining to common issues," is likewise instructive.  As in *In re A.H. Robins Co.*, the Panel in *In re Richardson-Merrell* vacated the conditional transfer orders, noting "that procedures exist whereby relevant discovery already completed in the transferee district may be made available to the parties in newly filed actions," *id.*—procedures which are also available to Rumble should its complaint survive Google's motion to dismiss.  That the transferee court there had already scheduled a trial on common liability issues is of no moment here given that the touchstone to assess propriety of transfer under section 1407 is pretrial

proceedings, after which the MDL's constituent actions are remanded to the transferor courts for trial. *See* 28 U.S.C. § 1407(a); *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34-35, 39-40 (1998); *see also In re A.H. Robins Co.*, 505 F. Supp. at 222-23 (transfer would not promote efficiency where common discovery was completed).

And lastly, the Panel's ruling in *In re: Checking Account Overdraft Litig.*, 818 F. Supp. 2d 1373 (J.P.M.L. 2011) provides applicable guidance. There, the Panel considered motions to vacate a conditional transfer order conditionally transferring a newly-filed tag-along action to a two-year-old MDL where the transferee court had "organized the actions into multiple groups" with "a detailed schedule governing the conduct of all pretrial events." *Id.* at 1373. Contrary to Rumble's representation, *see* Opp. at 8, these groups were "in various stages of discovery," and the only actions set for trial were those being tried in the transferee court. *In re: Checking Acct. Overdraft Litig.*, 818 F. Supp. 2d at 1373. The Panel granted the motions, observing that "[a]fter a certain point . . . the benefits of transfer should not be assumed to continue" and "the Panel must always consider the impact that transfer of that action could have on the cases already in the MDL" before ultimately concluding that transfer "would not promote the just and efficient conduct of the litigation, because it threatens to significantly hinder the resolution of the already-centralized actions." *Id.* at 1373-74. Similar to *In re Richardson-Merrell*, the Panel noted that the parties in the tag-along action, "as well as parties in subsequently-filed actions, should be able to avail themselves of the discovery already obtained in the MDL under [the transferee judge's] supervision (subject, of course, to the same conditions as those imposed on parties in the MDL) . . . even absent transfer." *Id.* at 1374.

Rumble's cited authority does not counsel otherwise. As a general matter, none of Rumble's authority addresses whether to transfer a new late-comer tag-along action with an

established, advanced MDL that is nearing completion of pretrial proceedings. All involve whether to create a MDL in the first place, a decision that was already made here over three years ago. Rumble's principal authority, *In re Baby Food Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, MDL No. 3101, 2024 WL 1597351 (J.P.M.L. Apr. 11, 2024), confronted whether to establish a MDL by centralizing 10 actions alleging personal injury from toxic heavy metals in baby food products, particularly where some relevant discovery was nearly complete in two prior actions not subject to the instant request for centralization. While the Panel ordered centralization, its decision primarily pivots on the number of defendants named across the actions such that "alternatives to centralization—such as informal cooperation between the parties and coordination among the involved courts"—were not preferable to centralization. *In re Baby Food*, 2024 WL 1597351, at *2. In contrast, this MDL was already established, common fact discovery for *all* constituent actions is completed, and the MDL involves only one remaining active defendant such that "informal cooperation between the parties and coordination among the involved courts" is not only possible, it is already in practice. *See* Mot. at 8.

Rumble's other cited cases are no better. The Panel's ruling in *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 936 F. Supp. 2d 1379 (J.P.M.L. 2013) also involves a first-instance inquiry, specifically whether to centralize 27 tort actions alleging injury from over-the-counter Tylenol. It offers no specific guidance on whether to transfer a late-comer action still in its pleading stage to a MDL nearly finished with pretrial proceedings. Nor does Rumble's other cited authority. *See In re Glucagon-Like Peptide-1 Receptor Agonists Prod. Liab. Litig.*, 717 F. Supp. 3d 1370 (J.P.M.L. 2024) (addressing whether to create a MDL for 18 products liability actions alleging injury from GLP-1 RA class of drugs); *In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 405 F. Supp. 316 (J.P.M.L. 1975)

(addressing whether to create a MDL for 13 actions against a single defendant spawned from a refusal to perform contractual obligations); *In re Katz Interactive Call Processing Pat. Litig.*, 481 F. Supp. 2d 1353 (J.P.M.L. 2007) (addressing whether to create a MDL for 25 actions concerning infringement and invalidity of one or more interactive call processing patents in which certain of the 25 actions were "further advanced than other actions"); *In re Rembrandt Techs., LP, Pat. Litig.*, 493 F. Supp. 2d 1367 (J.P.M.L. 2007) (addressing whether to create a MDL for 15 actions concerning infringement and/or invalidity of one or more patents in which the first-filed action was "somewhat further advanced than those in the other actions").

Because transferring the *Rumble* action to the MDL would serve neither justice nor efficiency, the Panel should vacate CTO-11.

## <u>CONCLUSION</u>

For the above reasons, Google respectfully requests that the Panel vacate CTO-11.

Dated:  November 4, 2024                           Respectfully submitted,

                                                   */s/ Justina K. Sessions*
                                                   Justina K. Sessions
                                                   FRESHFIELDS US LLP
                                                   855 Main Street
                                                   Redwood City, CA 94063
                                                   Telephone:  (650) 618-9250
                                                   Facsimile:  (650) 651-1530
                                                   Email:  justina.sessions@freshfields.com

                                                   *Counsel for Defendants Google LLC and*
                                                   *Alphabet Inc.*